**OTTERBOURG P.C.**
230 Park Avenue
New York, New York 10169
(212) 661-9100
Scott L. Hazan, Esq. (*pro hac vice* application pending)
David M. Posner, Esq. (*pro hac vice* application pending)
Jessica M. Ward, Esq.

*Proposed Counsel for the Official*
*Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>Dots, LLC, *et al.*,<br><br>　　　　　　Debtors. | Chapter 11<br><br>Case No. 14-11016 (DHS)<br><br>(Jointly Administered) |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' MOTION FOR ENTRY OF ORDERS (I) (A) APPROVING AUCTION PROCEDURES, (B) APPROVING THE FORM AND MANNER OF NOTICE OF SALE, AND (C) SCHEDULING AN AUCTION AND SALE HEARING; AND (II) (A) APPROVING THE SALE OR SALES OF THE DEBTORS' ASSETS, (B) AUTHORIZING THE DEBTORS TO ABANDON UNSOLD PROPERTY, (C) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (D) WAIVING STAY PROVISIONS PURSUANT TO BANKRUPTCY RULES 6004(h) AND 6006(d); <u>AND (III) GRANTING RELATED RELIEF</u>**

TO:　　THE HONORABLE DONALD H. STECKROTH,
　　　　UNITED STATES BANKRUPTCY JUDGE:

　　　　The Official Committee of Unsecured Creditors (the "Committee") of Dots, LLC, *et al.* (collectively, the "Debtors" or the "Company"), by its proposed counsel, submits this Objection (the "Objection") to the *Debtors' Motion for Entry of Orders (I) (A) Approving Auction Procedures, (B) Approving the Form and Manner of Notice of Sale, and (C) Scheduling an Auction and Sale Hearing; and (II) (A) Approving the Sale or Sales of the Debtors' Assets, (B)*

3253125.7　　　　　　　　　　　　　　　　1

*Authorizing the Debtors to Abandon Unsold Property, (C) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (D) Waiving Stay Provisions Pursuant to Bankruptcy Rules 6004(H) and 6006(D); and (III) Granting Related Relief* (the "Motion").[1]  In support of this Objection, the Committee respectfully represents and alleges the following:[2]

## PRELIMINARY STATEMENT

1. The Committee objects to the approval of the bidding procedures proposed by the Debtors if it retains the timetable set forth in the Motion.  The rushed timetable urged upon this Court to accomplish the sale of the assets of the Debtors creates a fire sale for assets. All the Court has to do is look at the calendar proposed for this transaction to reach the obvious conclusion that the relief should be denied.

2. The proposed bid and sale procedures are fatally flawed.  At best, the proposed bid and sale process provides less than a month to market a company that had annual sales for the fiscal year ended January 31, 2013 of approximately $338.8 million, and operates approximately 400 retail stores located throughout 28 states.  This timeline was not preceded by any prepetition marketing effort of any meaningful duration.  The Motion proposes the following timeline for the sale process: (a) original hearing on the bid procedures on February 6, 2014 (now rescheduled to February 18, 2014); (b) bids submitted by February 17, 2014 (prior to the proposed procedures being approved); (c) auction on February 28, 2014; (c) objections to the sale due by March 1, 2014; and (d) sale hearing on March 3, 2014.  Requiring bids by February 17, 2014 (*i.e.,* only 11 days after the originally scheduled hearing on the Motion; now one day

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[2] The Committee specifically reserves its right to file objections to the entry of an order approving the proposed sale to any bidder that may be selected by the Debtors.

3253125.7                                                                  2

*prior* to the rescheduled hearing), with an auction on February 28th for any company let alone for a company of this size and breadth, is unrealistic and will not maximize value for any of the stakeholders. Further, the period between the bid deadline of February 17th and the auction date of February 28th is unnecessarily long. The Committee submits that the bid deadline should be set as close to the auction as possible, but in any event, not earlier than a week prior to the auction (i.e., February 21st).

3. The proposed sale timeline is dictated by the milestones (the "DIP Milestones") contained in the Debtors' DIP Financing Motion (defined below), which provide for, among others, the following deadlines: (a) January 27, 2014 (distribute information packages and solicitations for bids); (b) February 14, 2014 (receive a stalking horse bid, or file a motion seeking approval of bidding procedures); (c) February 21, 2014 (obtain approval of the bid procedures and stalking horse bids); (d) March 3, 2014 (obtain approval of a sale transaction); and (e) March 4, 2014 (enter into definitive sale documentation with the winning bidder).[3] However, the proposed bidding procedures are more truncated than even the DIP Milestones require (which are themselves unreasonable), as the DIP Milestones do not require approval of bid procedures until February 21st.

