**McKENNA LONG & ALDRIDGE LLP**
230 Park Avenue
New York, New York 10169
Telephone: (212) 905-8348
Facsimile: (212) 922-1819
Alan F. Kaufman, Esq.

**McKENNA LONG & ALDRIDGE LLP**
303 Peachtree Street, Suite 5300
Atlanta, GA 30308
Telephone: (404) 527-4000
Facsimile: (404) 527-4198
David E. Gordon, Esq.

*Counsel to D.Q.T. Apparel, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| Dots, LLC, *et al.*, | Case No. 14-11016 (DHS) |
| Debtors. | (Jointly Administered) |

**LIMITED OBJECTION OF D.Q.T. APPAREL, INC. TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (A) APPROVING THE SALE OR SALES OF THE DEBTORS' ASSETS, (B) AUTHORIZING THE DEBTORS TO ABANDON UNSOLD PROPERTY, (C) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (D) WAIVING STAY PROVISIONS PURSUANT TO BANKRUPTCY RULES 6004(H) AND 6006(D)**

D.Q.T. Apparel, Inc. ("DQT") hereby submits this limited objection (the "Objection") to the *Debtors' Motion for Entry of an Order (A) Approving the Sale or Sales of the Debtors' Assets, (B) Authorizing the Debtors to Abandon Unsold Property, (C) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (D) Waving Stay Provisions Pursuant to Bankruptcy Rules 6004(h) and 6006(d)* filed by Dots, LLC and its debtor affiliates (the "Debtors") in the above-captioned jointly administered cases (the

"Chapter 11 Cases") on January 31, 2014 [Docket No. 132] (the "Sale Motion").  In support of its Objection DQT respectfully states as follows:

## BACKGROUND

1.     On January 20, 2014 (the "Petition Date"), the Debtors commenced the Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

2.     DQT is a creditor and party-in-interest in the Chapter 11 Cases.  On February 11, 2014, DQT filed its Request for Payment of Administrative Expense [Docket No. 183] seeking payment of an administrative expense claim in the amount of $143,451.70 pursuant to Section 503(b)(9) of the Bankruptcy Code (the "DQT Administrative Claim").  Also on February 11, 2014, DQT filed a Proof of Claim [Claims Register; Claim No. 15-1] asserting the DQT Administrative Claim.  In addition to the DQT Administrative Claim, DQT holds a general, unsecured, non-priority claim against the Debtors in the approximate amount of $73,000.00.  DQT is currently in the process of preparing a Proof of Claim to assert this additional, unsecured claim.

3.     On January 31, 2014 Debtors filed the Sale Motion.  The Sale Motion seeks to sell substantially all of Debtors' assets pursuant to Section 363 of the Bankruptcy Code.

4.     Pursuant to the Sale Motion and related Bid Procedures approved by the Court, an auction for substantially all of Debtors' assets will be held on February 26, 2014 (the "Auction").  As of the filing of this Objection, the Auction has not yet concluded.

**OBJECTION**

5.      The process under which the Debtors' assets are to be sold pursuant to the Sale Motion, and these Chapter 11 Cases in general, are being driven entirely by the Prepetition Secured Parties (Salus and Irving Place Capital).  Based on current expectations, it is likely that the Auction will result in a Winning Bid[1] that is insufficient to satisfy the claims of <u>any</u> parties in interest in these Chapter 11 Cases other than the Prepetition Secured Parties.

6.      Such a sale, if approved, would ensure that these Chapter 11 Cases are administratively insolvent.  All administrative claims – other than up to $1 million in attorneys' fees of the Debtors and Committee, which amount was specifically approved by the Prepetition Secured Parties through a carve-out in their DIP Loan – would be left unpaid.

7.      The Prepetition Secured Parties are co-opting the bankruptcy process in order to run a quick liquidation of their collateral solely for their own benefit and for the benefit of insiders.[2]  This is not an appropriate use of Chapter 11 or Section 363 of the Bankruptcy Code.  <u>See</u> <u>In re Gulf Coast Oil Company</u>, 404 B.R. 407, 422, 426 (Bankr. S.D. Tex. 2009) (denying motion to sell substantially all of debtor's assets through 363 sale where all proceeds of the sale would be consumed by secured creditor for whose benefit the sale was being conducted and stating "[i]f only one party (or a few parties selected by the 'loudest creditor') will benefit from the sale, the movant should be prepared to explain why the sale should take place in a bankruptcy case and why the bankruptcy court should provide the benefits for which Congress imposed substantial requirements."); <u>see also</u> <u>In re Cloverleaf Enters., Inc.</u>, No. 09-20056, 2010 WL

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Sale Motion.

[2] In addition to being a Prepetition Secured Party, Irving Place Capital and/or its affiliates owns 95% the Debtors' equity.

3

1445487, at *3-*4 (Bankr. D. Md. Apr. 2, 2010) (denying motion to sell substantially all of debtor's assets through 363 sale where all proceeds would go to secured lender and small portion of administrative claims and stating "the court cannot find that the proposed sale is an exercise of sound business judgment by the Debtor nor that it recognizes the fiduciary duties owed by the Debtor to all of its creditors and interest holders."). If the Prepetition Secured Parties would like to avail themselves of the protections and benefits of Chapter 11 in liquidating their collateral, they should be required, at a minimum, to pay the administrative expenses that Chapter 11 entails. To the extent the Sale Motion seeks to sell substantially all of the Debtors' assets under the onus of the Bankruptcy Court solely for the benefit of the Prepetition Secured Parties and without satisfying administrative expense claims in full, DQT objects to the Sale Motion.

8. At a minimum, the Prepetition Secured Parties cannot circumvent the priority provisions of the Bankruptcy Code by picking and choosing which administrative expense claims will be paid and left unpaid in these Chapter 11 Cases. See In re Ben Franklin Retail Store Inc., 210 B.R. 315, 319 (Bankr. N.D. Ill. 1997) (agreement between secured creditor and debtor's counsel for secured creditor to pay professional compensation of debtor's counsel from its collateral but not pay other creditors of same priority impermissibly reorders Bankruptcy Code's distribution priorities). Section 503(b)(9) claims, like the legal fees of the Debtors and Committee, are entitled to administrative priority. See 11 U.S.C. § 507(a)(2). To the extent the Sale is approved without the express requirement that the Prepetition Secured Parties leave behind sufficient funds to pay administrative expense claims in full, <u>all</u> administrative priority creditors must share *pro rata* in the $1 million allocated by the Prepetition Secured Parties for administrative claims, not just Debtor's counsel and proposed Committee counsel.

## RESERVATION OF RIGHTS

9.      DQT reserves the right to raise other and further objections to the Sale Motion at or prior to the hearing thereon.

## CONCLUSION

10.      For the foregoing reasons, DQT objects to approval of the Sale Motion unless the Prepetition Secured Parties leave behind sufficient proceeds to pay all administrative expense claims in full.

WHEREFORE, DQT respectfully requests that the Court: (i) sustain the Objection; and (ii) grant such other and further relief as may be just and proper.

Dated: February 26, 2014                         **MCKENNA LONG & ALDRIDGE LLP**

/s/ Alan F. Kaufman

Alan F. Kaufman, Esq.
230 Park Avenue
New York, New York 10169
Telephone: (212) 905-8300
Facsimile: (212) 922-1819

David E. Gordon, Esq.
303 Peachtree Street, Suite 5300
Atlanta, Georgia 30308
Telephone: (404) 527-4000
Facsimile: (404) 527-4198