4. Importantly, there has been no showing that if there is an extension of the requested deadline(s), irreparable harm will befall the prepetition secured lenders who are dictating the highly compressed timetable. The lenders and the Debtors will say they are losing money as each day goes by. That is, unfortunately, not unique to this case. There must be a better balancing of interests than is currently proposed. Indeed, as the prepetition secured

---

[3] In accordance with these proposed DIP Milestones, an order approving the sale is to be entered by March 3rd, but the sale documents are to be completed by March 4th. The Committee submits that the definitive sale documentation should be completed prior to the sale hearing. Indeed, in the Motion, the Debtors propose that the winning bidder will be required to enter into a definitive agreement memorializing the winning bid before the auction is adjourned. The DIP Milestones should be harmonized with this requirement.

3253125.7                                              3

lenders have only been the lenders since September 2013, one has to really question what their motivations are and what exactly is the rush? The estate needs some breathing room to allow (a) all existing and future expressions of interest to evolve; and (b) the relief granted by this Court to bear fruit (*e.g.*, the critical vendor order). The process as structured does not permit the maximization of value to the estate. As mentioned above, due to the compressed timetable, sufficient interest will not be permitted to develop as fully as it should, especially going concern offers. This process can only chill bids.

5. In order to move the sale process forward, while balancing the need for a level playing field, the Committee respectfully requests that the Court deny the Motion, or in the alternative, adjourn all of the proposed dates in the bid procedures for approximately two weeks.[4] In a typical case, the Committee submits that a thirty (30) day extension would be reasonable, but balancing the interests in the Debtors' cases, two weeks may be more appropriate in these cases. Such an extension of the timeline will have the benefit of at least modestly improving the stranglehold of deadlines and increase the prospects of potentially securing one or more beneficial bids for the Debtors' assets.

## BACKGROUND

6. On January 20, 2014 (the "Petition Date") the Debtors filed voluntary petitions for reorganization under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). This Court has entered an Order directing joint administration of these Chapter 11 cases. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases.

---

[4] The Committee is cognizant of the fact that there are similar tight milestones in the interim order approving the DIP Financing Motion, and while the final hearing on the DIP Financing Motion has not been held, the Committee also objects to the milestones with respect to the final approval of the DIP Financing Motion.

3253125.7                                    4

7. On January 20, 2014, the Debtors filed the *Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Post-Petition Financing on Senior Secured and Superpriority Basis; (II) Authorizing the Use of Cash Collateral; (III) Granting Adequate Protection; (IV) Scheduling a Final Hearing Thereon; and (V) Granting Related Relief* (the "DIP Financing Motion") [Docket No. 21].

8. On January 31, 2014, the Debtors filed the Motion [Docket No. 132].

9. On February 6, 2014, the United States Trustee for the District of New Jersey (the "United States Trustee") appointed the Committee pursuant to Section 1102(a)(1) of the Bankruptcy Code.

**ARGUMENT**

**I.    THE BID PROCEDURES SHOULD NOT BE APPROVED**

10. The Committee was only formed on February 6, 2014 and has had very little time to review all the papers and prepare this Objection. The Committee's professionals have only just begun a dialogue with the parties in the case on the stranglehold of dates being imposed on the estate fiduciaries. The Committee's professionals have been diligently working to get up to speed on the Motion and the proposed bidding procedures, in addition to all of the "first day" motions that have been filed in these cases.

11. Any suggestion that the process cannot and should not be slowed by at least two weeks to consider other means of maximizing value is artificial and disingenuous. The estate needs more time to permit development of stalking horse proposals and time to select the best. Indeed, the Motion has put the wrong tenor on the process. The tenor sends an erroneous message that a "fire sale" is to be had. The process needs to be reset, which requires more time. Inherent in the procedures is a timeline tied to the milestones demanded by the prepetition

3253125.7                                                    5

secured lenders in the DIP Financing Motion.[5] It is an impractical exercise to attempt to sell a business with 400 stores throughout the nation and over $300 million in annual revenues in less than one month, particularly where the prepetition marketing effort was of limited duration.

12.     It is critical that the process be slightly but sufficiently slowed to permit a more meaningful bidding process. For these reasons, the Committee believes that the proposed timeline should be extended by two weeks to allow such parties to submit firm proposals to the Debtors. The Committee therefore respectfully submits that the Motion should be denied, or in the alternative, that all of the dates set forth in the Motion should be extended by approximately two weeks.

A.     **Applicable Standard**

13.     To permit a Chapter 11 debtor to effect a sale of assets outside the ordinary course of business, a bankruptcy court must specifically find that such sale would be in the best interests of the creditors of the debtor's estate. In re Timberline Property Development, Inc., 115 B.R. 787, 790 (Bankr. D. N.J. 1990) ("[T]he court must specifically find that such a sale is in the interest of creditors . . . ."). In determining if the debtor's officers and directors have properly exercised their fiduciary duties in the sale of a debtor's assets, courts must examine whether the transaction will "further diverse interests of the debtor, creditors and equity holders, alike." In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983); see also In re Phoenix Steel Corp., 82 B.R. 334, 335-36 (Bankr. D. Del. 1987).

14.     In order to effect a Bankruptcy Code § 363(b) sale, a debtor must demonstrate that: (a) the proposed transaction was entered into in good faith; (b) there is a

---

[5] One might think that the prepetition secured lenders asked for such a patently ridiculous timeframe, anticipating negotiations by which they would end up with a timeframe in between their draconian request and the Committee's ultimate request for an extension of the timeline.

3253125.7                                       6

reasonable business justification for the sale; and (c) the sale will result in a fair value being paid to the debtor. Timberline, 115 B.R. at 790; Phoenix, 82 B.R. at 335-36.

B. **The Debtors Have Not Demonstrated Any Reasonable Business Justification for the Bidding Procedures**

15. A sale outside the ordinary course of a debtor's business may be approved only if a good business justification supports it. In re Sovereign Estates, Ltd., 104 B.R. 702, 704 (Bankr. E.D. Pa. 1989) (holding that a Bankruptcy Code section 363(b) sale requires a sound business reason justifying the sale and a finding that the purchase price is fair and reasonable). Among the factors a court will analyze in determining the adequacy of a business justification in support of a sale include: (a) whether the proceeds from the sale will approximate the appraised value of the property; (b) the amount of elapsed time since the bankruptcy filing; and (c) the effect of the proposed sale upon the debtor's ability to reorganize. In re Montgomery Ward Holding Corp., 242 B.R. 147, 154 (D. Del. 1999).

16. Moreover, the proposed bid procedures can only be approved if they are designed to encourage bidding and maximize the value received by the Debtors' estate. See In re Bidermann Indus. U.S.A., Inc., 203 B.R. 547, 552-53 (Bankr. S.D.N.Y. 1997); see also In re Victory Corrugated Container Corp. of New Jersey, 183 B.R. 373, 376 (Bankr. D. N.J. 1995) ("An auction is a sale in which competitive bidding is utilized as a means of procuring the best and highest possible price for property being sold. The touchstone of an auction sale is the presence of competitive bidding.") (internal citations omitted). Considering the extremely rushed process, which includes a bid deadline the day before the date of the rescheduled hearing and an auction on February 28, 2014 (which is inappropriate given that it is a Friday),[6] the

---

[6] Holding an auction on a Friday is problematic because: (i) it may interfere with certain religious observations; and (ii) it is not optimal for liquidation bids in that it loses a weekend of sales, which is critical for liquidators.

3253125.7                                                     7

bidding procedures will not encourage bidding in these cases and will almost certainly lead to value lost to the estate.

## II. If the Court Determines that a Sale is Advisable, Modifications Must Be Made to the Proposed Bid Procedures

17. In the event that the Court determines that the bidding procedures satisfy the "good faith" and "business justification" standards of section 363(b) of the Bankruptcy Code, the proposed bidding procedures still cannot be approved in their present form. The purpose of bid procedures orders is to facilitate an open and fair public sale and maximize value for the estate. In re Edwards, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998); see also In re Trans World Airlines, Inc., No. 01-00056 (PJW), 2001 WL 1820326, *4 (Bankr. D. Del. April 2, 2001) (holding that auction procedures must be designed to produce an arms' length, fair value transaction).

18. The bidding procedures will not encourage competitive bidding. Rather, they will only chill bidding. The Committee respectfully submits that the compressed sale timeline will "freeze" potential bidding and should not be condoned by this Court. Any potential bidder who reviews this "process" may very well pass on the opportunity to bid, concluding that there is simply not enough time to conduct due diligence and make an informed bid. Any potential argument that the bidders have been looking at the Company prepetition is suspect considering the *de minimus* prepetition effort that started during the holiday season either late in December or more likely, sometime in January. It is only now that interested parties know with certainty there will be a sale and a formal chance to bid — they can no longer wait. But now they should be given a reasonable sale and auction process.

19. In addition to the critical need to extend all the dates discussed above, in the brief period of time that the Committee has had to review the proposed bidding procedures, the Committee notes the following additional issues:

a. <u>Cure Costs</u>. The proposed procedures do not provide for the establishment of cure amounts for executory contracts and leases proposed to be assumed and assigned to the purchaser (instead, the Motion states that the Debtors intend to file a separate motion seeking entry of an order fixing the prepetition cure amounts due). The order that will likely be entered, hopefully on a more reasonable time frame, should provide immediate notice to lessors of the cure amounts proposed by the Debtors or some similar immediate process.

b. <u>Adequate Assurance</u>. The proposed adequate assurance procedures merely provide that the financial wherewithal of the winning bidder will have been vetted through the bidding procedures process and that if necessary, the Debtors will present evidence of adequate assurance at the sale hearing. The adequate assurance information should be sent to any requesting creditors when the winning bidder is selected, or ideally earlier, to allow such parties to evaluate the information with as much time as possible prior to the sale hearing. As currently proposed, a landlord will not have sufficient time to determine adequate assurance because there is insufficient time between the bid deadline and the auction.

c. <u>Information</u>. The Committee should be provided all bidding information, including any letters of intent and bids contemporaneously with the Debtors.

d. <u>Bids</u>. Bids should not be limited to "cash only", however, appropriate discounts would be applied to any non-cash consideration in determination of Qualified Bidders, Winning Bidders, and Backup Bidders. In addition, the order approving the bid procedures should make clear that the Debtors will consider bids for pieces of the Debtors' assets (*i.e.*, a subset of stores). As currently drafted, the proposed bidding procedures suggest that the Debtors will only entertain bids for substantially all of the Debtors' assets.

e. <u>Good Faith Deposit</u>. The Good Faith Deposit should be 10% of the total consideration, as opposed to 10% of the cash consideration (in the event that non-cash only bids are allowed). In addition, as proposed, the Backup Bidder is required to keep its offer open until March 7th, but Good Faith Deposits are held up to 20 days past the sale hearing. These two dates should have symmetry and in any event, the Backup Bidder should remain open longer to ensure that the Debtors' estate is protected in the event that the Winning Bidder does not consummate its agreement with the Debtors.

Document      Page 10 of 11

    f.    <u>Lender Bids</u>.  In the event that Salus Capital Partners, LLC, the Debtors' prepetition secured lender and DIP lender, and/or Irving Place Capital Partners III L.P., Irving Place Capital III Feeder Fund, L.P., Irving Place Capital Partners III Coinvestors L.P., the Debtors' prepetition junior secured lender, submit bids, then they should not be privy to other bids, so as to avoid such lenders orchestrating a result for their benefit but potentially to the detriment of the Debtors' estates and creditors.

    g.    <u>Stalking Horse Bid Protections</u>.  There should be a more comprehensive process for granting Bid Protections to a stalking horse bidder.  The Motion provides that in the event a Stalking Horse Bid includes Bid Protections that the Debtors will file with the notice identifying the stalking horse bidder (that is due within two days of the bid deadline, or February 19th), a notice of any Bid Protections.  Further, the Motion provides that if no objection to the Bid Protections is received by February 27th, then the Bid Protections will be deemed approved.  Given the expedited timeline and limited opportunity for parties in interest to review any proposed Bid Protections, pre-approved parameters should be created.

## **RESERVATION OF RIGHTS**

20. The Committee reserves the right to raise further and other objections to the Motion a prior to or at the hearing in the event the Committee's objections raised herein are not resolved prior to such hearing.

## **CONCLUSION**

21. For all of the foregoing reasons, the Committee objects to approval of the Motion at this time and the Committee respectfully submits that at the appropriate time the Motion may be entered subject to the various modifications set forth above.

**WHEREFORE**, the Committee respectfully requests that the Court (i) sustain the Objection; (ii) deny the Motion; and (iii) grant such other and further relief as may be just and proper.

*[Signature Page Follows]*

Dated: February 14, 2014

Respectfully submitted,

*/s/ Jessica M. Ward*

OTTERBOURG P.C.
Scott L. Hazan, Esq.
David M. Posner, Esq.
Jessica M. Ward, Esq.
230 Park Avenue
New York, New York 10169
Telephone: (212) 661-9100
Facsimile: (212) 682-6104

*Proposed Counsel for the Official Committee of Unsecured Creditors*