Order Filed on
**2/27/2014**
by Clerk U.S. Bankruptcy
Court District of New Jersey

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in compliance with D.N.J. LBR 9004-2(c)**

**LOWENSTEIN SANDLER LLP**
Kenneth A. Rosen, Esq.
John K. Sherwood, Esq.
Andrew Behlmann, Esq.
65 Livingston Avenue
Roseland, New Jersey 07068
Tel: (973) 597-2500
Fax: (973) 597-2400

*Counsel to the Debtors and
Debtors-in-Possession*

In re:

DOTS, LLC, *et al.*[1],

      Debtors.

Chapter 11

Case No. 14-11016 (DHS)
(Jointly Administered)

**ORDER PURSUANT TO SECTIONS 105(A), 363, 365 AND 554 OF THE
BANKRUPTCY CODE (I) APPROVING THE DEBTORS' ENTRY
INTO AGENCY AGREEMENT, (II) AUTHORIZING THE DEBTORS
TO SELL CERTAIN MERCHANDISE THROUGH STORE
CLOSING SALES, (III) AUTHORIZING THE DEBTORS AND
THE AGENT TO ABANDON UNSOLD PROPERTY, (IV)
AUTHORIZING THE SALE OF CERTAIN OF THE DEBTORS' ASSETS
FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES
AND INTERESTS, AND (V) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered two (2) through forty (40), is

hereby **ORDERED**.

Dated: _____ __, 2014

**DATED: 2/27/2014**

_Donald H. Steckroth_
Honorable Donald H. Steckroth
United States Bankruptcy Judge

---

[1]     The Debtors in these Chapter 11 cases are Dots, LLC, IPC/Dots LLC, and Dots Gift LLC. The last four digits of Dots, LLC's and IPC/Dots LLC's tax identification numbers are (3957) and (8282), respectively.

Page 2 of 40
Debtors:      Dots, LLC, et al.
Case No.:     14-11016 (DHS)
Caption:      Order Pursuant To Sections 105(A), 363, 365 And 554 Of The Bankruptcy Code (I) Approving The
              Debtors' Entry Into Agency Agreement, (II) Authorizing The Debtors To Sell Certain Merchandise
              Through Store Closing Sales, (III) Authorizing The Debtors And The Agent To Abandon Unsold
              Property, (IV) Authorizing The Sale Of Debtors' Assets Free And Clear Of All Liens, Claims,
              Encumbrances And Interests, And (V) Granting Related Relief
_____

Dots, LLC, IPC/Dots LLC, and Dots Gift LLC, debtors and debtors in possession herein

(collectively, the "Debtors"), having filed their "*Motion For Entry Of Orders (I) (A) Approving*

*Auction Procedures, (B) Approving The Form And Manner Of Notice Of Sale, and (C)*

*Scheduling an Auction and Sale Hearing; and (ii) (A) Approving The Sale Or Sale Of The*

*Debtors Assets, (B) Authorizing The Debtors To Abandon Unsold Property, (C) Authorizing The*

*Assumption and Assignment Of Certain Executory Contracts And Unexpired Leases, and (D)*

*Waiving Stay Provisions Pursuant To Bankruptcy Rules 6004(H) And 6006(D)*" [D.R. No. 132]

(the "Sale Motion"); and it appearing that the relief requested in the Sale Motion is in the best

interests of the Debtors, their estates, their creditors, and other parties in interest; and it appearing

that this Court has jurisdiction over the matters raised by the Sale Motion pursuant to 28 U.S.C.

§§ 157 and 1334; and it appearing that consideration of the Sale Motion and the relief requested

therein is a "core" proceeding pursuant to 28 U.S.C. § 157; and adequate notice of the Sale

Motion having been given, and it appearing that no other notice need be given; and the Debtors

and Gordon Brothers Retail Partners, LLC (the "Agent") having agreed upon terms and

conditions, as set forth in that certain Agency Agreement, dated as of February 27, 2014,

substantially in the form attached hereto as Exhibit "A" (the "Agency Agreement"), for, inter

alia, the Agent to act as the Debtors' exclusive agent to conduct "going out of business", "store

closing", "sale on everything", "everything must go", or similarly themed sale  or other

*Approved by Judge Donald H. Steckroth February  27, 2014*

Page 3 of 40
Debtors:        Dots, LLC, et al.
Case No.:       14-11016 (DHS)
Caption:        Order Pursuant To Sections 105(A), 363, 365 And 554 Of The Bankruptcy Code (I) Approving The
                Debtors' Entry Into Agency Agreement, (II) Authorizing The Debtors To Sell Certain Merchandise
                Through Store Closing Sales, (III) Authorizing The Debtors And The Agent To Abandon Unsold
                Property, (IV) Authorizing The Sale Of Debtors' Assets Free And Clear Of All Liens, Claims,
                Encumbrances And Interests, And (V) Granting Related Relief
_____

disposition (as further described below, the "Sale") of all of Debtors' Merchandise[2] from

Debtors' Closing Stores and Distribution Center, each as identified in the Agency Agreement

(collectively defined herein as the "Closing Locations"), with each such sale to be free and clear

of any and all liens, claims and encumbrances of any kind or nature, and further subject to the

terms and provisions of the Agency Agreement and this Order; and the transactions represented

by the Agency Agreement having been determined to be the highest and best offer for the right

to conduct the Sale; and a hearing having been held on February 18, 2014 (the "Initial Auction

Procedures Hearing"), whereupon the Court entered its "Order Approving Auction Procedures"

(the "Initial Auction Procedures Order") [D.R. No. 242]; and the Debtors having filed their

"Notice of Selection of Stalking Horse Bidder and Telephonic Conference to Consider Proposed

Stalking Horse Bid Protections", dated February 20, 2014 (the "Stalking Horse

Designation")[D.R. No. 252]; and the Debtors having filed their "Supplemental Brief in Support

of Approval of Stalking Horse Bid Protections", dated February 21, 2104 [D.R. No. 260]; and the

Debtors having filed their "Declaration of Perry Mandarino Declaration of Perry Mandarino in

Support of Approval of Stalking Horse Bid Protections", dated February 21, 2104 (the

"Mandarino Declaration") [D.R. No. 261]; and a telephonic hearing having been held on

February 21, 2014 (the "Supplemental Auction Procedures Hearing"; and together with the

Initial Auction Procedures Hearing the "Auction Procedures Hearings"), in connection with the

---

[2]        All capitalized terms not otherwise defined in this Order shall have the meaning ascribed to them in the
Sale Motion or the Agency Agreement, as applicable. In the event of a conflict between any of the terms and
provisions of this Order, on the one hand, and any of the terms and provisions of the Agency Agreement, on the
other hand, the terms and provisions of this Order shall control.

*Approved by Judge Donald H. Steckroth February  27, 2014*

Page 4 of 40
Debtors:     Dots, LLC, et al.
Case No.:    14-11016 (DHS)
Caption:     Order Pursuant To Sections 105(A), 363, 365 And 554 Of The Bankruptcy Code (I) Approving The
             Debtors' Entry Into Agency Agreement, (II) Authorizing The Debtors To Sell Certain Merchandise
             Through Store Closing Sales, (III) Authorizing The Debtors And The Agent To Abandon Unsold
             Property, (IV) Authorizing The Sale Of Debtors' Assets Free And Clear Of All Liens, Claims,
             Encumbrances And Interests, And (V) Granting Related Relief
_____

Debtors' request for approval of, <u>inter alia</u>, certain supplemental auction procedures (collectively, the "<u>Auction Procedures</u>") and stalking horse bid protections (collectively, the "<u>Bid Protections</u>"), whereupon the Court entered its "*Supplemental Order Approving Auction Procedures*" (the "<u>Supplemental Auction Procedures Order</u>"; and together with the Initial Auction Procedures Order the "<u>Auction Procedures Orders</u>") [D.R. No. 271]; and the Debtors having filed their "*Supplemental Brief in Support of Approval of Additional Sale Provisions*", dated February 21, 2014 [D.R. No. 272]; and the Debtors having conducted an auction on February 26, 2014 ("<u>Auction</u>") among Qualified Bidders (as defined in the Initial Auction Procedures Order); and an approval and sale hearing having been held on February 27, 2014 (the "<u>Approval Hearing</u>") to consider the relief requested in the Sale Motion and approval of the Agency Agreement and the transactions set forth therein (collectively, the "<u>Transactions</u>"); and appearances of all interested parties having been noted on the record of the Approval Hearing; and upon all of the proceedings had before the Court (including, but not limited to, the testimony and other evidence proffered or adduced at the Auction Procedures Hearings, and the Approval Hearing); and the Court having found and determined that (i) the relief sought in the Sale Motion is in the best interests of the Debtors, their estates, their creditors, and all parties in interest, and (ii) that the legal and factual bases set forth in the Sale Motion establish good, sufficient and just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby

*Approved by Judge Donald H. Steckroth February  27, 2014*

Page 5 of 40
Debtors:      Dots, LLC, et al.
Case No.:     14-11016 (DHS)
Caption:      Order Pursuant To Sections 105(A), 363, 365 And 554 Of The Bankruptcy Code (I) Approving The
              Debtors' Entry Into Agency Agreement, (II) Authorizing The Debtors To Sell Certain Merchandise
              Through Store Closing Sales, (III) Authorizing The Debtors And The Agent To Abandon Unsold
              Property, (IV) Authorizing The Sale Of Debtors' Assets Free And Clear Of All Liens, Claims,
              Encumbrances And Interests, And (V) Granting Related Relief
_____

## FOUND AND DETERMINED THAT[3]:

A.      **Jurisdiction:** This Court has jurisdiction to consider the Sale Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1134. Approval of the Debtors' entry into the Agency Agreement, and the transactions contemplated thereby is a "core" proceeding under 28 U.S.C. §§ 157(b)(2)(A), (D), (N) and (O).

B.      **Venue:** Venue of these cases in this District is proper pursuant to 28 U.S.C. § 1409(a).

C.      **Statutory Predicates:** The statutory predicates for the approval of the Agency Agreement and transactions contemplated therein are Sections 105, 363, 364, 365 and 554 of the Bankruptcy Code and Rules 2002, 4001, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

D.      **Notice:** Proper, timely, adequate and sufficient notice of the Sale Motion and the Approval Hearing has been provided in accordance with Sections 102(1), 105(a), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004 and 6006, and in compliance with the Bidding Procedures Order. No other or further notice is required.

E.      **Opportunity to be Heard:** A reasonable opportunity to object or be heard regarding the relief requested in the Sale Motion and the Transactions pursuant thereto has been afforded to all interested persons and entities, including, without limitation, the following: (i) the

---

[3]     The findings of fact and the conclusions of law stated herein shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.

*Approved by Judge Donald H. Steckroth February  27, 2014*

Page 6 of 40
Debtors:      Dots, LLC, et al.
Case No.:     14-11016 (DHS)
Caption:      Order Pursuant To Sections 105(A), 363, 365 And 554 Of The Bankruptcy Code (I) Approving The
              Debtors' Entry Into Agency Agreement, (II) Authorizing The Debtors To Sell Certain Merchandise
              Through Store Closing Sales, (III) Authorizing The Debtors And The Agent To Abandon Unsold
              Property, (IV) Authorizing The Sale Of Debtors' Assets Free And Clear Of All Liens, Claims,
              Encumbrances And Interests, And (V) Granting Related Relief
_____

Official Committee of Unsecured Creditors (the "Committee"); (ii) the DIP Secured Parties, the

Prepetition Senior Secured Parties, and the Prepetition Junior Secured Parties (both as defined in

the Final DIP Order[4]); (iii) all counterparties to the Debtors' executory contracts and unexpired

leases; (iv) the United States Trustee for the District of New Jersey; (vi) the Offices of the

Attorney General for each state where the Debtors operate a Closing Locations; (vi) the Internal

Revenue Service; (vii) all landlords for the Closing Locations; (viii) all parties identified by the

Debtors as potentially interested purchasers; (ix) all parties who are known to possess or assert

an interest in the assets that are the subject of the Agency Agreement (collectively, the "Assets");

(x) the relevant taxing authorities having jurisdiction over any of the Assets; (xi) all related

government entities that have an interest in regulating the Sale ((i) through (xi) collectively, the

"Notice Parties"). The notice provided constitutes good and sufficient notice of the Sale Motion

and the Approval Hearing, and no other or further notice of the Sale Motion or the Approval

Hearing or the entry of this Order need be given.

      F.    **Objections Resolved, etc.:**  Objections, if any, to the Sale Motion have been

withdrawn, resolved or adjourned and, to the extent not withdrawn, resolved or adjourned, are

hereby overruled.

      G.    **The Bidding Procedures**: As set forth in the Auction Procedures Orders, and as

demonstrated at the Auction Procedures Hearings, the best interests of the Debtors will be served

---

[4]      Final DIP Order shall mean the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507 (1)Authorizing Debtors to Incur Post-Petition Secured Indebtedness, (2) Authorizing Use of Cash Collateral, (3) Granting Liens and Providing Superpriority Administrative Expense Status, (4) Granting Adequate Protection, and (5) Modifying Automatic Stay* [Docket No. 229]

*Approved by Judge Donald H. Steckroth February  27, 2014*

Debtors:    Dots, LLC, et al.
Case No.:   14-11016 (DHS)
Caption:    Order Pursuant To Sections 105(A), 363, 365 And 554 Of The Bankruptcy Code (I) Approving The
            Debtors' Entry Into Agency Agreement, (II) Authorizing The Debtors To Sell Certain Merchandise
            Through Store Closing Sales, (III) Authorizing The Debtors And The Agent To Abandon Unsold
            Property, (IV) Authorizing The Sale Of Debtors' Assets Free And Clear Of All Liens, Claims,
            Encumbrances And Interests, And (V) Granting Related Relief
_____

by this Court granting the relief requested in the Sale Motion, including the approval of the

Auction Procedures and the Bid Protections.

H.     **Marketing Process:** As demonstrated by: (i) the Mandarino Declaration, (ii) the

testimony and other evidence proffered or adduced at the Auction Procedures Hearings and the

Approval Hearing, and (iii) the representations of counsel made on the record at the Auction

Procedures Hearings and the Approval Hearing, the Debtors have thoroughly marketed the

Assets and have conducted the bidding solicitation fairly, with adequate opportunity for parties

that either expressed an interest in acquiring or liquidating the Assets, or who the Debtors

believed may have an interest in acquiring or liquidating the Assets, to submit competing bids.

The Debtors and the Agent have respectively negotiated and undertaken their roles leading to the

Sale and the Transactions and entry into the Agency Agreement in a diligent, non-collusive, fair

and good faith manner.

I.     **Highest and Best Offer:** The Agency Agreement, substantially in the form

attached hereto as Exhibit "A", including the form and total consideration to be realized by the

Debtors pursuant to the Agency Agreement, is (i) the highest and best offer received by the

Debtors for the Assets, (ii) fair and reasonable, and (iii) in the best interests of the Debtors, their

estates, their creditors and all other parties in interest. There is no legal or equitable reason to

delay entry into the Agency Agreement and the Transactions contemplated therein.

J.     **Business Judgment:** The Debtors' decisions to (i) enter into the Agency

Agreement and (ii) perform under and make payments required by the Agency Agreement are

reasonable exercises of the Debtors' sound business judgment consistent with their fiduciary

*Approved by Judge Donald H. Steckroth February 27, 2014*

Page 8 of 40
Debtors:      Dots, LLC, et al.
Case No.:     14-11016 (DHS)
Caption:      Order Pursuant To Sections 105(A), 363, 365 And 554 Of The Bankruptcy Code (I) Approving The
              Debtors' Entry Into Agency Agreement, (II) Authorizing The Debtors To Sell Certain Merchandise
              Through Store Closing Sales, (III) Authorizing The Debtors And The Agent To Abandon Unsold
              Property, (IV) Authorizing The Sale Of Debtors' Assets Free And Clear Of All Liens, Claims,
              Encumbrances And Interests, And (V) Granting Related Relief
_____

duties and are in the best interests of the Debtors, their estates, their creditors, and all other

parties in interest.

K.     **Time of the Essence:** Time is of the essence in effectuating the Agency

Agreement and proceeding with the Transactions contemplated therein without interruption.

Based on the record of the Auction Procedures Hearings and the Approval Hearing, and for the

reasons stated on the record at the Approval Hearing and in the Mandarino Declaration, the

conduct of the Sale in accordance with the terms of the Agency Agreement and this Order must

be commenced rapidly following entry of this Order to maximize the value that the Agent may

realize from the Sale and concomitantly the value that the Debtors may realize from entering into

the Agency Agreement. Accordingly, cause exists to lift the stay to the extent necessary, as

contemplated by Bankruptcy Rules 4001(a), 6004(h) and 6006(d) and permit the immediate

effectiveness of this Order.

L.     **Sale Free and Clear:** The Debtors are the sole and lawful owners of the

Merchandise and the Assets. The Merchandise and the Assets constitute property of the Debtors'

estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of

the Bankruptcy Code. A sale of the Merchandise and the Assets other than one free and clear

(subject to the terms of the Agency Agreement, and this Order, and to the fullest extent allowed

under Section 363(f) of the Bankruptcy Code) of liens, claims, encumbrances, and interests,

including, without limitation, security interests of whatever kind or nature, mortgages,

conditional Sale or title retention agreements, pledges, deeds of trust, hypothecations, liens,

encumbrances, assignments, preferences, debts, easements, charges, suits, licenses, options,

8

Debtors:      Dots, LLC, et al.
Case No.:     14-11016 (DHS)
Caption:      Order Pursuant To Sections 105(A), 363, 365 And 554 Of The Bankruptcy Code (I) Approving The
              Debtors' Entry Into Agency Agreement, (II) Authorizing The Debtors To Sell Certain Merchandise
              Through Store Closing Sales, (III) Authorizing The Debtors And The Agent To Abandon Unsold
              Property, (IV) Authorizing The Sale Of Debtors' Assets Free And Clear Of All Liens, Claims,
              Encumbrances And Interests, And (V) Granting Related Relief
_____

rights-of-recovery, judgments, taxes (including foreign, state, local and ad valorem taxes),

licenses, covenants, restrictions, indentures, instruments, leases, options, claims for

reimbursement, contribution, indemnity or exoneration, successor, product, environmental, tax,

labor, ERISA, CERCLA, alter ego and other liabilities, causes of action, contract rights and

claims, to the fullest extent of the law, in each case, of any kind or nature (including, without

limitation, all "claims" as defined in section 101(5) of the Bankruptcy Code), known or

unknown, whether pre-petition or post-petition, secured or unsecured, choate or inchoate, filed or

unfiled, scheduled or unscheduled, perfected or unperfected, liquidated or unliquidated, noticed

or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material,

statutory or non-statutory, matured or unmatured, legal or equitable (collectively, "Liens") and

without the protections of this Order would hinder the Debtors' ability to obtain the

consideration provided for in the Agency Agreement, and thus, would impact materially and

adversely the value that the Debtors' estates would be able to obtain for the sale of such

Merchandise and Assets, subject to a full reservation of rights by the Debtors and the Agent as to

the validity of any and all defenses (including, without limitation, rights of setoff and

recoupment), off-set claims, orders and decrees of any court or foreign or domestic governmental

entity. But for the protections afforded to the Agent under the Bankruptcy Code and this Order,

the Agent would not have offered to pay the consideration contemplated in the Agency

Agreement. In addition, each entity with a Lien or other encumbrance upon the Merchandise

and/or the Assets, (a) has consented to the Sale, the sale and disposition of the Assets in the

manner contemplated by the Agency Agreement and this Order or is deemed to have consented

*Approved by Judge Donald H. Steckroth February  27, 2014*

Page 10 of 40
Debtors:       Dots, LLC, et al.
Case No.:      14-11016 (DHS)
Caption:       Order Pursuant To Sections 105(A), 363, 365 And 554 Of The Bankruptcy Code (I) Approving The
               Debtors' Entry Into Agency Agreement, (II) Authorizing The Debtors To Sell Certain Merchandise
               Through Store Closing Sales, (III) Authorizing The Debtors And The Agent To Abandon Unsold
               Property, (IV) Authorizing The Sale Of Debtors' Assets Free And Clear Of All Liens, Claims,
               Encumbrances And Interests, And (V) Granting Related Relief

_____

to the Sale, the sale of the Merchandise and Assets, (b) could be compelled in a legal or equitable

proceeding to accept money satisfaction of such interest, or (c) otherwise falls within the

provisions of Section 363(f) of the Bankruptcy Code, and therefore, in each case, one or more of

the standards set forth in Section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those

holders of Liens who did not object, or who withdrew their objections, to the Sale Motion are

deemed to have consented pursuant to Section 363(f)(2) of the Bankruptcy Code. Therefore,

approval of the Agency Agreement and the consummation of the Sale and the Transactions free

and clear of Liens are appropriate pursuant to Section 363(f) of the Bankruptcy Code and are in

the best interests of the Debtors' estates, their creditors and other parties in interest.

M.      **Arms-Length Sale:** The Guaranteed Amount and other consideration to be paid

by the Agent under the Agency Agreement were negotiated at arm's-length and constitute

reasonably equivalent value and fair and adequate consideration for the right to serve as the

Debtors' exclusive agent to conduct the Sale of the Merchandise and other Assets, respectively,

under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent

Conveyance Act and the laws of the United States, any state, territory, possession thereof or the

District of Columbia. The terms and conditions set forth in the Agency Agreement are fair and

reasonable under these circumstances and were not entered into for the purpose of, nor do they

have the effect of, hindering, delaying or defrauding the Debtors or their creditors under any

applicable laws.

N.      **Good Faith:** The Debtors, their members, management and board of directors

and, the Agent, its members and its officers, directors, employees, agents and representatives

*Approved by Judge Donald H. Steckroth February  27, 2014*

Debtors:       Dots, LLC, et al.
Case No.:     14-11016 (DHS)
Caption:       Order Pursuant To Sections 105(A), 363, 365 And 554 Of The Bankruptcy Code (I) Approving The
                    Debtors' Entry Into Agency Agreement, (II) Authorizing The Debtors To Sell Certain Merchandise
                    Through Store Closing Sales, (III) Authorizing The Debtors And The Agent To Abandon Unsold
                    Property, (IV) Authorizing The Sale Of Debtors' Assets Free And Clear Of All Liens, Claims,
                    Encumbrances And Interests, And (V) Granting Related Relief
_____

actively participated in the bidding process and acted in good faith. The Agency Agreement was

negotiated and entered into based upon arm's length bargaining, without collusion or fraud, and

in good faith as that term is used in Section 363(m) of the Bankruptcy Code. The Agent shall be

protected by Section 363(m) of the Bankruptcy Code in the event that this Order is reversed or

modified on appeal. The Debtors were free to deal with any other party interested in buying or

selling on behalf of the Debtors' estates some or all of the Merchandise and/or the Assets.

Neither the Debtors nor the Agent have engaged in any conduct that would cause or permit the

Sale or the Transactions, the Agency Agreement or any related action or the transactions

contemplated thereby to be avoided under Section 363(n) of the Bankruptcy Code, or that would

prevent the application of Section 363(m) of the Bankruptcy Code. The Agent has not violated

Section 363(n) of the Bankruptcy Code by any action or inaction. Specifically, the Agent has not

acted in a collusive manner with any person and was not controlled by any agreement among

bidders. The Agent's prospective performance and payment of amounts owing under the Agency

Agreement are each in good faith and for valid business purposes and uses.

      O.    **Insider Status:** The Agent is not an "insider" or "affiliate" of the Debtors as

those terms are defined in Section 101(31) of the Bankruptcy Code. No common identity of

directors or controlling stockholders exists between the Agent and the Debtors.

      P.    **Security Interests:** The liens provided for in the Agency Agreement and this

Order to secure the obligations of the Debtors under the Agency Agreement to the Agent are

necessary to induce the Agent to agree to terms for the Agency Agreement that maximize value

for the Debtors' estates. The absence of such protections would impact materially and adversely

*Approved by Judge Donald H. Steckroth February  27, 2014*

Debtors:      Dots, LLC, et al.
Case No.:     14-11016 (DHS)
Caption:      Order Pursuant To Sections 105(A), 363, 365 And 554 Of The Bankruptcy Code (I) Approving The
              Debtors' Entry Into Agency Agreement, (II) Authorizing The Debtors To Sell Certain Merchandise
              Through Store Closing Sales, (III) Authorizing The Debtors And The Agent To Abandon Unsold
              Property, (IV) Authorizing The Sale Of Debtors' Assets Free And Clear Of All Liens, Claims,
              Encumbrances And Interests, And (V) Granting Related Relief
_____

the value available to the Debtors in the liquidation of Merchandise in partnership with a

liquidation agent. But for the protections afforded to the Agent under the Bankruptcy Code, this

Order, and the Agency Agreement, the Agent would not have agreed to pay the Debtors the

compensation provided for under the Agency Agreement. In addition, the secured lenders, which

hold security interests in the property to which the Agent's security interests attach, have

consented to the security interests provided for in the Agency Agreement, subject to the

satisfaction of the conditions set forth in the Agency Agreement and in this Order.

Q.    **Corporate Authority:** Subject to the entry of this Order, the Debtors (i) have full

corporate or other power to execute, deliver and perform their obligations under the Agency

Agreement and all other transactions contemplated thereby, and entry into the Agency

Agreement has been duly and validly authorized by all necessary corporate or similar action, (ii)

have all of the corporate or other power and authority necessary to consummate the transactions

contemplated by the Agency Agreement, and (iii) have taken all actions necessary to authorize

and approve the Agency Agreement and the transactions contemplated thereby. No consents or

approvals, other than those expressly provided for herein or in the Agency Agreement, are

required for the Debtors to consummate such transactions.

R.    **No Successor Liability:** No sale, transfer or other disposition of the Merchandise,

the Assets or otherwise pursuant to the Agency Agreement or entry into the Agency Agreement

will subject the Agent to any liability for claims, obligations or Liens asserted against the

Debtors or the Debtors' interests in such Merchandise or Assets by reason of such transfer under

any laws, including, without limitation, any bulk-transfer laws or any theory of successor or

Debtors:       Dots, LLC, et al.
Case No.:      14-11016 (DHS)
Caption:       Order Pursuant To Sections 105(A), 363, 365 And 554 Of The Bankruptcy Code (I) Approving The
               Debtors' Entry Into Agency Agreement, (II) Authorizing The Debtors To Sell Certain Merchandise
               Through Store Closing Sales, (III) Authorizing The Debtors And The Agent To Abandon Unsold
               Property, (IV) Authorizing The Sale Of Debtors' Assets Free And Clear Of All Liens, Claims,
               Encumbrances And Interests, And (V) Granting Related Relief
_____

transferee liability, antitrust, environmental, product line, de facto merger or substantial

continuity or similar theories. The Agent is not a successor to the Debtors or their estates.

**S.** **No Sub Rosa Plan:** Entry into the Agency Agreement and the transactions

contemplated thereby neither impermissibly restructures the rights of the Debtors' creditors, nor

impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors. Entry

into the Agency Agreement does not constitute a *sub rosa* chapter 11 plan.

**T.** **Approval Order:** This Order shall constitute the Approval Order as contemplated

under the Agency Agreement.

## NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

**A.** **Sale Motion Granted; Objections Overruled**

1.      The relief requested in the Sale Motion is granted as set forth herein.

2.      Any remaining objections to the Sale Motion or the relief requested therein that

have not been withdrawn, waived, or settled, and all reservations of rights included in such

objections are overruled in all respects and denied.

**B.** **The Auction Procedures and Bid Protections**

3.      The Auction Procedures and Bid Protections are hereby ratified and approved on

a final basis.

**C.** **The Agency Agreement Is Approved and Authorized**

5.      Subject to the provisions of this Order, the Agency Agreement is approved

pursuant to Sections 105 and 363 of the Bankruptcy Code. The Debtors are hereby authorized,

*Approved by Judge Donald H. Steckroth February  27, 2014*

Debtors:      Dots, LLC, et al.
Case No.:     14-11016 (DHS)
Caption:      Order Pursuant To Sections 105(A), 363, 365 And 554 Of The Bankruptcy Code (I) Approving The
              Debtors' Entry Into Agency Agreement, (II) Authorizing The Debtors To Sell Certain Merchandise
              Through Store Closing Sales, (III) Authorizing The Debtors And The Agent To Abandon Unsold
              Property, (IV) Authorizing The Sale Of Debtors' Assets Free And Clear Of All Liens, Claims,
              Encumbrances And Interests, And (V) Granting Related Relief
_____

empowered and directed to enter into and perform under the Agency Agreement and each of the

transactions contemplated therein (including, without limitation, reaching an agreement and

resolution regarding the final reconciliation contemplated by the Agency Agreement (following

appropriate consultation with the DIP Secured Parties and the Prepetition Senior Secured

Parties), which Agency Agreement and resolutions shall be binding on all parties (including,

without limitation, the Debtors, the Committee, any successor chapter 7 or chapter 11 trustee,

and all other parties in interest) without further order of the Court) is hereby approved in its

entirety and is incorporated herein by reference. The failure to include specifically any particular

provision of the Agency Agreement in this Order shall not diminish or impair the effectiveness

of such provisions, it being the intent of the Court that the Agency Agreement and all of its

provisions, payments and transactions, be authorized and approved in their entirety. Likewise, all

of the provisions of this Order are non-severable and mutually dependent.

6.      The Debtors are authorized, pursuant to Sections 105 and 363(b) and (f) of the

Bankruptcy Code, to retain the Agent to conduct the Sale and to sell the Assets  in the manner

contemplated by the Agency Agreement.

7.      Each of the Transactions provided for under the Agency Agreement constitutes a

transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and

laws of all applicable jurisdictions, including, but not limited to the laws of each state in which

the Assets are located. The Transactions approved by this Order are not subject to avoidance

pursuant to Section 363(n) of the Bankruptcy Code.

*Approved by Judge Donald H. Steckroth February  27, 2014*

Page 15 of 40
Debtors:    Dots, LLC, et al.
Case No.:   14-11016 (DHS)
Caption:    Order Pursuant To Sections 105(A), 363, 365 And 554 Of The Bankruptcy Code (I) Approving The
            Debtors' Entry Into Agency Agreement, (II) Authorizing The Debtors To Sell Certain Merchandise
            Through Store Closing Sales, (III) Authorizing The Debtors And The Agent To Abandon Unsold
            Property, (IV) Authorizing The Sale Of Debtors' Assets Free And Clear Of All Liens, Claims,
            Encumbrances And Interests, And (V) Granting Related Relief
_____

8.      All amounts payable to the Agent under the Agency Agreement shall be payable
to the Agent without the need for any application of the Agent therefor or any further order of the
Court.

9.      Subject to the provisions of this Order, the Debtors and the Agent are hereby
authorized, pursuant to Sections 105(a) and 363(b)(1) of the Bankruptcy Code, to conduct the
Sale and consummate the sale of the Assets in accordance with the Agency Agreement and the
sale guidelines (the "Guidelines") attached hereto as Exhibit "B", which Guidelines are hereby
approved in their entirety.

10.     Pursuant to Section 363(b) of the Bankruptcy Code, the Debtors, the Agent and
each of their respective officers, employees and agents are hereby authorized and directed to
execute such documents and to take any and all such actions as may be necessary or desirable to
carry out the Sale, consummate the sale of the Assets and effectuate or implement the Agency
Agreement and each of the transactions and related actions contemplated or set forth therein. The
Agent is specifically authorized to act on behalf of the Debtors in connection with the Sale and
the sale of the Assets and no other consents or approvals are necessary or required for the
Debtors to carry out the Sale, consummate the sale of the Assets, effectuate the Agency
Agreement and each of the transactions and related actions contemplated or set forth therein.

11.     The Agent shall not assume, or in any way be liable or responsible for, any claim
or liability against any of the Debtors, whether known or unknown, whether asserted or
unasserted, whether accrued or unaccrued, whether contingent or not, whether at law or in equity
or otherwise, whether existing on the Closing Date or arising thereafter and whether relating to

15

Debtors:     Dots, LLC, et al.
Case No.:    14-11016 (DHS)
Caption:     Order Pursuant To Sections 105(A), 363, 365 And 554 Of The Bankruptcy Code (I) Approving The
             Debtors' Entry Into Agency Agreement, (II) Authorizing The Debtors To Sell Certain Merchandise
             Through Store Closing Sales, (III) Authorizing The Debtors And The Agent To Abandon Unsold
             Property, (IV) Authorizing The Sale Of Debtors' Assets Free And Clear Of All Liens, Claims,
             Encumbrances And Interests, And (V) Granting Related Relief
_____

or arising out of the Debtors' business, the Merchandise, the Assets, the Excluded Assets (as

defined in the Agency Agreement) or otherwise (including, without limitation, (x) liabilities

based on any successor liability theory and (y) liabilities relating to the pre-petition or post-

petition operation of the Debtors' business, the Merchandise or the Assets (or the use of the

Merchandise and/or the Assets). The Agent shall have no successor liability whatsoever with

respect to any Liens or claims of any nature that may exist against any of the Debtors (or any

predecessor or affiliate of any of the Debtors), including, without limitation, the Agent shall not

be and shall not be deemed to be: (i) a successor in interest within the meaning of any law,

including any revenue, successor liability, pension, labor, ERISA, bulk-transfer, products

liability, tax or environmental law, rule or regulation, or any theory of successor or transferee

liability, antitrust, environmental product line, de facto merger or substantial continuity or

similar theories; or (ii) a joint employer, co-employer or successor employer with the Debtors,

and except as may be provided in the Agency Agreement with regard to the payment of

"expenses" of the Sale under Section 4.1 thereof, the Agent shall have no obligation to pay the

Debtors' wages, bonuses, severance pay, vacation pay, WARN act claims (if any), benefits or

any other payments to employees of the Debtors, including pursuant to any collective bargaining

agreement, employee pension plan, or otherwise.

### D.   Conduct of the Sale and the Transaction

12.   Except as otherwise provided in the Agency Agreement, pursuant to Section

363(f) of the Bankruptcy Code the Agent shall be authorized to sell all of the Merchandise

located or to be located at the Closing Locations and shall be entitled to sell the Assets, in each

Page 17 of 40
Debtors:        Dots, LLC, et al.
Case No.:     14-11016 (DHS)
Caption:       Order Pursuant To Sections 105(A), 363, 365 And 554 Of The Bankruptcy Code (I) Approving The
                    Debtors' Entry Into Agency Agreement, (II) Authorizing The Debtors To Sell Certain Merchandise
                    Through Store Closing Sales, (III) Authorizing The Debtors And The Agent To Abandon Unsold
                    Property, (IV) Authorizing The Sale Of Debtors' Assets Free And Clear Of All Liens, Claims,
                    Encumbrances And Interests, And (V) Granting Related Relief
_____

case free and clear of any and all Liens, including, without limitation, the liens and security

interests, as the same may have been amended from time to time, of the Debtors' secured lenders

(including the DIP Secured Parties, the Prepetition Senior Secured Parties, and the Prepetition

Junior Secured Parties, but only to the extent allowed in and pursuant to the Agency Agreement

and this Order, as applicable) whether arising by agreement, any statute or otherwise and

whether arising before, on or after the date on which these chapter 11 cases were commenced,

with any presently existing Liens (including, but not limited to, the DIP Liens, the Prepetition

Senior Liens, the Prepetition Junior Liens, and the Adequate Protection Liens) encumbering all

or any portion of the Merchandise, the Assets, or the Proceeds thereof attaching only to the

Guaranteed Amount, Sharing Amount, and other amounts payable by Agent to the Debtors under

the Agency Agreement and received by the Debtors, with the same validity, priority, force and

effect as the same had with respect to the assets at issue, subject to any and all defenses, claims

and/or counterclaims or setoffs that may exist For the sake of clarity, however, nothing in this

paragraph is intended to diminish the liens in favor of the Agent, as reflected in the Agency

Agreement and this Order, that attach to the Proceeds (as defined in the Agency Agreement) of

the Sale.

      13.     If any person or entity that has filed financing statements, mortgages, construction

or mechanic's liens, *lis pendens* or other documents or agreement evidencing liens on or interests

in the Merchandise, the IP or the Assets shall not have delivered to the Debtors, in proper form

for filing and executed by the appropriate parties, termination statements, instruments of

satisfaction, or releases of any Liens that the person or entity, except the DIP Secured Parties and

*Approved by Judge Donald H. Steckroth February  27, 2014*

Debtors:      Dots, LLC, et al.
Case No.:     14-11016 (DHS)
Caption:      Order Pursuant To Sections 105(A), 363, 365 And 554 Of The Bankruptcy Code (I) Approving The
              Debtors' Entry Into Agency Agreement, (II) Authorizing The Debtors To Sell Certain Merchandise
              Through Store Closing Sales, (III) Authorizing The Debtors And The Agent To Abandon Unsold
              Property, (IV) Authorizing The Sale Of Debtors' Assets Free And Clear Of All Liens, Claims,
              Encumbrances And Interests, And (V) Granting Related Relief
_____

the Prepetition Senior Secured Parties (subject to Paragraph 35 below), has with respect to the

Merchandise, and the Assets, each such person or entity is hereby directed to deliver all such

statements, instruments, and releases and the Debtors and the Agent are hereby authorized to

execute and file such statements, instruments, releases and other documents on behalf of the

person or entity asserting the same. The Agent is authorized to file a copy of this Order which,

upon filing, shall be conclusive evidence of the release and termination of such interest. Each

and every federal, state and local governmental unit is hereby directed to accept any and all

documents and instruments necessary or appropriate to give effect to the Sale, the sale of the

Assets and the related transactions contemplated by the Agency Agreement.

14.      All entities that are presently in possession of some or all of the Merchandise, the

Assets or other property in which the Debtors hold an interest that are or may be subject to the

Agency Agreement hereby are directed to surrender possession of such Assets or other property

to the Agent.

15.      Unless otherwise ordered by the Court, all newspapers and other advertising

media in which the Sale may be advertised and all landlords are directed to accept this Order as

binding authority so as to authorize the Debtors and the Agent to consummate the Agency

Agreement and to consummate the transactions contemplated therein, including, without

limitation, to conduct and advertise the Sale in the manner contemplated by the Agency

Agreement.

16.      During the Sale Term, Agent shall be granted a royalty-free license to use the

Debtors' trade names, trademarks, and logos and customer, mailing and e-mail lists, websites

*Approved by Judge Donald H. Steckroth February  27, 2014*

Page 19 of 40
Debtors:      Dots, LLC, et al.
Case No.:     14-11016 (DHS)
Caption:      Order Pursuant To Sections 105(A), 363, 365 And 554 Of The Bankruptcy Code (I) Approving The
              Debtors' Entry Into Agency Agreement, (II) Authorizing The Debtors To Sell Certain Merchandise
              Through Store Closing Sales, (III) Authorizing The Debtors And The Agent To Abandon Unsold
              Property, (IV) Authorizing The Sale Of Debtors' Assets Free And Clear Of All Liens, Claims,
              Encumbrances And Interests, And (V) Granting Related Relief
_____

and social media relating to and used in connection with the operation of the Closing Locations,

solely for the purpose of advertising the Sale in accordance with the terms of the Agency

Agreement; provided, however, the Agent shall not receive Personally Identifiable Information

(as defined in Section 101(41A) of the Bankruptcy Code) from the Debtors.

17.    Pursuant to Section 554(a) of the Bankruptcy Code, the Debtors and the Agent, as

applicable, are permitted to abandon property of the Debtors' estate in accordance with the terms

and provisions of the Agency Agreement, without the Agent incurring liability to any person or

entity that may claim an interest in such abandoned property; provided, however, that, unless the

Agent otherwise consents, the Debtors may only abandon property located in any Closing

Location on or after the applicable Sale Termination Date. In the event of any such

abandonment, all applicable landlords shall be authorized to dispose of such property without

any liability to any individual or entity that may claim an interest in such abandoned property,

and such abandonment shall be without prejudice to any landlord's right to assert any claim

based on such abandonment and without prejudice to the Debtor or other party in interest to

object thereto.  Nothing in this Order or the Agency Agreement shall be deemed to modify the

provisions of the order entered on February 19, 2014 [D.R. No. 236] approving procedures for

the rejection of leases and executory contracts.

18.    Before any sale, abandonment or other disposition of the Debtors' computers

(including software) and/or cash registers and any other point of sale Owned FF&E located at the

Closing Locations (collectively, "POS Equipment") which may contain customer lists,

identifiable personal and/or confidential information about the Debtor's employees and/or

*Approved by Judge Donald H. Steckroth February  27, 2014*

Page 20 of 40
Debtors:      Dots, LLC, et al.
Case No.:     14-11016 (DHS)
Caption:      Order Pursuant To Sections 105(A), 363, 365 And 554 Of The Bankruptcy Code (I) Approving The
              Debtors' Entry Into Agency Agreement, (II) Authorizing The Debtors To Sell Certain Merchandise
              Through Store Closing Sales, (III) Authorizing The Debtors And The Agent To Abandon Unsold
              Property, (IV) Authorizing The Sale Of Debtors' Assets Free And Clear Of All Liens, Claims,
              Encumbrances And Interests, And (V) Granting Related Relief
_____

customers, or credit card numbers ("Confidential Information") takes effect, the Debtors (and not

the Agent) shall take such steps as shall be necessary and/or appropriate to remove or cause to be

removed the Confidential Information from the POS Equipment, and unless otherwise notified

by Debtors in writing to the contrary, the Agent shall be entitled to assume and presume that the

Debtors have satisfactorily completed such steps at or prior to the time of any such sale,

abandonment or other disposition.

19.     Nothing in this Order or the Agency Agreement releases, nullifies, or enjoins the

enforcement of any liability to a governmental unit under environmental laws or regulations (or

any associated liabilities for penalties, damages, cost recovery, or injunctive relief) that any

entity would be subject to as the owner, lessor, lessee, or operator of the property after the date

of entry of this Order. Nothing contained in this Order or in the Agency Agreement shall in any

way (i) diminish the obligation of any entity to comply with environmental laws, or (ii) diminish

the obligations of the Debtors to comply with environmental laws consistent with their rights and

obligations as debtors in possession under the Bankruptcy Code. Nothing herein shall be

construed to be a determination that the Agent is an operator with respect to any environmental

law or regulation. Further, nothing herein permits the Debtors or the Agent to conduct any Sale

at a Closing Location beyond the stated expiration under the lease for such Closing Location or

extends the term of the lease for such Closing Location. Moreover, the Sale shall not be exempt

from, and the Agent shall be required to comply with, laws of general applicability, including,

without limitation, public health and safety, criminal, tax, labor, employment, environmental,

antitrust, fair competition, traffic and consumer protection laws, including consumer laws

*Approved by Judge Donald H. Steckroth February  27, 2014*

Debtors:      Dots, LLC, et al.
Case No.:     14-11016 (DHS)
Caption:      Order Pursuant To Sections 105(A), 363, 365 And 554 Of The Bankruptcy Code (I) Approving The
              Debtors' Entry Into Agency Agreement, (II) Authorizing The Debtors To Sell Certain Merchandise
              Through Store Closing Sales, (III) Authorizing The Debtors And The Agent To Abandon Unsold
              Property, (IV) Authorizing The Sale Of Debtors' Assets Free And Clear Of All Liens, Claims,
              Encumbrances And Interests, And (V) Granting Related Relief
_____

regulating deceptive practices and false advertising (collectively, "General Laws"). Nothing in

this Order shall alter or affect the Debtors' and Agent's obligations to comply with all applicable

federal safety laws and regulations. Nothing in this Order shall be deemed to bar any

Governmental Unit (as defined in Section 101(27) of the Bankruptcy Code) from enforcing

General Laws in the applicable non-bankruptcy forum, subject to the Debtors' or the Agent's

right to assert in that forum or before this Court that any such laws are not in fact General Laws

or that such enforcement is impermissible under the Bankruptcy Code, this Order, or otherwise.

Notwithstanding any other provision in this Order, no party waives any rights to argue any

position with respect to whether the conduct was in compliance with this Order and/or any

applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code.

Nothing in this Order shall be deemed to have made any rulings on any such issues.

E.      **Disputes Between Government Units and the Debtors or the Agent**

        20.     To the extent that the conduct of the Sale is subject to any federal, state or local

statute, ordinance, or rule, or licensing requirement directed at regulating "going out of

business," "store closing," similar inventory liquidation Sale, or bulk sale laws (each a "GOB

Law", and together the "GOB Laws"), including certain fast pay laws and laws restricting safe,

professional and non-deceptive, customary advertising such as signs, banners, posting of

signage, and use of sign-walkers solely in connection with the Sale and including ordinances

establishing license or permit requirements, waiting periods, time limits or bulk sale restrictions

that would otherwise apply to the Sale (collectively, the "Liquidation Laws"), the following

provisions shall apply:

*Approved by Judge Donald H. Steckroth February  27, 2014*

Debtors:      Dots, LLC, et al.
Case No.:     14-11016 (DHS)
Caption:      Order Pursuant To Sections 105(A), 363, 365 And 554 Of The Bankruptcy Code (I) Approving The
              Debtors' Entry Into Agency Agreement, (II) Authorizing The Debtors To Sell Certain Merchandise
              Through Store Closing Sales, (III) Authorizing The Debtors And The Agent To Abandon Unsold
              Property, (IV) Authorizing The Sale Of Debtors' Assets Free And Clear Of All Liens, Claims,
              Encumbrances And Interests, And (V) Granting Related Relief
_____

a. Except to the extent of the reserved rights of Governmental Units expressly granted elsewhere in this Order, the Agent is authorized to conduct, advertise, post signs and banners, and otherwise promote the Sale as a "going out of business", "store closing", "sale on everything", "total liquidation", "everything must go", or similarly themed sale (including, without limitation, by means of media advertising, interior and exterior banners, A-frames, and similar signage and the use of sign walkers) without further consent of any person (other than the Debtors as expressly provided for in the Agency Agreement), in accordance with the terms and conditions of the Agency Agreement, the Guidelines and this Order and without further compliance with the GOB Laws and the Liquidation Laws, except those designed to protect public health and safety.

b. Provided that the Sale is conducted in accordance with the terms of this Order, the Agency Agreement and the Guidelines, and in light of the provisions in the laws of many Governmental Units that exempt court-ordered Sale from their provisions, the Debtors shall be presumed to be in compliance with any GOB Laws and Liquidation Laws and, subject to Paragraphs 20-21 hereof, are authorized to conduct the Sale in accordance with the terms of this Order and the Guidelines without the necessity of further showing compliance with any such GOB Laws and Liquidation Laws.

c. Within five (5) business days of entry of this Order, the Debtors shall serve copies of this Order, the Agency Agreement and the Guidelines via e-mail, facsimile or regular mail, on: (i) the Attorney General's office for each state where the Sale is being held, (ii) the county consumer protection agency or similar agency for each county where the Sale will be held, (iii)

*Approved by Judge Donald H. Steckroth February 27, 2014*

Page 23 of 40
Debtors:      Dots, LLC, et al.
Case No.:     14-11016 (DHS)
Caption:      Order Pursuant To Sections 105(A), 363, 365 And 554 Of The Bankruptcy Code (I) Approving The
              Debtors' Entry Into Agency Agreement, (II) Authorizing The Debtors To Sell Certain Merchandise
              Through Store Closing Sales, (III) Authorizing The Debtors And The Agent To Abandon Unsold
              Property, (IV) Authorizing The Sale Of Debtors' Assets Free And Clear Of All Liens, Claims,
              Encumbrances And Interests, And (V) Granting Related Relief
_____

the division of consumer protection for each state where the Sale will be held; and (iv) the chief

legal counsel for the local jurisdiction.

      d.    To the extent there is a dispute arising from or relating to the Sale, this Order, the

Agency Agreement, or the Guidelines, which dispute relates to any GOB Laws or Liquidation

Laws (a "Reserved Dispute"), the Court shall retain exclusive jurisdiction to resolve the

Reserved Dispute. Any time within fifteen (15) days following service of this Order, any

Governmental Unit may assert that a Reserved Dispute exists by serving written notice of such

Reserved Dispute to counsel for the Debtors and counsel for the Agent at the addresses set forth

in the Agency Agreement so as to ensure delivery thereof within one (1) business day thereafter.

If the Debtors, the Agent and the Governmental Unit are unable to resolve the Reserved Dispute

within fifteen (15) days of service of the notice, the aggrieved party may file a motion with this

Court requesting that this Court resolve the Reserved Dispute (a "Dispute Resolution Motion").

      e.    In the event a Dispute Resolution Motion is filed, nothing in this Order shall

preclude the Debtors, a landlord, the Agent or other interested party from asserting (i) that the

provisions of any GOB Laws and/or Liquidation Laws are preempted by the Bankruptcy Code or

(ii) that neither the terms of this Order, nor the Debtors' or the Agent's conduct pursuant to this

Order, violates such GOB Laws and/or Liquidation Laws. Filing a Dispute Resolution Motion as

set forth herein shall not be deemed to affect the finality of this Order or to limit or interfere with

the Debtors' or the Agent's ability to conduct or to continue to conduct the Sale pursuant to this

Order and the Agency Agreement, absent  further order of this Court. The Court grants authority

for the Debtors and the Agent to conduct the Sale pursuant to the terms of this Order, the Agency

*Approved by Judge Donald H. Steckroth February  27, 2014*

Debtors:       Dots, LLC, et al.
Case No.:      14-11016 (DHS)
Caption:       Order Pursuant To Sections 105(A), 363, 365 And 554 Of The Bankruptcy Code (I) Approving The
               Debtors' Entry Into Agency Agreement, (II) Authorizing The Debtors To Sell Certain Merchandise
               Through Store Closing Sales, (III) Authorizing The Debtors And The Agent To Abandon Unsold
               Property, (IV) Authorizing The Sale Of Debtors' Assets Free And Clear Of All Liens, Claims,
               Encumbrances And Interests, And (V) Granting Related Relief
_____

Agreement, and/or the Guidelines attached hereto and to take all actions reasonably related

thereto or arising in connection therewith. The Governmental Unit shall be entitled to assert any

jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of

its Liquidation Laws or the lack of any preemption of such GOB Laws and/or Liquidation Laws

by the Bankruptcy Code. Nothing in this Order shall constitute a ruling with respect to any issues

to be raised in any Dispute Resolution Motion.

   f. If, at any time, a dispute arises between the Debtors and/or the Agent and a

Governmental Unit as to whether a particular law is a GOB Law and/or Liquidation Law, and

subject to any provisions contained in this Order related to GOB Laws and/or Liquidation Laws,

then any party to that dispute may utilize the provisions of subparagraphs (c) and (d) hereunder

by serving a notice to the other party and proceeding thereunder in accordance with those

paragraphs. Any determination with respect to whether a particular law is a GOB Law and/or

Liquidation Law shall be made de novo.

   g. In the event the Agent receives notice of any alleged violation of any law in

connection with the conduct of the Sale, the Agent shall provide a copy of any such notice to the

Debtors, who in turn shall provide a copy of any such notice to any landlord for any location(s)

as to which the alleged violation relates.

   21. Notwithstanding anything herein to the contrary, and in view of the importance of

the use of sign-walkers, banners, and other advertising to the Sale, to the extent that disputes

arise during the course of the Sale regarding laws regulating the use of sign-walkers and banner

advertising and the Debtors and the Agent are unable to resolve the matter consensually with the

*Approved by Judge Donald H. Steckroth February  27, 2014*

Debtors:      Dots, LLC, et al.
Case No.:     14-11016 (DHS)
Caption:      Order Pursuant To Sections 105(A), 363, 365 And 554 Of The Bankruptcy Code (I) Approving The
              Debtors' Entry Into Agency Agreement, (II) Authorizing The Debtors To Sell Certain Merchandise
              Through Store Closing Sales, (III) Authorizing The Debtors And The Agent To Abandon Unsold
              Property, (IV) Authorizing The Sale Of Debtors' Assets Free And Clear Of All Liens, Claims,
              Encumbrances And Interests, And (V) Granting Related Relief
_____

Governmental Unit, any party may request an immediate telephonic hearing with this Court pursuant to these provisions. Such hearing will, to the extent practicable, be scheduled initially within two (2) business days of such request. This scheduling shall not be deemed to preclude additional hearings for the presentation of evidence or arguments as necessary.

22.     Except as expressly provided in the Agency Agreement, the Sale shall be conducted by the Debtors and the Agent notwithstanding any restrictive provision of any lease, sublease or other agreement relative to occupancy affecting or purporting to restrict the conduct of the Sale, the rejection of leases, abandonment of assets or "going dark" or similar provisions. The Agent and landlords of the Closing Locations are authorized to enter into separate agreements and/or side letters ("Side Letters") between themselves modifying the Guidelines without further order of the Court, and such Side Letters shall be binding as among the Agent and any such landlords; provided that nothing in such Side Letters affects the provisions of Paragraphs 20-21. In the event of any conflict between the Guidelines and any Side Letter, the terms of such Side Letter shall control. In the event of a dispute regarding the Guidelines or any Side Letter, counsel for each of the Debtors, the applicable landlord, and the Agent shall meet and confer to resolve the dispute. In the event that the parties are unable to resolve the dispute, any party seeking relief may request a prompt hearing before the Court to resolve such dispute.

23.     Except as expressly provided for herein or in the Guidelines, and except with respect to any Governmental Unit (as to which Paragraphs 20-21 shall apply), no person or entity, including but not limited to any landlord, licensor, or creditor, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Sale, or

*Approved by Judge Donald H. Steckroth February  27, 2014*

Debtors:        Dots, LLC, et al.
Case No.:      14-11016 (DHS)
Caption:        Order Pursuant To Sections 105(A), 363, 365 And 554 Of The Bankruptcy Code (I) Approving The
                Debtors' Entry Into Agency Agreement, (II) Authorizing The Debtors To Sell Certain Merchandise
                Through Store Closing Sales, (III) Authorizing The Debtors And The Agent To Abandon Unsold
                Property, (IV) Authorizing The Sale Of Debtors' Assets Free And Clear Of All Liens, Claims,
                Encumbrances And Interests, And (V) Granting Related Relief
_____

the advertising and promotion (including the posting of signs and exterior banners or the use of

sign-walkers) of such Sale, and all such parties and persons of every nature and description,

including landlords, licensors, creditors and utility companies and all those acting for or on

behalf of such parties, are prohibited and enjoined from (i) interfering in any way with, or

otherwise impeding, the conduct of the Sale and/or (ii) instituting any action or proceeding in

any court or administrative body seeking an order or judgment against, among others, the

Debtors, the Agent, or the landlords at the Closing Locations that might in any way directly or

indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Sale or other

liquidation sales at the Closing Stores and/or seek to recover damages for breach(es) of

covenants or provisions in any lease, sublease or license based upon any relief authorized herein.

24.     The Agent shall have the right to use the Closing Locations and all related

services, furniture, fixtures, equipment and other assets of the Debtors for the purpose of

conducting the Sale, free of any interference from any entity or person, subject to compliance

with the Guidelines, the Agency Agreement and this Order.

25.     The Agent shall be permitted to include in the Sale Additional Agent Merchandise

in accordance with the terms and provisions of the Agency Agreement. Any transactions relating

to the Additional Agent Merchandise are, and shall be construed as, a true consignment from

Agent to Debtors. Debtors acknowledge that the Additional Agent Merchandise shall be

consigned to Debtors as a true consignment under Article 9 of the Uniform Commercial Code in

effect in the State of New Jersey (the "UCC"). Agent is hereby granted a first priority security

interest in (i) the Additional Agent Merchandise and (ii) the Additional Agent Merchandise

*Approved by Judge Donald H. Steckroth February  27, 2014*

Debtors:      Dots, LLC, et al.
Case No.:     14-11016 (DHS)
Caption:      Order Pursuant To Sections 105(A), 363, 365 And 554 Of The Bankruptcy Code (I) Approving The
              Debtors' Entry Into Agency Agreement, (II) Authorizing The Debtors To Sell Certain Merchandise
              Through Store Closing Sales, (III) Authorizing The Debtors And The Agent To Abandon Unsold
              Property, (IV) Authorizing The Sale Of Debtors' Assets Free And Clear Of All Liens, Claims,
              Encumbrances And Interests, And (V) Granting Related Relief
_____

proceeds, which security interest shall be deemed perfected pursuant to this Order without the

requirement of filing UCC financing statements or providing notifications to any prior secured

parties (provided that Agent is hereby authorized to deliver any notices and file any financing

statements and amendments thereof under the applicable UCC identifying Agent's interest in the

Additional Agent Merchandise (and any proceeds from the sale thereof) as consigned goods

thereunder and the Debtors as the consignee therefor, and Agent's security interest in such

Additional Agent Merchandise and Additional Agent Merchandise proceeds). Subject to the

terms of the Agency Agreement, and solely to the extent applicable, the proceeds of the sales of

Additional Agent Merchandise sold at a particular Closing Location shall be taken into account

when calculating any percentage rent due pursuant to the terms of the applicable lease

agreement.

26.     Nothing in this Order shall (a) alter or affect the Debtors' obligations to comply

with Section 365(d)(3) of the Bankruptcy Code or (b) alter or modify the rights of any lessor or

other counterparty to a lease with the Debtors to file an appropriate motion or otherwise seek

appropriate relief if the Debtors fail to comply with Section 365(d)(3) of the Bankruptcy Code;

provided that the conduct of the Sale in accordance with the Guidelines shall not be a violation

of Section 365(d)(3) of the Bankruptcy Code.

27.     The Agent shall accept as payment the Debtors' gift certificates, gift cards and

store merchandise credits in any transaction conducted in connection with the Sale for the first

twenty-one (21) days of the Sale pursuant to the provisions of Section 8.6 of the Agency

Agreement; provided, however, the Agent shall not be required to accept any mall and/or

Approved by Judge Donald H. Steckroth February  27, 2014

Page 28 of 40
Debtors:       Dots, LLC, et al.
Case No.:     14-11016 (DHS)
Caption:      Order Pursuant To Sections 105(A), 363, 365 And 554 Of The Bankruptcy Code (I) Approving The
              Debtors' Entry Into Agency Agreement, (II) Authorizing The Debtors To Sell Certain Merchandise
              Through Store Closing Sales, (III) Authorizing The Debtors And The Agent To Abandon Unsold
              Property, (IV) Authorizing The Sale Of Debtors' Assets Free And Clear Of All Liens, Claims,
              Encumbrances And Interests, And (V) Granting Related Relief
_____

landlord-issued gift cards, gift certificates, merchandise credits or other similar items unless

satisfactory arrangements (as determined in the sole and exclusive discretion of Agent) are made

between and among the Agent and the issuer of such items for reimbursement to the Agent for

all such amounts honored during the Sale Term.

28.    The Agent shall accept returns of merchandise sold by the Debtors prior to the

Sale Commencement Date for the first twenty-one (21) days of the Sale pursuant to the

provisions of Section 8.5 of the Agency Agreement.

29.    To the extent applicable, all state and federal laws relating to implied warranties

for latent defects shall be complied with and are not superseded by the sale of said goods or the

use of the terms "as is" or "final sale." The Debtors and/or the Agent shall accept return of any

goods purchased during the Sale that contain a defect which the lay consumer could not

reasonably determine was defective by visual inspection prior to purchase for a full refund,

provided that the consumer must return the merchandise promptly after discovery of the asserted

latent defect therein, the consumer must provide a receipt, and the asserted defect must in fact be

a "latent" defect. The Debtors shall promptly reimburse Agent in cash for any refunds Agent is

required to issue to customers in respect of any goods purchased during the Sale that contain

such a latent defect.

30.    Except as expressly provided for in the Agency Agreement, nothing in this Order

or the Agency Agreement, and none of the Agent's actions taken in respect of the Sale, the sale

of the Assets or the transactions contemplated by the Agency Agreement shall be deemed to

constitute an assumption by the Agent of any of the Debtors' obligations relating to any of the

*Approved by Judge Donald H. Steckroth February  27, 2014*

Page 29 of 40
Debtors:       Dots, LLC, et al.
Case No.:      14-11016 (DHS)
Caption:       Order Pursuant To Sections 105(A), 363, 365 And 554 Of The Bankruptcy Code (I) Approving The
               Debtors' Entry Into Agency Agreement, (II) Authorizing The Debtors To Sell Certain Merchandise
               Through Store Closing Sales, (III) Authorizing The Debtors And The Agent To Abandon Unsold
               Property, (IV) Authorizing The Sale Of Debtors' Assets Free And Clear Of All Liens, Claims,
               Encumbrances And Interests, And (V) Granting Related Relief
_____

Debtors' employees. Moreover, the Agent shall not become liable under any collective

bargaining or employment agreement or be deemed a joint or successor employer with respect to

such employees.

31.     The Agent shall not be liable for sale taxes except as expressly provided in the

Agency Agreement and the collection, reporting and the payment of any and all sale taxes is the

sole responsibility of the Debtors. The Debtors are directed to remit all taxes arising from the

Sale to the applicable taxing authorities as and when due, provided that in the case of a bona fide

dispute the Debtors are only directed to pay such taxes upon the resolution of the dispute, if and

to the extent that the dispute is decided in favor of the taxing authority. For the avoidance of

doubt, sale taxes collected and held in trust by the Debtors shall not be used to pay any creditor

or any other party, other than the taxing authority for which the sale taxes are collected. The

Agent shall collect, remit to the Debtors and account for sale taxes as and to the extent provided

in the Agency Agreement. This Order does not enjoin, suspend or restrain the assessment, levy

or collection of any tax under State law, and does not constitute a declaratory judgment with

respect to any party's liability for taxes under State law.

32.     Subject to the terms set forth in the Agency Agreement, the Agent is authorized

and empowered to transfer the Merchandise and additional Agent Merchandise between and

among the Closing Locations.

**F.      Superpriority Claims and Liens Granted To Agent**

*Approved by Judge Donald H. Steckroth February  27, 2014*

Debtors:     Dots, LLC, et al.
Case No.:    14-11016 (DHS)
Caption:     Order Pursuant To Sections 105(A), 363, 365 And 554 Of The Bankruptcy Code (I) Approving The
             Debtors' Entry Into Agency Agreement, (II) Authorizing The Debtors To Sell Certain Merchandise
             Through Store Closing Sales, (III) Authorizing The Debtors And The Agent To Abandon Unsold
             Property, (IV) Authorizing The Sale Of Debtors' Assets Free And Clear Of All Liens, Claims,
             Encumbrances And Interests, And (V) Granting Related Relief
_____

34.     Any amounts owed by Debtors to the Agent under the Agency Agreement shall

be granted the status of administrative expense priority claims in the Bankruptcy Cases pursuant

to Section 507(a) of the Bankruptcy Code.

35.     Pursuant to Section 364(d) of the Bankruptcy Code, the Agent shall have,

effective upon payment by the Agent of the Initial Guaranty Payment on the Payment Date and

delivery of the Letter of Credit to the DIP Agent, a valid, duly perfected first priority, senior

security interests in and liens (subject to the subordination provisions set forth herein below)

upon: (i) the Merchandise; (ii) the Additional Agent Merchandise; (iii) all Proceeds (including,

without limitation, credit card Proceeds); (iv) the Agent's commission regarding the sale or other

disposition of Merchant Consignment Goods under Section 5.4 hereof; (v) in the event the

Debtors elect the FF&E Guaranty Option, the proceeds realized from the sale or other disposition

of Owned FF&E after payment of the FF&E Guaranty Amount; or alternatively, the FF&E

Commission; (vi) the Agent's percentage share of such Sharing Amount, and (vii) all "proceeds"

(within the meaning of Section 9-102(a)(64) of the UCC) of each of the foregoing (all of which

are collectively referred to herein as the "Agent Collateral"), to secure the full payment and

performance of all obligations of the Debtors to the Agent under the Agency Agreement. For the

avoidance of doubt, the Agent Collateral shall not include the Guaranteed Amount, the Sharing

Amount or any other amount payable by the Agent to the Debtors under the Agency Agreement

or any proceeds thereof. Upon entry of this Order, payment of the Initial Guaranty Payment and

delivery of the Letter of Credit to the DIP Agent, the security interest granted to the Agent

hereunder shall be deemed properly perfected without the necessity of filing UCC-1 financing

Page 31 of 40
Debtors:      Dots, LLC, et al.
Case No.:     14-11016 (DHS)
Caption:      Order Pursuant To Sections 105(A), 363, 365 And 554 Of The Bankruptcy Code (I) Approving The
              Debtors' Entry Into Agency Agreement, (II) Authorizing The Debtors To Sell Certain Merchandise
              Through Store Closing Sales, (III) Authorizing The Debtors And The Agent To Abandon Unsold
              Property, (IV) Authorizing The Sale Of Debtors' Assets Free And Clear Of All Liens, Claims,
              Encumbrances And Interests, And (V) Granting Related Relief
_____

statements or any other documentation. Without any further act by or on behalf of the Agent or

any other party (including (without limitation) the DIP Agent and the Debtors), the Agent's

security interests and liens in the Agent Collateral created hereunder are (i) validly created, (ii)

effective upon entry of the Approval Order, perfected, and (iii) senior to all other liens and

security interests; provided, however, that (x) until the Debtors receive payment in full of the

Guaranteed Amount, the Additional Agent Merchandise Fee, the Sharing Amount, Expenses, the

proceeds realized upon a sale of Owned FF&E (less the Agent FF&E Commission) or the FF&E

Guaranty Amount, as applicable, and such other amounts due to the Debtors under the Agency

Agreement, the security interest granted to the Agent hereunder shall be junior and subordinate

in all respects to the security interests of the DIP Secured Parties and the Prepetition Senior

Secured Parties in the Agent Collateral but solely to the extent and amount of the unpaid portion

of the Guaranteed Amount, the Additional Agent Merchandise Fee, the Sharing Amount (if any),

Expenses, the proceeds realized upon a sale of Owned FF&E (less the Agent FF&E

Commission) or the FF&E Guaranty Amount, as applicable, and such other amounts due to the

Debtors under the Agency Agreement and (y) upon payment in full of the Guaranteed Amount,

the Additional Agent Merchandise Fee, the Sharing Amount (if any), Expenses, the proceeds

realized upon a sale of Owned FF&E (less the Agent FF&E Commission) or the FF&E Guaranty

Amount, as applicable, and such other amounts due to the Debtors under the Agency Agreement,

any security interest or lien of the DIP Secured Parties and the Prepetition Senior Secured Parties

in the Agent Collateral shall be junior and subordinate in all respects to the security interest and

liens of the Agent in the Agent Collateral. The Debtors shall cooperate with the Agent with

*Approved by Judge Donald H. Steckroth February 27, 2014*

Debtors:     Dots, LLC, et al.
Case No.:    14-11016 (DHS)
Caption:     Order Pursuant To Sections 105(A), 363, 365 And 554 Of The Bankruptcy Code (I) Approving The
             Debtors' Entry Into Agency Agreement, (II) Authorizing The Debtors To Sell Certain Merchandise
             Through Store Closing Sales, (III) Authorizing The Debtors And The Agent To Abandon Unsold
             Property, (IV) Authorizing The Sale Of Debtors' Assets Free And Clear Of All Liens, Claims,
             Encumbrances And Interests, And (V) Granting Related Relief
_____

respect to all filings (including, without limitation, UCC-1 financing statements) and other

actions to the extent reasonably requested by the Agent in connection with the security interests

and liens granted under the Agency Agreement. In the event of a Default by any Debtor under

the Agency Agreement, in any jurisdiction where the enforcement of its rights hereunder is

sought, the Agent shall have, in addition to all other rights and remedies, the rights and remedies

of a secured party under the Uniform Commercial Code as the same may be in effect from time

to time in the State of New Jersey.

36.     During the Sale Term applicable to any Closing Location and for purposes of

conducting the Sale at such Closing Location, Agent shall have the right to the unencumbered

use and occupancy of, and peaceful and quiet possession of, such Closing Location and the

assets currently located at such Closing Location, in each case subject to the extent of the

Debtors rights and entitlement to use the same and the services provided at such Closing

Location to the extent the Debtors are entitled to such services, and, subject to the terms of the

Agency Agreement, the Debtors shall not assume and assign, reject or otherwise terminate any

real property lease or vacate any Closing Location until the applicable Sale Termination Date.

37.     The Debtors are authorized and directed to execute such documents and take all

other actions as may be necessary to release any Liens of any kind against the Assets as such

Liens may have been recorded or may otherwise exist, in accordance with the terms of this

Order. Any liens, Liens, interests, liabilities, obligations, claims, charges and interests of any

kind asserted under laws, rules,  regulations or governmental or court orders imposing a stamp,

transfer tax or similar tax arising from the transfer of the Assets to the Agent shall be filed

*Approved by Judge Donald H. Steckroth February  27, 2014*

Debtors:      Dots, LLC, et al.
Case No.:     14-11016 (DHS)
Caption:      Order Pursuant To Sections 105(A), 363, 365 And 554 Of The Bankruptcy Code (I) Approving The
              Debtors' Entry Into Agency Agreement, (II) Authorizing The Debtors To Sell Certain Merchandise
              Through Store Closing Sales, (III) Authorizing The Debtors And The Agent To Abandon Unsold
              Property, (IV) Authorizing The Sale Of Debtors' Assets Free And Clear Of All Liens, Claims,
              Encumbrances And Interests, And (V) Granting Related Relief
_____

against the Debtors' estates and shall not be asserted against the Agent. Pursuant to Sections

105(a) and 363 of the Bankruptcy Code,  all persons and Governmental Units (as defined in

Sections 101(27) and 101(41) of the Bankruptcy Code) are hereby enjoined from taking any

action against the Agent to recover any claim which such person or Governmental Unit has or

may assert against the Debtors (as such claims exist immediately prior to the closing). The Agent

has not assumed or otherwise become obligated for any of the Debtors' liabilities. Consequently,

all holders of liabilities retained by the Debtors are hereby enjoined from asserting or prosecuting

any claim, encumbrance or cause of action against the Agent to recover on account of any such

liabilities. Pursuant to Sections 105 and 363 of the Bankruptcy Code, all persons and entities,

including, but not limited to, all parties holding any claim, encumbrance or cause of action

against the Debtors, their estates or their  assets, the Debtors' employees, former employees and

members, administrative agencies, governmental departments, secretaries of state, federal, state

and local officials, including such officials maintaining any authority relating to environmental,

labor and health and safety laws, and their respective successors or assigns, are hereby

permanently and forever barred, restrained and enjoined from commencing or continuing in any

manner any action or other proceeding of any kind or the employment of any process or any act

to collect, offset or recover such claim, encumbrance or cause of action against the Agent, or that

seeks to impose liability upon the  Agent or any affiliate, successor or assign thereof, or against

the Assets under the laws of the United States, any state, territory or possession thereof or the

District of Columbia based, in whole or in part, directly or indirectly, on any theory of law,

including, without limitation, any theory of successor or transferee liability or any liability for

*Approved by Judge Donald H. Steckroth February  27, 2014*

Debtors:      Dots, LLC, et al.
Case No.:     14-11016 (DHS)
Caption:      Order Pursuant To Sections 105(A), 363, 365 And 554 Of The Bankruptcy Code (I) Approving The
              Debtors' Entry Into Agency Agreement, (II) Authorizing The Debtors To Sell Certain Merchandise
              Through Store Closing Sales, (III) Authorizing The Debtors And The Agent To Abandon Unsold
              Property, (IV) Authorizing The Sale Of Debtors' Assets Free And Clear Of All Liens, Claims,
              Encumbrances And Interests, And (V) Granting Related Relief
_____

pre- or post-petition claim, encumbrance or cause of action against the Debtors by reason of the

disposition of the Assets in the manner contemplated by the Agency Agreement and this Order,

including, without limitation, pre- and post-petition claims, Liens or causes of action of any

federal, state or local governmental entities, of any current or former employee for claims arising

out of employment and termination of employment, including, without limitation, claims for

wages, bonuses, commissions, accrued vacation, severance, continuation of coverage under

COBRA, or pension, welfare, fringe benefits or any other benefits of any kind including, without

limitation, obligations in respect of retiree medical coverage or benefits.

38.      Each and every federal, state, and local governmental agency or department is

hereby directed to accept any and all documents and instruments necessary and appropriate to

consummate the transactions contemplated by the Agency Agreement and this Order.

39.      The provisions of this Order shall be self-executing, and neither the Debtors nor

the Agent shall be required to execute or file releases, termination statements, assignments,

consents, or other instruments in order to effectuate, consummate and implement the provisions

of this Order. However, the Debtors and the Agent and each of their respective officers,

employees and agents are hereby authorized and empowered to take all actions and execute and

deliver any and all documents and instruments that either the Debtors or the Agent deem

necessary or appropriate to implement and effectuate the terms of the Agency Agreement and

this Order.

40.      The Agency Agreement and any related agreement may be waived, modified,

amended, or supplemented by agreement of the Debtors, the Agent, and the DIP Secured Parties

*Approved by Judge Donald H. Steckroth February  27, 2014*

Debtors:     Dots, LLC, et al.
Case No.:    14-11016 (DHS)
Caption:     Order Pursuant To Sections 105(A), 363, 365 And 554 Of The Bankruptcy Code (I) Approving The
             Debtors' Entry Into Agency Agreement, (II) Authorizing The Debtors To Sell Certain Merchandise
             Through Store Closing Sales, (III) Authorizing The Debtors And The Agent To Abandon Unsold
             Property, (IV) Authorizing The Sale Of Debtors' Assets Free And Clear Of All Liens, Claims,
             Encumbrances And Interests, And (V) Granting Related Relief
_____

and the Prepetition Senior Secured Parties, without further action of the Court; provided,

however, that any such waiver, modification, amendment, or supplement is not material and

substantially conforms to and effectuates this Order and the Agency Agreement and any related

agreement; provided further that the Sale Termination Date shall not be later than May 31, 2014,

unless either: (a) extended by further order of the Court, or (b) the Debtors, Agent, the DIP

Secured Parties, the Prepetition Senior Secured Parties, and the applicable landlord agree in

writing to extend the Sale Termination Date at such landlord's location; provided further that the

Debtors shall provide not less than seven (7) days' notice to the Attorneys General for each

affected state of any extension of the Sale beyond May 31, 2014.

41.     The Agent shall not be obligated to (i) continue or maintain in effect, or assume

any liability in respect of any employee pension, welfare, fringe benefit or any other benefit plan,

trust arrangement or other agreement to which any Debtor is a party or has any responsibility

therefor, including, without limitation, medical, welfare and pension benefits payable after

retirement or other termination of employment, or (ii) assume any responsibility as a fiduciary,

plan sponsor or otherwise, for making any contribution to, or in respect of the funding,

investment or administration of any employee pension plan or the termination of any such plan.

## G.     <u>Order Binding</u>

42.     This Order shall be binding upon and shall govern the acts of all entities,

including, without limitation, all filing agents, filing officers, title agents, title companies,

recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies,

governmental departments, secretaries of state, federal, state and local officials, and all other

Debtors:      Dots, LLC, et al.
Case No.:     14-11016 (DHS)
Caption:      Order Pursuant To Sections 105(A), 363, 365 And 554 Of The Bankruptcy Code (I) Approving The
              Debtors' Entry Into Agency Agreement, (II) Authorizing The Debtors To Sell Certain Merchandise
              Through Store Closing Sales, (III) Authorizing The Debtors And The Agent To Abandon Unsold
              Property, (IV) Authorizing The Sale Of Debtors' Assets Free And Clear Of All Liens, Claims,
              Encumbrances And Interests, And (V) Granting Related Relief
_____

persons and entities who may be required by operation of law, the duties of their office, or

contract, to accept, file, register or otherwise record or release any documents or instruments, or

who may be required to report or insure any title or state of title in or to the Assets.

43.     This Order and the terms and provisions of the Agency Agreement shall be

binding on all of the Debtors' creditors (whether known or unknown), the Debtors, the Agent

and their respective affiliates, successors and assigns, and any affected third parties including,

but not limited to, all persons asserting an interest in the Merchandise and the Assets,

notwithstanding any subsequent appointment of any trustee, party, entity or other fiduciary under

any section of the Bankruptcy Code with respect to the forgoing parties, and as to such trustee,

party, entity or other fiduciary, such terms and provisions likewise shall be binding. The

provisions of this Order and the terms and provisions of the Agency Agreement, and any actions

taken pursuant hereto or thereto shall survive the entry of any order which may be entered

confirming or consummating any plan(s) of the Debtors or converting the Debtors' cases from

chapter 11 to chapter 7, and the terms and provisions of the Agency Agreement, as well as the

rights and interests granted pursuant to this Order and the Agency Agreement, shall continue in

these or any superseding cases and shall be binding upon the Debtors, the Agent and their

respective successors and permitted assigns, including any trustees or other fiduciaries hereafter

appointed as a legal representative of the Debtors under chapter 7 or chapter 11 of the

Bankruptcy Code. Any trustee appointed in the Debtors' cases shall be and hereby is authorized

and directed to operate the business of the Debtors to the fullest extent necessary to permit

compliance with the terms of this Order and the Agency Agreement, and the Agent and any such

*Approved by Judge Donald H. Steckroth February  27, 2014*

Page 37 of 40
Debtors:       Dots, LLC, et al.
Case No.:      14-11016 (DHS)
Caption:       Order Pursuant To Sections 105(A), 363, 365 And 554 Of The Bankruptcy Code (I) Approving The
               Debtors' Entry Into Agency Agreement, (II) Authorizing The Debtors To Sell Certain Merchandise
               Through Store Closing Sales, (III) Authorizing The Debtors And The Agent To Abandon Unsold
               Property, (IV) Authorizing The Sale Of Debtors' Assets Free And Clear Of All Liens, Claims,
               Encumbrances And Interests, And (V) Granting Related Relief
_____

trustee shall be and hereby are authorized and directed to perform under the Agency Agreement

upon the appointment of the trustee without the need for further order of this Court.

## H.    Good Faith.

44.    Entry into the Agency Agreement is undertaken by the parties thereto in good

faith, as that term is used in Section 363(m) of the Bankruptcy Code, and Agent shall be

protected by Section 363(m) of the Bankruptcy Code in the event that this Order is reversed or

modified on appeal. The reversal or modification on appeal of the authorization provided herein

to enter into the Agency Agreement and consummate the transactions contemplated thereby shall

not affect the validity of such transactions, unless such authorization is duly stayed pending such

appeal. The Agent is entitled to all of the benefits and protections afforded by Section 363(m) of

the Bankruptcy Code. The transactions contemplated by the Agency Agreement are not subject

to avoidance pursuant to Section 363(n) of the Bankruptcy Code.

## I.    Other Provisions

45.    The Agent is a party in interest and shall have the ability to appear and be heard

on all issues related to or otherwise connected to this Order, the various procedures contemplated

herein, any issues related to or otherwise connected to the Sale, the Transactions and the Agency

Agreement.

46.    Nothing contained in any plan confirmed in the Debtors' chapter 11 cases or any

order of this Court confirming such plan or in any other order in these chapter 11 cases

(including any order entered after any conversion of these cases to cases under chapter 7 of the

*Approved by Judge Donald H. Steckroth February  27, 2014*

Debtors:      Dots, LLC, et al.
Case No.:     14-11016 (DHS)
Caption:      Order Pursuant To Sections 105(A), 363, 365 And 554 Of The Bankruptcy Code (I) Approving The
              Debtors' Entry Into Agency Agreement, (II) Authorizing The Debtors To Sell Certain Merchandise
              Through Store Closing Sales, (III) Authorizing The Debtors And The Agent To Abandon Unsold
              Property, (IV) Authorizing The Sale Of Debtors' Assets Free And Clear Of All Liens, Claims,
              Encumbrances And Interests, And (V) Granting Related Relief
_____

Bankruptcy Code) shall alter, conflict with, or derogate from, the provisions of the Agency

Agreement or this Order.

47.     Except with respect to any Governmental Unit (as to which the provisions of

Paragraphs 20-21 shall apply), this Court shall retain exclusive jurisdiction with regard to all

issues or disputes relating to this Order or the Agency Agreement, including, but not limited to,

(i) any claim or issue relating to any efforts by any party or person to prohibit, restrict or in any

way limit banner and sign-walker advertising, including with respect to any allegations that such

advertising is not being conducted in a safe, professional and non-deceptive manner, (ii) any

claim of the Debtors, the landlords and/or the Agent for protection from interference with the

Sale and the Transactions, (iii) any other disputes related to the Sale and the Transactions, and

(iv) to protect the Debtors and/or the Agent against any assertions of Liens. No such parties or

person shall take any action against the Debtors, the Agent, landlords of the Closing Locations,

the Sale or the Transactions until this Court has resolved such dispute. This Court shall hear the

request of such parties or persons with respect to any such disputes on an expedited basis, as may

be appropriate under the circumstances.

48.     Notwithstanding Bankruptcy Rules 4001, 6004 and 6006, or any other law that

would serve to stay or limit the immediate effect of this Order, this Order shall be effective and

enforceable immediately upon entry and its provisions shall be self-executing. In the absence of

any person or entity obtaining a stay pending appeal, the Debtors and the Agent are free to

perform under the Agency Agreement at any time, subject to the respective terms thereof.

Page 39 of 40
Debtors:      Dots, LLC, et al.
Case No.:     14-11016 (DHS)
Caption:      Order Pursuant To Sections 105(A), 363, 365 And 554 Of The Bankruptcy Code (I) Approving The
              Debtors' Entry Into Agency Agreement, (II) Authorizing The Debtors To Sell Certain Merchandise
              Through Store Closing Sales, (III) Authorizing The Debtors And The Agent To Abandon Unsold
              Property, (IV) Authorizing The Sale Of Debtors' Assets Free And Clear Of All Liens, Claims,
              Encumbrances And Interests, And (V) Granting Related Relief
_____

49.      Any and all bulk Sale laws, to the extent applicable, are hereby waived since creditors are protected by the notice provided by the Sale Motion and the jurisdiction of the Court.

50.      This Order constitutes an authorization of the conduct of the Debtors and the Agent in connection herewith.

51.      All utilities, landlords, creditors and all persons acting for or on their behalf shall not interfere with or otherwise impede the conduct of the Sale and the Transactions or institute any action in any court (other than in the Bankruptcy Court) or before any administrative body which in any way directly or indirectly interferes with or obstructs or impedes the conduct of the Sale and the Transactions.

52.      The Debtors shall retain sufficient funds, or make other arrangements satisfactory to the Debtors and the Agent, to enable the Debtors to fully satisfy and perform their obligations under the Agency Agreement and this Order and the Debtors shall be authorized and directed to use those funds to fully satisfy and perform their obligations under the Agency Agreement and this Order.

53.      The Debtors are authorized and directed to pay the DIP Agent on the Payment Date the Estimated Guaranteed Amount in partial satisfaction of the DIP Obligations and the Prepetition Senior Secured Obligations. In addition, the Debtors are authorized and directed to pay the DIP Agent on each other date on which payment is made by the Agent for the benefit of the Debtor, each other amount payable by the Agent to the Debtors under the Agency Agreement including without limitation, the balance of the Guaranteed Amount, the Sharing Amount, the

*Approved by Judge Donald H. Steckroth February  27, 2014*

Page 40 of 40
Debtors:      Dots, LLC, et al.
Case No.:     14-11016 (DHS)
Caption:      Order Pursuant To Sections 105(A), 363, 365 And 554 Of The Bankruptcy Code (I) Approving The
              Debtors' Entry Into Agency Agreement, (II) Authorizing The Debtors To Sell Certain Merchandise
              Through Store Closing Sales, (III) Authorizing The Debtors And The Agent To Abandon Unsold
              Property, (IV) Authorizing The Sale Of Debtors' Assets Free And Clear Of All Liens, Claims,
              Encumbrances And Interests, And (V) Granting Related Relief
_____

Additional Agent Merchandise Fee,  the proceeds realized upon a sale of Owned FF&E (less the

Agent FF&E Commission) or the FF&E Guaranty Amount, as applicable.

54.     Immediately upon the Payment Date (as defined in the Agency Agreement) and

on each other date on which payment is to be made by the Agent to or for the benefit of the

Debtors, the Debtors are authorized and directed to repay, or cause to be repaid, the DIP

Obligations and the Prepetition Senior Secured Obligations (each as defined in the Final DIP

Order), indefeasibly and in cash, by making one or more payments to the DIP Agent and the

Prepetition Senior Agent for the benefit of itself and the DIP Secured Parties and the Prepetition

Senior Secured Parties (each as defined in the Final DIP Order).

55.     Except as modified hereby, the Final DIP Order shall remain in full force and

effect.

56.     Notwithstanding any provisions to the contrary in the any order of the Bankruptcy

Court authorizing the Debtors' use of cash collateral order, amounts paid to the Debtors by the

Agent in respect of Central Service Expenses may be used by Debtors solely to pay for Central

Services.

57.     The objection to the Sale Motion filed by Innotrac Corporation [D.R. No. 308]

has been resolved as set forth on the record at the Sale Hearing, with a stipulation to be

submitted.

58.     To the extent that anything contained in this Order explicitly conflicts with a

provision in the Agency Agreement, the Guidelines, or the Final DIP Order, this Order shall

govern and control.

*Approved by Judge Donald H. Steckroth February  27, 2014*

**<u>EXHIBIT A</u>**
**Agency Agreement**

EXECUTION COPY

# AGENCY AGREEMENT

This Agency Agreement (the "Agreement") is entered into as of this 26th day of February, 2014, by and between **DOTS, LLC**, a Delaware limited liability company ("Merchant"), and **GORDON BROTHERS RETAIL PARTNERS, LLC**, a Delaware limited liability company ("Agent", and collectively with Merchant, the "Parties").

# RECITALS

WHEREAS, on January 20, 2013, Merchant and two of affiliates filed voluntary petitions for relief under chapter 11 of Title 11, United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"). Merchant's chapter 11 case is currently pending before the Bankruptcy Court under lead case number 14-11016.

WHEREAS, on January 31, 2014, the Merchant filed its "Motion For Entry Of Orders (I) (A) Approving Auction Procedures, (B) Approving The Form And Manner Of Notice Of Sale, and (C) Scheduling an Auction and Sale Hearing; and (ii) (A) Approving The Sale Or Sales Of The Debtors Assets, (B) Authorizing The Debtors To Abandon Unsold Property, (C) Authorizing The Assumption and Assignment Of Certain Executory Contracts And Unexpired Leases, and (D) Waiving Stay Provisions Pursuant To Bankruptcy Rules 6004(H) And 6006(D)" [D.R. No. 132] (the "Sale Motion") to approve, among other things, (x) Merchant's entry into this Agreement, subject to higher and better offers, (y) certain competitive bid and sale procedures, and (z) certain "stalking horse" bidder protections in favor of Agent.

WHEREAS, Merchant operates retail stores in the United States and desires that Agent act as Merchant's exclusive agent for the limited purpose of (a) selling all of the Merchandise (as hereinafter defined) located in Merchant's retail store locations identified on Exhibit A-1 attached hereto (each individually a "Closing Store", and collectively  the "Closing Stores") and in Merchant's distribution center identified on Exhibit A-2 attached hereto (the "Distribution Center"), inclusive of In-Transit Merchandise (defined below) that is received in the Merchant's Distribution Center on or before the In-Transit Receipt Deadline (defined below), by means of a "going out of business", "store closing", "sale on everything", "everything must go", or similarly themed sale (as further described below, the "Sale").

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Agent and Merchant hereby agree as follows:

Section 1.       Definitions and Exhibits

1.1     Defined Terms.  The terms set forth below are defined in the Sections referenced of this Agreement:

| Defined Term | Section Reference |
|---|---|
| Additional Agent Merchandise | Section 8.9(a)(i) |
| Additional Agent Merchandise Fee | Section 8.9(a) |
| Additional Agent Merchandise Threshold | Section 8.9(a) |
| Additional Taxes and Penalties | Section 8.3(a) |
| Adjustment Amount | Section 3.3(a) |
| Agency Accounts | Section 3.3(c)(i) |
| Agency Documents | Section 11.1(b) |
| Agent | Preamble |
| Agent Claim | Section 12.5 |
| Agent Collateral | Section 16.11(a) |
| Agent's Fee | Section 3.1(b) |
| Agent's FF&E Commission | Section 15(a) |
| Agent Indemnified Parties | Section 8.3(a) |
| Agreement | Preamble |
| Applicable General Laws | Section 2.2(c) |
| Approval Order | Section 2.2(b) |
| Bankruptcy Code | Recitals |
| Bankruptcy Court | Recitals |
| Benefits Cap | Section 4.1(c) |
| Bid Protections | Section 16.12(b) |
| Bidding Procedures Order | Section 10.1(b) |
| Break-Up Fee | Section 16.12(b) |
| Central Services | Section 4.1 |
| Closing Store(s) | Recitals |
| Competing Bid | Section 16.12(a) |
| DC Goods Receipt Deadline | Section 5.2(a) |
| Defective Merchandise | Section 5.2(b) |
| Designated Deposit Accounts | Section 3.3(c)(iii) |
| Distribution Center | Recitals |
| Distribution Center Expenses | Section 4.1 |
| Distribution Center Merchandise | Section 5.2(b) |
| Distribution Center Services | Section 4.1 |
| Estimated Guaranteed Amount | Section 3.3(a) |
| Events of Default | Section 14 |
| Excluded Benefits | Section 4.1 |
| Excluded Defective Merchandise | Section 5.2(b) |
| Excluded Pricing Adjustments | Section 5.3(b) |
| Expenses | Section 4.1 |
| Expense Reimbursement | Section 16.12(b) |
| FF&E Commission Option | Section 15(a) |
| FF&E Disposition Budget | Section 15(a) |
| FF&E Disposition Expenses | Section 15(a) |
| FF&E Guaranty Option | Section 15(a) |
| FF&E Sale Election Deadline | Section 15(a) |

2

| | |
|---|---|
| FF&E Sale Option | Section 15(a) |
| Final Inventory Report | Section 3.3(a) |
| Final Reconciliation | Section 8.7(b)(i) |
| Final Reconciliation Settlement Date | Section 8.7(b)(i) |
| Force Majeure Event | Section 8.8 |
| Gift Card Ceiling | Section 8.6(a) |
| Gift Card Cutoff Date | Section 8.6(a) |
| Gross Rings | Section 5.3(b)(viii) |
| Gross Rings Period | Section 5.3(b)(viii) |
| Guaranteed Amount | Section 3.1(a) |
| Guaranty Percentage | Section 3.1(a) |
| Hazardous Materials | Section 15(d) |
| Initial Guaranty Payment | Section 3.3(a) |
| Inventory Completion Date | Section 5.1(a) |
| Inventory Date | Section 5.1(a) |
| Inventory Reconciliation Date | Section 3.3(a) |
| Inventory Taking | Section 5.1(a) |
| Inventory Taking Instructions | Section 5.1(a) |
| Inventory Taking Service | Section 5.1(a) |
| In-Transit Goods Receipt Deadline | Section 5.2(a) |
| In-Transit Merchandise | Section 5.2(b) |
| Lender | Section 3.3(e) |
| Letter of Credit | Section 3.4 |
| Liquidation Sale Laws | Section 2.2(c) |
| Membership Program Discount | Section 8.6 |
| Merchandise | Section 5.2(a) |
| Merchandise Ceiling | Section 3.1(b) |
| Merchandise Threshold | Section 3.1(b) |
| Merchant | Preamble |
| Merchant's Designated Account | Section 3.3(a) |
| Merchant Consignment Goods | Section 5.4 |
| Merchant Indemnified Parties | Section 8.3(a) |
| Net FF&E Proceeds | Section 15(a) |
| Occupancy Expenses | Section 4.1 |
| Owned FF&E | Section 15(a) |
| Parties | Preamble |
| Payment Date | Section 3.3(a) |
| POS | Section 5.3(a) |
| Per Store Lowest Price | Section 5.3(a) |
| Prevailing Discount Adjustment | Section 5.3(b)(i) |
| Proceeds | Section 3.3(b) |
| Reconciled DC Merchandise Receipts | Section 5.1(b) |
| Reconciled In-Transit Merchandise Receipts | Section 5.1(b) |
| Remaining Merchandise | Section 3.2 |
| Retail Price | Section 5.3(a) |

3

*Approved by Judge Donald H. Steckroth February  27, 2014*

| | |
|---|---|
| Retained Employee | Section 9.1 |
| Retention Bonus | Section 9.4 |
| Returned Merchandise | Section 8.5 |
| Sale | Recitals |
| Sale Commencement Date | Section 6.1 |
| Sale Guidelines | Section 8.1 |
| Sale Term | Section 6.1 |
| Sale Termination Date | Section 6.1 |
| Sales Taxes | Section 8.3(a) |
| Sales Tax Account | Section 8.3(a) |
| Sharing Amount | Section 3.1(b) |
| Sharing Threshold | Section 3.1(b) |
| Shipping Variance | Section 5.1(b) |
| Shipping Variance Response | Section 5.1(b) |
| Signage Costs | Section 16.12(b) |
| Third Party | Section 4.1 |
| UCC | Section 8.9(d) |
| Vacate Date | Section 6.2 |
| Vacate Notice | Section 6.1 |
| WARN Act | Section 9.1 |

1.2    <u>Exhibits</u>.  The Exhibits and Schedules annexed to this Agreement, as listed below, are an integral part of this Agreement:

| <u>Exhibit</u> | <u>Section Reference</u> | <u>Description</u> |
|---|---|---|
| Exhibit A-1 | Recitals | Closing Stores |
| Exhibit A-2 | Recitals | Distribution Center |
| Exhibit 3.1(d) | Section 3.1(d) | Merchandise Threshold Guaranty Adjustment Schedule |
| Exhibit 3.3(a) | Section 3.3(a) | Merchant's Designated Account |
| Exhibit 3.4 | Section 3.4 | Form of Letter of Credit |
| Exhibit 4.1(a) | Section 4.1(a) | Closing Stores' Occupancy Expense Schedule |
| Exhibit 4.1(aa) | Section 4.1(aa) | Buying Staff Expenses |
| Exhibit 5.1(a) | Section 5.1 | Inventory Taking Instructions |
| Exhibit 5.2(b)(1) | Section 5.1(b) | Distribution Center Merchandise |
| Exhibit 5.2(b)(2) | Section 5.1(b) | In-Transit/Open On-Order Merchandise |
| Exhibit 8.1 | Section 8.1 | Sale Guidelines |
| Exhibit 8.9 | Section 8.9 | Additional Agent Merchandise Schedule |
| Exhibit 10.1(c) | Section 10.1(c) | Form of Approval Order |
| Exhibit 11.1(d) | Section 11.1(d) | Pre-Existing Liens |
| Exhibit 11.1(k) | Section 11.1(k) | Promotional Activity |
| Exhibit 11.1 (l) | Section 11.1(l) | Pending Matters |
| Exhibit 11.1(o) | Section 11.1(o) | Extraordinary POS Activity |

*Approved by Judge Donald H. Steckroth February  27, 2014*

<u>Section 2</u>          <u>Appointment of Agent/Liquidation Sale Laws/Approval Order</u>

(a)      <u>Appointment of Agent</u>.  Effective on the date hereof and subject to the entry of the Approval Order, Merchant hereby irrevocably appoints Agent, and Agent hereby agrees to serve, as Merchant's exclusive agent for the limited purpose of conducting the Sale and disposing of Merchant's Owned FF&E at the Closing Stores and Distribution Center, in accordance with the terms and conditions of this Agreement.

(b)      <u>Approval Order</u>.  Within two (2) business days after the execution of this Agreement, Merchant shall file a supplemental expedited motion with the Bankruptcy Court, supplementing the Sale Motion, which supplemental motion shall seek entry of an order, <u>inter alia</u>, approving this Agreement, including, but not limited to, the Bid Protections, and authorizing Merchant and Agent to conduct the Sale in accordance with the terms hereof, in all events subject to Merchant's solicitation and receipt of Competing Bids in accordance with Section 16.12(a) hereof (the "<u>Approval Order</u>").  The Approval Order shall be in substantially the form annexed hereto as <u>Exhibit 10.1(c)</u>, and otherwise be reasonably satisfactory to the Merchant and Agent, <u>inter alia</u>, and provide that:

(i) this Agreement (and each of the transactions contemplated hereby) is approved in its entirety;

(ii) Merchant and Agent shall be authorized to continue to take any and all actions as may be necessary or desirable to implement this Agreement and each of the transactions contemplated hereby;

(iii) upon the payment of the Initial Guaranty Payment and delivery of the Letter of Credit to the Lender, Agent shall be entitled to sell all Merchandise and the Additional Agent Merchandise hereunder free and clear of all liens, claims or encumbrances thereon, with any presently existing liens encumbering all or any portion of the Merchandise or the Proceeds attaching only to the Guaranteed Amount and other amounts to be received by Merchant under this Agreement;

(iv) Agent shall have the right to use the Distribution Center and the Closing Stores and all related Distribution Center and Closing Store services, furniture, fixtures, equipment and other assets of Merchant as designated hereunder for the purpose of conducting the Sale, free of any interference from any entity or person subject to compliance with the Sale Guidelines and Approval Order;

(v) Agent, as agent for Merchant, is authorized to conduct, advertise, post signs and otherwise promote the Sale as a "going out of business", "store closing," "sale on everything," "everything must go," or similar themed sale, in accordance with the Sale Guidelines (as the same may be modified and approved by the Bankruptcy Court) and without compliance with the Liquidation Sale Laws, subject to compliance with the Sale Guidelines and Approval Order;

*Approved by Judge Donald H. Steckroth February  27, 2014*

(vi) Agent shall be granted a limited license and right to use until the Sale Termination Date the trade names, logos and customer lists relating to and used in connection with the operation of the Stores, solely for the purpose of advertising the Sale in accordance with the terms of this Agreement;

(vii) all newspapers and other advertising media in which the Sale is advertised shall be directed to accept the Approval Order as binding and to allow Merchant and Agent to consummate the transactions provided for in this Agreement, including, without limitation, the conducting and advertising of the Sale in the manner contemplated by this Agreement;

(viii) all utilities, landlords, creditors and all persons acting for or on their behalf shall not interfere with or otherwise impede the conduct of the Sale, institute any action in any court (other than in the Bankruptcy Court) or before any administrative body which in any way directly or indirectly interferes with or obstructs or otherwise impedes the conduct of the Sale;

(ix) the Bankruptcy Court shall retain jurisdiction over the parties to enforce this Agreement;

(x) Agent shall not be liable for any claims against the Merchant other than as expressly provided for in this Agreement;

(xi)  Agent shall be authorized to include Additional Agent Merchandise in the Sale;

(xii)  subject to Agent having satisfied its obligations hereunder, any amounts owed by Merchant to Agent under this Agreement shall be granted the status of superpriority claims in Merchant's Bankruptcy Case pursuant to section 364(c) of Bankruptcy Code senior to all other superpriority claims; provided that until the Merchant receives payment in full of the Guaranteed Amount, the Additional Agent Merchandise Fee, the Sharing Amount, Expenses, the proceeds realized upon a sale of Owned FF&E (less the Agent FF&E Commission) or the FF&E Guaranty Amount, as applicable, and such other amounts due to Merchant hereunder, any superpriority claim granted to Agent hereunder (excluding any such claim for the Break-Up Fee and Expense Reimbursement (including Signage Costs) under Section 16.12 hereof), shall be junior and subordinate in all respects to the security interests and superpriority claims of Lender but solely to the extent of the amount of the unpaid portion of the Guaranteed Amount, the Additional Agent Merchandise Fee, the Sharing Amount, Expenses, the proceeds realized upon a sale of Owned FF&E (less the Agent FF&E Commission) or the FF&E Guaranty Amount, as applicable, and such other amounts due to Merchant hereunder;

(xiii) Agent shall be granted a valid, binding, enforceable and perfected security interest as provided for in Section 16.11 hereof without the necessity of filing financing statements to perfect the security interests;

*Approved by Judge Donald H. Steckroth February  27, 2014*

(xiv) the Bankruptcy Court finds that time is of the essence in effectuating this Agreement and proceeding with the Sale at the Distribution Center and Closing Stores uninterrupted;

(xv) Merchant's decisions to (a) enter into this Agreement and (b) perform under and make payments required by this Agreement is a reasonable exercise of the Merchant's sound business judgment consistent with its fiduciary duties and is in the best interests of the Merchant, its estate, its creditors, and other parties in interest;

(xvi) this Agreement was negotiated in good faith and at arms' length between the Merchant and Agent and that Agent is entitled to the protection of Section 363(m) of the Bankruptcy Code;

(xvii) Agent's performance under this Agreement will be, and payment of the Guaranteed Amount and the Sharing Amount, if any, under this Agreement will be made, in good faith and for valid business purposes and uses, as a consequence of which Agent is entitled to the protection and benefits of Sections 363(m) and 364(e) of the Bankruptcy Code;

(xviii) this Agreement is approved pursuant to Section 363 of the Bankruptcy Code; and

(xix) in the event any of the provisions of the Approval Order are modified, amended or vacated by a subsequent order of the Bankruptcy Court or any other court, Agent shall be entitled to the protections provided in Sections 363(m) and 364(e) of the Bankruptcy Code, and no such appeal, modification, amendment or vacatur shall affect the validity and enforceability of the sale or the liens or priority authorized or created under this Agreement or the Approval Order.

(c)      Subject to entry of the Approval Order, Agent shall be authorized to advertise the Sale as a "going out of business", "store closing", "sale on everything", "everything must go", or similar-themed sale, and the Approval Order shall provide that Agent shall be required to comply with applicable federal, state and local laws, regulations and ordinances, including, without limitation, all laws and regulations relating to advertising, permitting, privacy, consumer protection, occupational health and safety and the environment, together with all applicable statutes, rules, regulations and orders of, and applicable restrictions imposed by, governmental authorities (collectively, the "<u>Applicable General Laws</u>"), other than all applicable laws, rules and regulations in respect of "going out of business," "store closing" or similar-themed sales (collectively, the "<u>Liquidation Sale Laws</u>"), provided that such Sale is conducted in accordance with the terms of this Agreement, the Sale Guidelines and Approval Order.

(d)      <u>Authority</u>.  Except as otherwise specifically provided in this Agreement, Agent shall have no authority, and shall not represent that it has any authority, to enter into any contract, agreement, or other arrangement or take any other action by or on behalf of Merchant, that would have the effect of creating any obligation or liability, present or contingent, on behalf of or for the account of Merchant without Merchant's prior written consent.

Section 3.    <u>Guaranteed Amount and Other Payments</u>

3.1    <u>Payments to Merchant and Agent</u>.

(a)    As a guaranty of Agent's performance hereunder, in addition to the payment of Expenses (as provided for in Section 4.1 hereof) and the Additional Agent Merchandise Fee (as provided for in Section 8.9(a) hereof), Agent guarantees that Merchant shall receive the sum of forty-eight and one-half percent (48.5%) (the "<u>Guaranty Percentage</u>") of the aggregate Retail Price of Merchandise (the "<u>Guaranteed Amount</u>"). The Guaranteed Amount will be calculated based upon the product of (x) the Guaranty Percentage multiplied by (y) the aggregate Retail Price of the Merchandise (in the case of (y), as determined by (A) the Final Inventory Report at the conclusion of the Inventory Taking by the Inventory Taking Service after verification and reconciliation thereof by Agent and Merchant, in consultation with Lender, (B) the aggregate amount of Gross Rings (as adjusted for shrinkage per this Agreement), (C) the aggregate Retail Price of In-Transit Merchandise included in the Sale; and (D) the aggregate Retail Price of Returned Merchandise not otherwise included in the Inventory Taking.

(b)    To the extent that Proceeds exceed the sum of: (x) the Guaranteed Amount, <u>plus</u> (y) Expenses of the Sale, <u>plus</u> (z) an amount equal to two percent (2.0%) of the aggregate Retail Price of the Merchandise (including In-Transit Merchandise) and Additional Agent Merchandise (calculated at a usual and customary Retail Price) included in the Sale (the "<u>Agent's Fee</u>") (the sum of (x), (y) and (z) being defined herein as the "<u>Sharing Threshold</u>"), then all remaining Proceeds of the Sale above the Sharing Threshold shall be shared fifty percent (50%) to Merchant (Merchant's share of Proceeds beyond the Sharing Threshold is the "<u>Sharing Amount</u>") and fifty percent (50%) to Agent.

(c)    The Guaranteed Percentage has been fixed based upon the aggregate Retail Price of the Merchandise included in the Sale (inclusive of In-Transit Merchandise) being not less than $65,000,000 (the "<u>Merchandise Threshold</u>") and not greater than $75,000,000 (inclusive of In-Transit Merchandise, the "<u>Merchandise Ceiling</u>"); <u>provided</u> <u>that</u>, solely for purposes of determining whether the aggregate Retail Price of the Merchandise included in the Sale is either (i) less than the Merchandise Threshold, or (ii) greater than the Merchandise Ceiling, as applicable, no adjustment shall be made to the applicable Base Retail Price (other than with respect to adjustments made to reflect the Per Store Lowest Price) to account for the effect of (x) Recognized POS Price and/or (y) Prevailing Discount Adjustment. To the extent that the aggregate Retail Price of the Merchandise included in the Sale is less than or greater than the Merchandise Threshold or Merchandise Ceiling, as applicable, the Guaranteed Percentage shall be adjusted in accordance with <u>Exhibit 3.1(d)</u> attached hereto.

(d)    Agent shall pay to Merchant the Guaranteed Amount and the Sharing Amount in the manner and at the times specified in Section 3.3 below, Expenses as provided in for in Section 4.1 hereof, and the Additional Agent Merchandise Fee as provided for in Section 8.9(a) hereof.

3.2    <u>Payments to Agent</u>.    After payment in full of the Guaranteed Amount, the Additional Agent Merchandise Fee, the Sharing Amount (if any), all Expenses, the proceeds

8

realized upon a sale of Owned FF&E (less the Agent FF&E Commission) or the FF&E Guaranty Amount, as applicable, and such other amounts due to Merchant hereunder, Agent shall be entitled to retain any remaining Proceeds (inclusive of the Agent's Fee).  Provided that no Event of Default has occurred and continues to exist on the part of Agent, all Merchandise remaining at the conclusion of the Sale ("Remaining Merchandise") shall become the property of Agent, free and clear of all liens, claims, and encumbrances of any kind or nature; provided, however, the proceeds realized upon a sale or other disposition of the Remaining Merchandise shall constitute Proceeds hereunder for purposes of, inter alia, calculating the Sharing Amount due Merchant (if any).  In addition, Agent shall exercise commercially reasonable efforts to dispose of all of the Merchandise and the Additional Agent Merchandise during the Sale Term.

3.3     Time of Payments; Proceeds; Control of Proceeds

(a)     On the first business day after entry of the Approval Order (the "Payment Date"), Agent shall pay to Merchant an amount (the "Initial Guaranty Payment") equal to eighty-five percent (85%) of the product of (i) the Guaranty Percentage multiplied by (ii) the estimated aggregate Retail Price of the Merchandise to be included in the Sale as reflected on Merchant's books and records at the close of business on the last business day immediately preceding the Sale Commencement Date (the "Estimated Guaranteed Amount"); provided that the Estimated Guaranteed Amount payable by Agent on the Payment Date shall be calculated based only on Merchandise located in the Closing Stores and the Distribution Center as of the close of business on the last business day immediately preceding the Sale Commencement Date, and shall expressly exclude any In-Transit Inventory not then located at a Closing Store or the Distribution Center.  On the Payment Date, the Initial Guaranty Payment shall be made by wire transfer of immediately available funds to the account designated on Exhibit 3.3(a) attached hereto (the "Merchant's Designated Account").  The balance of the Guaranteed Amount, if any (including any portion of the Guaranteed Amount attributable to any In-Transit Inventory counted, reconciled and reported as part of the Final Inventory Report), shall be paid by Agent by wire transfer of immediately available funds to the Merchant's Designated Account on the earlier of: (x) the second business day following the issuance of the final report of the aggregate Retail Price of the Merchandise counted by the Inventory Taking Service following the completion of the Inventory Taking, after review, reconciliation and mutual written verification thereof by Agent and Merchant, in consultation with Lender (the "Final Inventory Report"), and (y) the date that is thirty (30) days after the Sale Commencement Date (in the case of (y) above, Agent shall tender payment of the undisputed portion only on account of any remaining portion of the Guaranteed Amount; provided that in the event of a dispute as to the calculation of the portion of the Guaranteed Amount, any such dispute shall be resolved in the manner and at the times set forth in Section 8.7(b)(ii) hereof), and Agent's failure to pay such balance or undisputed portion shall entitle the Merchant and the Lender (individually or collectively) to draw upon the Letter of Credit in accordance with Section 3.4 to the extent of such balance or undisputed portion.  Merchant and Agent shall exercise reasonable best efforts to reconcile the Inventory Taking within ten (10) days after its completion. In the event that the Initial Guaranty Payment is either less than or exceeds the Guaranteed Amount, as applicable, Agent or Merchant, as the case may be, shall pay to Merchant or Agent, as the case may be, the amount (the "Adjustment Amount") by which the actual Guaranteed Amount exceeds or is less than the sum of the Initial Guaranty Payment.

Approved by Judge Donald H. Steckroth February  27, 2014

(b)    For purposes of this Agreement, "Proceeds" shall mean the aggregate of (i) the total amount (in dollars) of all sales of Merchandise (inclusive of any In-Transit Merchandise included in the Sale) made under this Agreement whether in the Distribution Center, Closing Stores or through Merchant's E-Commerce Platform site (to the extent Agent makes such election pursuant to Section 8.10 hereof), and all service revenue received by Merchant from the Closing Stores, in each case during the Sale Term and exclusive of Sales Taxes; (ii) the total amount (in dollars) of all sales of Additional Agent Merchandise; (iii) all proceeds of Merchant's insurance for loss or damage to Merchandise and Additional Agent Merchandise arising from events occurring during the Sale Term relating to the Merchandise; and (iv) any and all proceeds received by Agent from the disposition of Remaining Merchandise or unsold Additional Agent Merchandise included in the Sale. For the avoidance of doubt: (1) proceeds from the sales at Merchant's Closing Stores or through the E-Commerce Platform prior to the Sale Commencement Date; (2) the proceeds from the sale of Merchant Consignment Goods pursuant to Section 5.4 hereof, (3) all proceeds of Merchant's insurance for loss or damage to Merchandise arising from events occurring prior to the Sale Commencement Date, (4) proceeds from the sale or other disposition of Owned FF&E (subject to Agent's right to receive the FF&E Commission under Section 15 below), and (5) payments made on account of the Guaranteed Amount, the Additional Agent Merchandise Fee, the Sharing Amount, Expenses, the proceeds realized upon a sale of Owned FF&E (less the Agent FF&E Commission) or the FF&E Guaranty Amount, as applicable, or the Letter of Credit, shall, in each case, not constitute "Proceeds" hereunder, and shall remain the exclusive property of Merchant.

(c)    All Proceeds shall be controlled by Agent in the manner provided for below:

(i)    Prior to the date Agent establishes the Agency Accounts, all Proceeds (including credit card Proceeds) shall be collected by Merchant and deposited on a daily basis into depository accounts designated by, owned and in the name of, Merchant for the Closing Stores, which accounts shall be designated for the deposit of Proceeds (including all cash, credit card payments, checks and similar items of payment, deposits and any other amounts contemplated by this Agreement), and the disbursement of amounts payable to or by Agent hereunder (the "Designated Deposit Accounts").  Subject to the provisions of Section 16.11 hereof, the Approval Order shall provide (a) that Merchant grants to Agent a first priority security interest in each Designated Deposit Account to the extent of any Proceeds and any other amounts payable to Agent deposited therein, and (b) for turnover to Agent of any such Proceeds (and any other amounts payable to Agent deposited therein) in accordance with the terms and provisions of this Agreement and the Approval Order, as applicable.  If, notwithstanding the provisions of this Section, Merchant receives or otherwise has dominion over or control of any Proceeds, or other amounts due to Agent, Merchant shall hold the same and other amounts in trust for Agent, and shall not deposit such Proceeds or other amounts due Agent hereunder in any account except a Designated Deposit Account or as otherwise instructed by Agent.  Until such time as Agent establishes the Agency Accounts (see clause (ii) below), Merchant, Agent and Lender shall cooperate with each other to establish and implement appropriate steps and procedures to accomplish a daily reconciliation, and remittance to Agent, of all Proceeds (including credit card Proceeds) and other amounts contemplated by this Agreement that are deposited into the Designated Deposit Accounts.

*Approved by Judge Donald H. Steckroth February  27, 2014*

(ii)      After the Sale Commencement Date, Agent may establish its own accounts (including without limitation credit card accounts and systems), dedicated solely for the deposit of the Proceeds (including credit card Proceeds), and the disbursement of amounts payable to Agent hereunder (the "Agency Accounts"), and Merchant shall promptly, upon Agent's reasonable request, execute and deliver all necessary documents to open and maintain the Agency Accounts; provided, however, Agent may elect to continue to use Merchant's Designated Deposit Accounts as the Agency Accounts. The Agency Accounts shall be dedicated solely to the deposit of Proceeds (including credit card Proceeds) and other amounts contemplated by this Agreement, and the distribution of amounts payable hereunder; provided that, in the event (a) Agent elects to continue to use Merchant's Designated Deposit Accounts as the Agency Accounts, and (b) such accounts have amounts deposited therein by Merchant that do not constitute Proceeds and/or other amounts contemplated by this Agreement, then Merchant, Agent and Lender shall cooperate with each other to establish and implement appropriate steps and procedures to accomplish a daily reconciliation, and remittance to Agent, of all Proceeds (including credit card Proceeds) and other amounts contemplated by this Agreement.   Upon request, Agent shall deliver to Merchant and Lender copies of all bank statements and other information relating to such accounts; provided that in the event Agent elects to continue to use Merchant's Designated Deposit Accounts as the Agency Accounts, Merchant shall deliver to Agent copies of all bank statements and other information relating to such accounts to enable Agent to track and trace deposited funds that constitute Proceeds (including credit card Proceeds) and other amounts contemplated by this Agreement. The Merchant shall not be responsible for, and Agent shall pay as an Expense hereunder, all bank fees and charges, including wire transfer charges, related to the Sale and Agency Accounts, whether received during or after the Sale Term. Upon Agent's notice to Merchant of Agent's designation of the Agency Accounts, all Proceeds of the Sale (including credit card Proceeds) shall be deposited into the Agency Accounts.

(iii)     Agent shall have the right to use Merchant's credit card facilities, including Merchant's credit card terminals and processor(s), credit card processor coding, Merchant's private label credit card, and Merchant's identification number(s) and existing bank accounts for credit card Proceeds relating solely to the Sale.  In the event that Agent elects to use Merchant's credit card facilities, Merchant shall process credit card transactions on behalf of Agent and for Agent's account, applying customary practices and procedures. Without limiting the foregoing, Merchant shall cooperate with Agent to download data from all credit card terminals each day during the Sale Term to effect settlement with Merchant's credit card processor(s), and shall take such other actions necessary to process credit card transactions on behalf of Agent under Merchant's identification number(s).  At Agent's request, Merchant shall cooperate with Agent to establish Merchant's identification numbers under Agent's name to enable Agent to process all such credit card Proceeds (and proceeds from Additional Agent Merchandise) for Agent's own account. Merchant shall not be responsible for, and Agent shall pay as an Expense hereunder, all credit card fees, charges, and chargebacks related to Merchandise sold during the Sale, whether received during or after the Sale Term. Agent shall not be responsible for, as an Expense or otherwise, any credit card fees, charges, or chargebacks that do not relate to the Sale, whether received, prior to, during or after the Sale Term.

11

(iv)     Commencing on the Sale Commencement Date, and continuing on each business day thereafter, Merchant shall promptly pay to Agent by wire transfer of immediately available funds all funds constituting Proceeds (including, without limitation, Proceeds from credit card sales), and proceeds from Additional Agent Merchandise that are deposited into the Designated Deposit Accounts for the prior day.  Agent shall have ten (10) calendar days after the date of each such payment by Merchant to notify Merchant and Lender of any shortfall in such payment, in which case, Merchant shall promptly pay to Agent funds in the amount of such shortfall.

(d)     Merchant and Agent further agree that if at any time during the Sale Term, (i) Agent holds any amounts due to Merchant under this Agreement, Agent may, in its discretion, after two (2) business days' notice to Merchant, offset such amounts being held by Agent against any undisputed amounts due and owing by, or required to be paid by, Merchant hereunder, and (ii) Merchant holds any amounts due to Agent under this Agreement, Merchant may, in its discretion, after two (2) business days' notice to Agent, offset such amounts being held by Merchant against any undisputed amounts due and owing by, or required to be paid by, Agent hereunder.

(e)     If, and to the extent, the Agent over-funds any amounts in respect of the Guaranteed Amount hereunder (as determined pursuant to the express terms of this Agreement) and such funding or payment cannot be recovered by the Agent from Merchant under Section 3.3(a) or Section 3.3(d), by means of an offset or otherwise, then Merchant agrees (or if Merchant shall be unable to or otherwise for any reason fails to, and Salus Capital Partners, LLC, in its capacity as administrative agent and collateral agent (the "Lender"), has received such payment, the Lender agrees) to reimburse such undisputed amount of such overfunded amount to Agent within two (2) business days of written demand thereof by Agent.

(f)     All amounts required to be paid by Agent or Merchant under any provision of this Agreement shall be made by wire transfer of immediately available funds which shall be wired by Agent or Merchant, as applicable, no later than 2:00 p.m. (prevailing Eastern Time) on the date that such payment is due; provided that that all of the information necessary to complete the wire transfer has been received by Agent or Merchant, as applicable, by 10:00 a.m. (prevailing Eastern Time) on the date that such payment is due. In the event that the date on which any such payment is due is not a business day, then such payment shall be made by wire transfer on the next business day.

(g)     Agent shall pay the Sharing Amount, if any, to Lender, as Merchant's designee, on the first business day after the completion of the Final Reconciliation conducted pursuant to Section 8.7(b) and shall remit such payment to the Merchant's Designated Account.

3.4     Guaranty Security.  To secure payment of the balance of any unpaid portion of the Guaranteed Amount, the Additional Agent Merchandise Fee, Sharing Amount (if any), Expenses, the proceeds realized upon a sale of Owned FF&E (less the Agent FF&E Commission) or the FF&E Guaranty Amount, as applicable, and such other amounts due to Merchant hereunder, Agent shall deliver to Lender, as Merchant's designee, an irrevocable standby letter of credit, substantially in the form of Exhibit 3.4 attached hereto, in an original

stated amount equal to the aggregate of (x) fifteen percent (15%) of the estimated Guaranteed Amount (based upon Merchant's books and records maintained in the ordinary course as of the date immediately preceding the Payment Date, but excluding for purposes hereof the In-Transit Merchandise), and (y) three (3) weeks' estimated Expenses (the "Letter of Credit").  The Letter of Credit shall name Merchant and Lender, as Merchant's designee, as co-beneficiaries.  The Letter of Credit shall be delivered to Lender, as Merchant's designee on the first business day following the Payment Date, and shall be issued by a U.S. national bank selected by Agent and reasonably acceptable to Merchant and Lender.  In the event that Agent fails to timely pay any amount hereunder in respect of the Guaranteed Amount, the Additional Agent Merchandise Fee, the Sharing Amount, Expenses, the proceeds realized upon a sale of Owned FF&E (less the Agent FF&E Commission) or the FF&E Guaranty Amount, as applicable, and such other amounts as required under this Agreement, Merchant and/or Lender, as Merchant's designee, shall be entitled to draw on the Letter of Credit to fund such amount or obligation after four (4) business days' written notice to Agent (which notice shall not be required if Agent or any member of Agent is a debtor under title 11 U.S.C.).  Lender, Merchant and Agent agree that, from time to time upon Agent's request, Merchant and Lender shall cooperate with Agent's request to reduce the face amount of the Letter of Credit by an amount to be mutually agreed and consistent with the aggregate amount of payments made by Agent on account of the Guaranteed Amount; provided, however, until the Final Reconciliation has been completed, under no circumstances shall the face amount of the Letter of Credit be reduced to an amount less than three (3) weeks' estimated Expenses.  The Letter of Credit shall expire no earlier than sixty (60) days after the Sale Termination Date; provided that if, as of the tenth (10th) business day prior to the scheduled expiration date of the Letter of Credit, there remains any unresolved dispute as to the Guaranteed Amount, the Additional Agent Merchandise Fee, the Sharing Amount, the Adjustment Amount, Expenses, the proceeds realized upon a sale of Owned FF&E (less the Agent FF&E Commission) or the FF&E Guaranty Amount, as applicable, and/or other amounts due to Merchant hereunder, Agent shall cause the expiration date of the Letter of Credit to be extended for successive thirty (30) day intervals (or such other longer duration as Merchant, Lender, and Agent may agree) until the subject dispute has been resolved and any additional amounts due hereunder on account of the Guaranteed Amount, the Additional Agent Merchandise Fee, the Sharing Amount, Expenses, the proceeds realized upon a sale of Owned FF&E (less the Agent FF&E Commission) or the FF&E Guaranty Amount, as applicable, and such other amounts have been paid to Merchant.  If Agent has for any reason not so extended the expiration date of the Letter of Credit by the date that is ten (10)) business days prior to the expiration date of the Letter of Credit (as may have been extended previously), then all amounts hereunder shall become immediately due and payable and Merchant and Lender (individually and/or collectively) shall have the right to make a drawing under the Letter of Credit in an amount equal to the amount(s) Merchant asserts are then owing to Merchant. After completion of the Final Reconciliation and payment in full of all amounts owing by Agent (including but not limited to the Guaranteed Amount, the Additional Agent Merchandise Fee, the Sharing Amount, Expenses, the FF&E proceeds and the FF&E Guaranty Amount, as applicable), Merchant and Lender shall surrender the original Letter of Credit to the issuer thereof together with written notification that the Letter of Credit may be terminated.  Upon Lender's receipt of payment in full of its claims against the Merchant, Lender shall promptly deliver the Letter of Credit to Merchant and take all reasonable steps necessary to remove itself as a named co-beneficiary thereunder.

*Approved by Judge Donald H. Steckroth February  27, 2014*

Section 4.      Expenses of the Sale

4.1      Expenses.  Agent shall be unconditionally responsible for all Expenses incurred in conducting the Sale during the Sale Term, which expenses shall be paid by Agent in accordance with Section 4.2 below. Agent and/or Merchant and/or Lender may review or audit the Expenses at any time. Agent shall be obligated to pre-fund any Occupancy Expenses and payroll-related expenses consistent with Merchant's customary rent (subject to Section 6 below) and payroll funding practices and timing. Merchant and Agent agree that any Expense shall be charged at Agent's actual invoiced costs, net of any applicable discounts or rebates, etc. received by Agent. As used herein, "Expenses" means the sum of (i) all Closing Store-level operating expenses of the Sale that arise during the Sale Term, plus (ii) Distribution Center Expenses, in each case limited to the following:

(a)      actual Occupancy Expenses for (i) the Closing Stores on a per location and per diem basis in an amount up to the aggregate per category totals set forth on Exhibit 4.1(a)(1) hereto, plus (ii) the portion of any percentage rent obligations allocable to (x) the sale of Merchandise during the Sale and (y) the sale of Additional Agent Merchandise during the Sale incurred by Merchant under the applicable Closing Stores' leases or occupancy agreements (in the case of (x) and (y), as determined in the manner described in the definition of "Occupancy Expenses" below);

(b)      Occupancy Expenses for the Distribution Center in an amount up to $27,430 per week, or pro rata portion thereof; provided that Agent's obligation to pay such Distribution Center-related Occupancy Expenses is subject to Agent's right to earlier terminate the Sale from the Distribution Center by delivering a Vacate Notice in accordance with Sections 6.1 and 6.2 below;

(c)      all payroll and commissions, including but not limited to payroll taxes if applicable, for all Closing Store-level Retained Employees used in conducting the Sale; provided that Agent shall only be obligated to pay 50% of the payroll and related benefit costs (subject to the Benefits Cap) for Closing Store-level Retained Employees used during the Inventory Taking, and Merchant shall pay the remaining 50% of the payroll and related benefit costs for Retained Employees used during the Inventory Taking;

(d)      amounts payable by Merchant for benefits for Retained Employees (including FICA, unemployment taxes, workers' compensation and health care insurance benefits, but excluding Excluded Benefits) for Closing Store-level Retained Employees used in the Sale, in an amount up to 19.5% of base payroll for all Retained Employees in the Closing Stores (the "Benefits Cap");

(e)      Retention Bonuses for Retained Employees, as provided for in Section 9.4 below;

(f)      all costs and expenses associated with Agent's on-site supervision of the Closing Stores and Distribution Center, including, but not limited to, any and all fees, wages,

Approved by Judge Donald H. Steckroth February  27, 2014

deferred compensation, taxes, and third party payroll costs and expenses of Agent's field personnel, travel to, from or between the Closing Stores and Distribution Center, and all out-of-pocket and commercially reasonable expenses relating thereto;

(g)     banners, sign walkers, and in-Store signs that are produced for the Sale;

(h)     promotional costs including, without limitation, email blasts, sign walkers, television, ROP, other advertising and direct mail;

(i)     the costs and expenses of obtaining additional supplies used at the Stores as may be required by Agent in the conduct of the Sale;

(j)     costs of all local, long-distance, and international telephone, satellite broadband connections, T-1 lines, broadband internet, and other telecommunications services incurred at the Closing Stores;

(k)     postage/overnight delivery/courier charges to and from or among the Closing Stores to the extent relating to the Sale;

(l)     credit card and bank card fees, chargebacks, and discounts;

(m)     any and all costs of moving, transferring, or consolidating Merchandise and/or Additional Agent Merchandise between the Closing Stores, and between the Distribution Center and the Closing Stores;

(n)     a pro rata portion for the Sale Term of Merchant's premiums in respect of general liability, casualty, property, inventory and other insurance policies attributable to the Merchandise and the Closing Stores and Distribution Center;

(o)     third-party payroll processing fees;

(p)     armored car service and security personnel;

(q)     actual cost of Agent's capital, reasonable legal expenses, and letter of credit fees;

(r)     trash removal, snow removal, and ordinary course third-party cleanings;

(s)     Agent's 50% of the third party fees and costs of the Inventory Taking Service;

(t)     an amount equal to $20,000 per week (pro rated for any partial week during the Sale Term) during the Sale Term, payable to Merchant, in respect of the cost of Merchant providing Central Services in accordance with Section 8.1 hereof;

(u)     Store cash thefts and other Store cash shortfalls in registers;

15

(v)     pest control services;

(w)     routine repair and maintenance costs (including landscaping), solely to the extent such costs result from Agent's acts or omissions during the term of the Sale;

(x)     any costs and expenses incurred in connection with the acquisition (including costs of goods) and delivery of any Additional Agent Merchandise;

(y)     Distribution Center Expenses;

(z)     costs of maintaining and operating Merchant's website in connection with the E-Commerce Platform, solely to extent Agent exercises its option under Section 8.10; and

(aa)     Buying Staff Expenses (if any).

"Expenses" shall not include: (i) Central Service Expenses in excess of the amount set forth in Section 4.1(s) hereof; (ii) Excluded Benefits; (ii) any rent or other occupancy expenses other than Occupancy Expenses in accordance with Section 4.1(a) hereof; and (iii) any costs, expenses or liabilities arising during the Sale Term in connection with the Sale of Merchandise and Additional Agent Merchandise and Owned FF&E, other than the Expenses listed above, all of which shall be paid by Merchant promptly when due during the Sale Term. Notwithstanding anything to the contrary herein, (1) to the extent that any Expense listed in Section 4.1 is also included on Exhibit 4.1(a), then Exhibit 4.1(a) shall control and such Expense shall not be double counted, and (2) except as provided in this Section 4.1, no Expenses shall be paid with respect to any distribution center/warehouses other than the Distribution Center Expenses.

As used herein, the following terms have the following meanings:

"Buying Staff Expenses" means the costs and expenses, including payroll and benefits (subject to the Benefits Cap) and bonuses (in Agent's discretion) of those Merchant-buying staff employees identified in Exhibit 4.1-A that Agent may elect, in its exclusive discretion, to retain during the Sale Term, or ratable portion thereof to perform certain services in connection with In-Transit Merchandise and/or Additional Agent Merchandise, as applicable.

"Central Services" means those Merchant central administrative services necessary for the conduct and support of the Sale, including, but not limited to, use or and access to Merchant's: (i) inventory control system, (ii) payroll system, (iii ) accounting system, (iv) office facilities, (v) central administrative services and personnel to process and perform sales audit, banking, and other normal course administrative services customarily provided to or for the benefit of operating the Distribution Center and/or the Closing Stores, (vi) such other central office services reasonably necessary for the Sale, and (vii) to use reasonably sized offices located at Merchant's central office facility to effect the Sale.

"Distribution Center Expenses" means an amount up to $238,951 per month, payable by Agent to Merchant on a weekly basis as part of the weekly Sale reconciliation provided for under Section 8.7(a) hereof, calculated at a per diem rate of up to $7,708.10, in

*Approved by Judge Donald H. Steckroth February  27, 2014*

respect of Merchant's provision of Distribution Center Services during the period of the Sale during which the Agent is utilizing the Distribution Center, in each case for the period commencing on the Sale Commencement Date and concluding on the earliest to occur of (x) the Sale Termination Date or (y) the Vacate Date for the Distribution Center. Merchant and Agent agree that the Distribution Center Expense amount has been calculated based on an assumed up to $30,000,000 (valued at Retail Price, and excluding In-Transit Merchandise) in inventory processing and shipping capacity from the Distribution Center in a calendar month; provided that in the event Agent requests that Merchant ship more than $30,000,000 (Retail Price, excluding In-Transit Merchandise) from the Distribution Center to the Closing Stores in any calendar month period, Agent shall be obligated to pay Merchant, as an Expense of the Sale, for the additional incremental costs attributable to such expanded shipping services (i.e., any additional expenses incurred with regard to the amount of monthly shipments above $30,000,000 (Retail Price, excluding In-Transit Merchandise) only.

"Distribution Center Services" means those services customarily performed by Merchant in operating and maintaining the Distribution Center in the ordinary course of business and in the course of receiving and distributing merchandise and supplies to the Closing Stores, including, but not limited to, with respect to (i) the handling, receiving, in-take, storage, ticketing and processing of any Merchandise, In-Transit Merchandise and Additional Agent Merchandise at the Distribution Center; (ii) payroll and related employee benefits of all Distribution Center employees as may be designated from time to time by Agent; (iii) any required supplies in connection with the foregoing; and (iv) any Central Services required to operate and maintain the Distribution Center during the Sale Term applicable thereto.

"Excluded Benefits" means employee benefits (including vacation days or vacation pay, sick days or sick leave, maternity leave or other leaves of absence, termination or severance pay, ERISA coverage and pension, and 401(k) matching and similar contributions) in excess of the Benefits Cap set forth in Section 4.1(c) above.

"Occupancy Expenses" means rent, percentage rent, common-area maintenance, real estate and use taxes, HVAC, utilities, telecom/telephone charges, point-of-sale systems maintenance, store security systems, repairs and maintenance, taxes and licenses, and all other categories of expenses (i) at the Closing Stores, as set forth on Exhibit 4.1(a)(1) attached hereto, in an amount up to the specific amounts set forth on Exhibit 4.1(a)(1) attached hereto, plus (ii) any percentage rent obligations incurred by Merchant under applicable leases or occupancy agreements that are allocable to the sales as part of the Sale during the Sale Term of: (x) Merchandise (including In-Transit Merchandise) and (y) Additional Agent Merchandise included in the Sale. Merchant and Agent agree that Exhibit 4.1(a)(1) shall specify the actual applicable percentage and any applicable sales thresholds in respect of percentage rent under any applicable Closing Store lease(s) or other occupancy agreement(s). Merchant and Agent further agree that in the event Exhibit 4.1(a) does not specify the actual applicable percentage and/or the applicable sales thresholds in respect of percentage rent under any applicable Closing Store lease(s) or other occupancy agreement(s), Agent's obligation to pay percentage rent, if any, shall be limited as provided in Exhibit 4.1(a) only.

*Approved by Judge Donald H. Steckroth February  27, 2014*

"Third-party" means, with reference to any Expenses, a party that is not affiliated with or related to Merchant.

4.2     Payment of Expenses.  From and after the Sale Commencement Date, Agent shall be responsible for the payment of all Expenses, whether or not there are sufficient Proceeds collected to pay such Expenses after the payment of the Guaranteed Amount. All Expenses incurred during each week of the Sale (*i.e.*, Sunday through Saturday) shall be paid by Agent to or on behalf of Merchant immediately following the weekly Sale reconciliation by Merchant and Agent pursuant to Section 8.7(a) below, based upon invoices and other documentation reasonably satisfactory to Merchant and Agent; provided, however, that Agent shall be obligated to pre-fund any Occupancy Expenses and payroll-related expenses consistent with Merchant's customary rent and payroll funding practices and timing.

Section 5.      Inventory Valuation; Merchandise.

5.1     Inventory Taking.

(a)     Following the Sale Commencement Date, Merchant and Agent shall cause to be taken a SKU-level physical inventory of the Merchandise located in the Closing Stores and the Distribution Center (collectively, the "Inventory Taking"). Merchant and Agent shall use commercially reasonable efforts to complete the Inventory Taking in each of the Closing Stores no later than fourteen (14) days after the Sale Commencement Date (the "Inventory Completion Date", and the date of the Inventory Taking at each Closing Store being the "Inventory Date" for each such Closing Store).  Merchant and Agent shall jointly employ RGIS or another mutually acceptable independent inventory taking service (the "Inventory Taking Service") to conduct the Inventory Taking. The Inventory Taking shall be conducted in accordance with the procedures and instructions to be mutually agreed upon by Merchant (in consultation with the Lender) and Agent and made a part of this Agreement as Exhibit 5.1(a) (the "Inventory Taking Instructions"). As an Expense, Agent shall be responsible for fifty percent (50%) of the fees and expenses of the Inventory Taking Service.  The balance of such fees and expenses, if applicable, shall be paid by Merchant. Except as provided in the immediately preceding sentence, Merchant and Agent shall each bear their respective costs and expenses related to the Inventory Taking; provided that Agent shall be obligated to pay fifty percent (50%) of the payroll and related benefit costs (subject to the Benefits Cap) for Closing Store-level Retained Employees used during the Inventory Taking, and Merchant shall pay the remaining fifty percent (50%) of the payroll and related benefit costs for Retained Employees used during the Inventory Taking. Merchant, Agent, and Lender shall each have the right to have representatives present during the Inventory Taking, and shall each have the right to review and verify the listing and tabulation of the Inventory Taking Service.  Merchant agrees that during the Inventory Taking in each of the Closing Stores, the applicable Closing Store shall be closed to the public and no sales or other transactions shall be conducted until the Inventory Taking has been completed, as agreed by Merchant and Agent.  Merchant and Agent further agree that until the Inventory Taking in each particular Closing Store is complete, Agent shall not (i) transfer any Merchandise to or from that Closing Store, (ii) deliver any Additional Agent Merchandise to such Closing Store, (iii) move Merchandise within or about the Closing Stores, or (iv) remove any Merchant hang tags, price tickets, or inventory control tags affixed to any Merchandise. Agent and Merchant (in consultation with the Lender) shall use their reasonable best efforts to reconcile the Inventory

18

Taking (including, but not limited to, the determination of the aggregate Retail Price of the Merchandise), within ten (10) days after its completion.  In the event there is any dispute with respect to the reconciliation of the aggregate Retail Price of the Merchandise following completion of the Inventory Taking, then any such dispute shall be resolved in the manner and at the times set forth in Section 8.7(b)(ii) hereof.

(b)     With respect to Distribution Center Merchandise ("Reconciled DC Merchandise Receipts") and In-Transit Merchandise ("Reconciled In-Transit Merchandise Receipts"), such Distribution Center Merchandise and In-Transit Merchandise shall be counted and reconciled within five (5) business days after receipt of such goods in the Closing Stores in accordance with the procedures set forth herein (upon being reconciled, "Reconciled DC Merchandise Receipts" and "Reconciled In-Transit Merchandise Receipts", respectively. Absent prior notification and agreement of Merchant, failure to report any variance between the received shipment from the respective shipping documents (each a "Shipping Variance"), within such five (5) business day period shall, result in such receipts being confirmed received consistent with the applicable shipping documents. Merchant shall have five (5) business days to verify a timely issued Shipping Variance (each a "Shipping Variance Response"), and absent prior notification and agreement of Agent, failure to respond to an asserted Shipping Variance within such five (5) business day period shall result in such Shipping Variance being deemed valid. If Merchant timely issues a Shipping Variance Response that disputes the asserted Shipping Variance, Merchant and Agent shall cooperate with each other to verify and resolve such dispute; provided that, in the event Merchant and Agent are unable to resolve such dispute within ten (10) business days  from Agent's receipt of a Shipping Variance Response from Merchant (or such greater period as Merchant and Agent may mutually agree), such dispute shall be resolved in the manner provided for resolution of disputes under Section 8.7(b)(ii) hereof.

5.2    Merchandise Subject to this Agreement.

(a)     For purposes of this Agreement, including but not limited to the calculation of the Guaranteed Amount, "Merchandise" means all new, first quality (other than as expressly set forth below), finished goods inventory that is owned by Merchant and customarily sold to customers in the ordinary course of Merchant's business, including but not limited to (i) Merchandise subject to Gross Rings; (ii) Distribution Center Merchandise received in the Closing Stores on or before the date that is twenty-one (21) days after the Sale Commencement Date (the "DC Goods Receipt Deadline"); (iii) Defective Merchandise (to the extent Merchant and Agent can mutually agree on the Retail Price applicable thereto); and (iv) In-Transit Merchandise received in the Closing Stores on or before the date that is twenty-one (21) days after the Sale Commencement Date (the "In-Transit Receipt Deadline"). Notwithstanding the foregoing, "Merchandise" shall not include (i) goods that belong to sublessees, licensees, or concessionaires of Merchant; (ii) goods held by Merchant on memo, on consignment, or as bailee; (iii) Excluded Defective Merchandise; (iv) Additional Agent Merchandise; (v) furnishings, trade fixtures furniture, and equipment and improvements to real property that are located in the Closing Stores and Distribution Center; (vi) Distribution Center Merchandise that does not arrive in the Closing Stores on or prior to the DC Goods Receipt Deadline; and/or (vii) In-Transit Merchandise that does not arrive in the Closing Stores on or prior to the In-Transit Receipt Deadline.

19

*Approved by Judge Donald H. Steckroth February  27, 2014*

(b)     As used in this Agreement, the following terms have the respective meanings set forth below:

"Defective Merchandise" means any item of Merchandise identified and agreed upon by Merchant and Agent as defective in that it is damaged, defective, scratched, soiled, ripped, torn, stained, faded, discolored, dented, out of box (if normally sold as new in-the-box), missing pieces, mismatched, mis-mated or near-sized, parts, items typically sold as a set which are incomplete, or gift with purchase items, or otherwise affected by other similar defenses rendering it not first quality.  Sample Merchandise and Merchandise on display in the Closing Stores shall not per se be deemed to be Defective Merchandise.

"Distribution Center Merchandise" means those items of inventory identified on Exhibit 5.2(b)(1) that were located in Merchant's Distribution Center, and which goods, to the extent not delivered to the Closing Stores prior to the Sale Commencement Date, shall be delivered by Merchant to the Closing Stores in accordance with an allocation schedule to be agreed upon by Merchant and Agent in accordance with Section 5.5(b) hereof; provided, however, it is agreed and understood that between the date of this Agreement and the Sale Commencement Date, Merchant shall have the right to allocate and distribute Distribution Center Merchandise to the Closing Stores in the manner, amounts and times as Merchant shall determine in the exercise of its reasonable discretion.

"Excluded Defective Merchandise" means (a) any item of Defective Merchandise that is not saleable in the ordinary course because it is so damaged or defective that it cannot reasonably be used for its intended purpose, (b) for which the parties cannot mutually agree upon a Retail Price, and/or (c) packaway merchandise. Excluded Defective Merchandise located in the Closing Stores shall be identified and counted during the Inventory Taking and thereafter removed from the sales floor and segregated. Excluded Defective Merchandise included in Distribution Center Merchandise and In-Transit Merchandise must be reasonably identified by Agent within five (5) business days of receipt of such Distribution Center Merchandise and/or In-Transit Merchandise in the Closing Stores.

"In-Transit Merchandise" mean items of inventory that were ordered by Merchant in the ordinary course of business as identified on Exhibit 5.2(b)(2) annexed hereto, which inventory was in-transit to the Closing Stores or Distribution Center as of the Sale Commencement Date, but which may be received in the Closing Stores or Distribution Center prior to the In-Transit Receipt Deadline.

5.3     Valuation.

(a)     For purposes of this Agreement, "Retail Price" means, with respect to each item of Merchandise, the lowest of the lowest ticketed, file price, marked, shelf price, hang-tag, stickered, or other hard-marked price as of the Sale Commencement Date, excluding in all instances any and all temporary point of sale ("POS") activity (the "Base Retail Price"), other than with respect to items of Merchandise that are subject to a POS discount of fifty percent (50%) or greater as of the Sale Commencement Date (the "Recognized POS Price"), in which

*Approved by Judge Donald H. Steckroth February  27, 2014*

case, "Retail Price" shall mean the lower of the (i) Base Retail Price; or (ii) the lowest Recognized POS Price. For purposes of calculating Retail Price (including Base Retail Price and any applicable Recognized POS Price), if an item of Merchandise with the same SKU has more than one ticketed, file, marked, or shelf price, or if multiple items of the same SKU have different ticketed, file, marked or shelf prices, the lowest ticketed, file, marked, or shelf price shall prevail for all such items of Merchandise in the same Closing Store ("Per Store Lowest Price").

(b)        Anything in Section 5.3(a) to the contrary notwithstanding, Merchant and Agent further agree as follows:

(i)        The Retail Price of any item of Merchandise that is not in a Closing Store as of the 10th day following the Sale Commencement Date (e.g., goods arriving in the Closing Stores after the Sale Commencement Date from Merchant's Distribution Center and/or any drop-ship vendor, or any other In-Transit Merchandise) shall be the otherwise applicable Retail Price of such item (determined in accordance with Section 5.3(a) above), *multiplied by* the inverse of the prevailing Sale discount in effect on the date such item arrives in the Closing Store (the "Prevailing Discount Adjustment"). Agent shall use commercially reasonable and good faith efforts to coordinate and schedule shipments of Distribution Center Merchandise and In-Transit Merchandise from the Distribution Center to the Closing Stores so as to minimize, where practicable (i.e., giving due consideration to the needs and capacity of the Closing Stores) the effect of the Prevailing Discount Adjustment, and will not intentionally implement steps designed to delay the shipment of such goods to the Closing Stores;

(ii)        Defective Merchandise shall be valued by mutual agreement of the parties; if the parties are unable to so agree, or if an item is determined to be Excluded Defective Merchandise, such goods shall be excluded from the Sale for all purposes hereunder, including, without limitation, calculation of the Guaranteed Amount, Proceeds and the Sharing Amount;

(iii)        Excluded Pricing Adjustments shall not be taken into account in determining the Retail Price of any item of Merchandise;

(iv)        If the Sale commences prior to the completion of the Inventory Taking at any Closing Store, then for the period from the Sale Commencement Date until the Inventory Date for such Closing Store (the "Gross Rings Period"), Agent and Merchant shall jointly keep (i) a strict count of gross register receipts less applicable Sales Taxes but excluding any prevailing discounts ("Gross Rings") and (ii) cash reports of sales within such Closing Store. Agent and Merchant shall keep a strict count of register receipts and reports to determine the actual Retail Price of the Merchandise sold by SKU.  All such records and reports shall be made available to Merchant and Agent during regular business hours upon reasonable notice.  Any Merchandise included in the Sale using the Gross Rings method shall be included in Merchandise using the actual Retail Price of the Merchandise sold plus one percent (1%) shrink provision.

21

For purposes of this Agreement, the term "Excluded Price Adjustments" means the following discounts or price adjustments offered by the Merchant: (i) point of sale discounts or similar adjustments regardless of duration, other than the Recognized POS Price provided for above, which is solely with respect to items of Merchandise that are subject to a POS discount of fifty percent (50%) or greater on the Sale Commencement Date' (ii) employee discounts; (iii) member or customer appreciation points or coupons; (iv) multi-unit purchase discounts; (v) adjustments for damaged, defective or "as-is" items; (vi) coupons (Merchant's or competitors'), catalog, website, or circular prices, or "buy one get one" type discounts; (vii) customer savings pass discounts or "bounce back" coupons, or discounts for future purchases based on dollar value of past purchases; (viii) obvious ticketing or marking errors; (x) instant (in-store) or mail in rebates; or (ix) similar customer specific, temporary, or employee non-product specific discounts or pricing accommodations.

5.4    Excluded Goods.  Merchant shall retain all rights and responsibility for any goods not included as "Merchandise" hereunder and shall remove, at Merchant's expense, such goods from the Closing Stores prior to the Sale Commencement Date, or as soon thereafter as reasonably practicable. If Merchant so elects at the beginning of the Sale Term, Agent shall accept those goods not included as "Merchandise" hereunder and as identified by Merchant for sale (including for these purposes any Distribution Center Merchandise that does not arrive in the Closing Stores on or prior to the DC Goods Receipt Deadline and/or In-Transit Merchandise that does not arrive in the Closing Stores on or prior to the In-Transit Receipt Deadline) as "Merchant Consignment Goods".  Agent shall retain twenty percent (20%) of the sale price (less applicable Sales Taxes) for all sales of Merchant Consignment Goods, and Merchant shall receive eighty percent (80%) of the sale price (less applicable Sales Taxes) in respect of sales of Merchant Consignment Goods. Merchant shall receive its share of the receipts of sales of Merchant Consignment Goods on a weekly basis, immediately following the weekly reconciliation by Merchant and Agent pursuant to Section 8.7(a) below.  Except as expressly provided in this Section 5.4, Agent shall have no cost, expense, or responsibility in connection with any goods not included in Merchandise, including but not limited to sales commissions and percentage rent.

5.5    Distribution Center Matters.

(a)    On and after the Sale Commencement Date, Agent shall be responsible for allocating and designating the shipment of the Distribution Center Merchandise to the Closing Stores. Notwithstanding anything to the contrary herein, except as provided in Section 4.1(x), Agent shall not be responsible to pay any cost or expenses associated with the operation of the Distribution Center.

(b)    Subject to Agent's payment of Distribution Center Expenses in accordance with Section 4.1 hereof, during the period commencing on the Sale Commencement Date and concluding on the earliest to occur of (i) the Sale Termination Date or (ii) the Vacate Date for the Distribution Center, Merchant agrees and covenants that it shall be responsible for performing and providing all Distribution Center Services with respect to all Distribution Center Merchandise, In-Transit Merchandise, and Additional Agent Merchandise located at, or to be received at the Distribution Center. Merchant represents that it has the capacity to ship approximately $10,000,000 (Retail Price) from the Distribution Center to the Closing Stores

*Approved by Judge Donald H. Steckroth February  27, 2014*

during any seven (7) day period; provided that in the event Agent requests that Merchant ship more than $10,000,000 (Retail Price) from the Distribution Center to the Closing Stores in any weekly period, Agent shall be obligated to pay Merchant, as an Expense of the Sale, for the additional incremental costs attributable to such expanded shipping services (i.e., any additional expenses incurred with regard to the amount of weekly shipments above $10,000,000 (Retail Price) only. Not later than two days prior to the Sale Commencement Date, Agent shall deliver to Merchant and the Lender an allocation schedule for the Distribution Center Merchandise and In-Transit Merchandise to the Closing Stores. After the Sale Commencement Date, Agent and Merchant shall agree (in consultation with the Lender) on an allocation schedule for shipment of Additional Agent Merchandise from the Distribution Center to the Closing Stores.

Section 6.      Sale Term.

6.1      Term. The Sale shall commence at the Closing Stores not later than February 28, 2014 (the "Sale Commencement Date"). Agent shall complete the Sale and vacate the premises of each Closing Store and Distribution Center in favor of Merchant or its representative or assignee on or before May 31, 2014 (the "Sale Termination Date"). The period beginning on the Sale Commencement Date through and including the Sale Termination Date shall be referred to herein as the "Sale Term". The Sale Termination Date as to any Closing Store or the Distribution Center may be (a) extended by mutual written agreement of Agent and Merchant, in consultation with the Lender or (b) accelerated by Agent, in which case Agent shall provide Merchant and the Lender with not less than seven (7) days' advance written notice of any such planned accelerated Sale Termination Date (each such notice being a "Vacate Notice"); provided that, Agent shall not be permitted to deliver a Vacate Notice during the period beginning on the date that is three (3) calendar days prior to the end of a calendar month and the end of such calendar month. If Agent fails to provide Merchant and the Lender with timely notice of an acceleration of the Sale Termination Date for a Closing Store or the Distribution Center, Agent shall be liable for and shall pay any Occupancy Expenses resulting from such untimely notice.

6.2      Vacating the Closing Stores and Distribution Center. Subject to the terms of Section 6.1 hereof, Agent shall provide Merchant and the Lender with not less than seven (7) days' advance written notice of its intention to vacate any Closing Store or Distribution Center (as to each such Closing Store and/or Distribution Center, as applicable, the "Vacate Date"). On the Vacate Date, Agent shall vacate such Closing Store and/or Distribution Center in favor of Merchant or its representatives or assignee, remove all Remaining Merchandise and unsold Additional Agent Merchandise from the Closing Store and/or Distribution Center, and leave such Closing Store and Distribution Center in "broom clean" condition (ordinary wear and tear excepted) subject to the right to abandon, neatly in place, any unsold Owned FF&E. Agent's obligation to pay all Expenses, for each Closing Store and/or Distribution Center shall continue until the applicable Vacate Date for such Closing Store and/or Distribution Center. All assets of Merchant used by Agent in the conduct of the Sale (e.g., FF&E, supplies, etc.) shall be returned by Agent to Merchant or left at the Closing Stores and/or Distribution Center, to the extent same have not been used in the conduct of the Sale or have not been otherwise disposed of through no fault of Agent. Any reference in this Section 6 to vacating the Closing Stores and/or Distribution Center means vacating the Closing Stores and/or Distribution Center, as applicable, in favor of Merchant, its representatives, or assignee and shall not mean vacating possession or disclaimer

23

of lease in favor of the landlord or owner of the Closing Store and/or Distribution Center premises.  Agent agrees that it shall be obligated to repair any damage caused by Agent (or any representative, agent, or licensee thereof) to any Closing Store and/or Distribution Center during the Sale Term, ordinary wear and tear excepted.

Section 7.      Intentionally Omitted.

Section 8.      Conduct of the Sale.

 8.1      Rights of Agent and Merchant.  Subject to the Approval Order and the Sale Guidelines, Agent shall be permitted to conduct a "going out of business", "store closing" or similarly themed sale at the Closing Stores throughout the Sale Term. Agent shall conduct the Sale in the name of and on behalf of Merchant in a commercially reasonable manner and in compliance with the terms of this Agreement and, except as modified by the Approval Order, all governing laws and applicable agreements to which Merchant is a party. Agent shall conduct the Sale in accordance with the Sale Guidelines annexed hereto as Exhibit 8.1 and approved by the Approval Order, whether by in-store promotion, media advertising, or other promotional materials.  Merchant shall have the right to monitor the Sale and activities attendant thereto and to be present in the Closing Stores and/or Distribution Center during the hours when the Closing Stores and/or Distribution Center are open for Business, so long as Merchant's presence does not unreasonably disrupt the conduct of the Sale. Merchant shall also have a right of access to the Closing Stores and/or Distribution Center at any time in the event of an emergency situation and shall promptly notify Agent of such emergency.  In addition to any other rights granted to Agent hereunder, in conducting the Sale, Agent, in the exercise of its sole discretion, shall have the following rights, limited by the Sale Guidelines:

 (a)      except as otherwise provided in the Approval Order, to establish Closing Stores' and Distribution Center hours, which are consistent with the terms of applicable leases, mortgages, or other occupancy agreements and local laws or regulations, including, without limitation, Sunday closing laws; provided, however, to the extent that Agent extends the hours of operation at one or more of the Closing Stores beyond the hours historically operated by Merchant, which results in additional utilities charges and increased Occupancy Expenses in excess of the average utilities charges and Occupancy Expenses for such Closing Stores over the twelve (12) months preceding the Sale Commencement Date, Agent shall reimburse Merchant the amounts, if any, of such additional costs and such additional costs shall constitute Expenses;

 (b)      to use without charge during the Sale Term (except where otherwise designated as an Expense pursuant to Section 4.1 hereof), (i) all furniture, fixtures and equipment, (ii) bank accounts, (iii) Closing Store-level and/or Distribution Center-level (and to the extent available, corporate) computer hardware and software, (iv) customer lists, mailing lists, email lists, and web and social networking sites utilized by Merchant in connection with its business (but solely in connection with the Sale and pursuant to such reasonable restrictions requested by Merchant in order for Merchant to comply with its privacy policy and applicable laws governing the use and dissemination of confidential consumer personal data), (v) existing supplies located at the Closing Stores and/or Distribution Center, (vi) intangible assets (including Merchant's names, logos, and tax identification numbers), (vii) Closing Stores' and/or

*Approved by Judge Donald H. Steckroth February  27, 2014*

Distribution Center keys, case keys, security codes, and safe and lock combinations required to gain access to and operate the Closing Stores and the Distribution Center, and (viii) any other assets of Merchant located at the Closing Stores and/or Distribution Center (whether owned, leased, or licensed) consistent with applicable terms of leases or licenses. Agent shall exercise due care and return to Merchant immediately at the end of the Sale all materials and supplies except materials or supplies expended;

(c)      subject to Agent's payment in accordance with Sections 4.1(s) and (x) above in respect of Central Services and Distribution Center Services, Merchant agrees and covenants that it shall be responsible for performing and providing to Agent such Central Services necessary or incident to the conduct of the Sale, including, but not limited to, use of Merchant's central office facilities, central administrative services, and personnel to process payroll, perform MIS, and provide other central office services necessary for the Sale to the extent that such services are normally provided by Merchant in house; provided, however, that, in the event Agent expressly requests Merchant to provide services other than those normally provided to the Closing Stores and/or Distribution Center and relating to the sale of Merchandise by Merchant in the ordinary course of business and as expressly contemplated by this Agreement, Agent shall be responsible to reimburse Merchant for the actual incremental cost of such services incurred by Merchant as an Expense of the Sale hereunder;

(d)      to establish Sale prices and implement advertising, signage (including exterior banners and signs and sign walkers), and promotional programs consistent with the sale theme described herein, and as otherwise provided in the Approval Order and the Sale Guidelines, as and where applicable (including, without limitation, by means of media advertising, A-frame, interior and exterior banners, use of sign walkers and similar signage);

(e)      once the Inventory Taking is complete at both the transferring Closing Store and the receiving Closing Store, to transfer Merchandise between and among the Closing Stores;

(f)      to supplement the Merchandise at the Closing Stores with Additional Agent Merchandise in accordance with Section 8.9 hereof; and

(g)      to conduct the Sale in accordance with the Sale Guidelines attached hereto as Exhibit 8.1.

8.2     Terms of Sales to Customers.  Subject to Agent's compliance with applicable law, all sales of Merchandise will be "final sales" and "as is" and all advertisements and sales receipts will reflect the same. Agent shall not warrant the Merchandise in any manner, but will, to the extent legally permissible, pass on all manufacturers' warranties to customers.  All sales will be made only for cash or nationally recognized credit and debit cards.  Agent shall accept and honor coupons during the Sale Term, if any, as well as Merchant's employee discount terms as are in effect immediately prior to the commencement of the Sale Term. Merchant shall reimburse Agent in cash for all amounts related to coupons, as well as Merchant's employee discount terms, during each weekly sale reconciliation provided for in Section 8.7. Agent shall clearly mark all tickets and receipts for the Merchandise sold at the Closing Stores during the Sale Term,

*Approved by Judge Donald H. Steckroth February  27, 2014*

so as to distinguish such Merchandise from the merchandise sold prior to the Sale Commencement Date.

      8.3    Sales Taxes. (a) During the Sale Term, all sales, excise, gross receipts, and other taxes attributable to sales of Merchandise and Additional Agent Merchandise as indicated on Merchant's point of sale equipment (other than taxes on income, but specifically including, without limitation, gross receipts taxes) payable to any taxing authority having jurisdiction (collectively, "Sales Taxes") shall be added to the sales price of Merchandise and Additional Agent Merchandise and collected by Agent in trust for Merchant at time of sale and paid over to Merchant. All Sales Taxes shall be deposited into a segregated account designated by Merchant and Agent solely for the deposit of such Sales Taxes (the "Sales Taxes Account").  If Agent does not timely remit Sales Taxes to Merchant, Merchant shall be permitted to immediately draw on the Letter of Credit in the full amount of Sales Taxes collected by Agent in the preceding week. Provided that Agent has collected all Sales Taxes during the Sale and remitted the proceeds thereof to Merchant, Merchant shall promptly pay all Sales Taxes and file all applicable reports and documents required by the applicable taxing authorities.  Notwithstanding anything to the contrary herein, Agent shall reimburse Merchant for any additional Sales Taxes, interest, fines, penalties, and similar amounts payable to any taxing authority as the result of a Sales Tax audit conducted by or on behalf of such authority which discloses that the Sales Taxes collected by Agent and paid over to Merchant for any period during the Sale Term were less than those mandated by applicable law for the sale of Merchandise, Additional Agent Merchandise and/or Owned FF&E, if any, that is sold by Agent under this Agreement (any such additional Sales Taxes and other amounts are collectively referred to herein as "Additional Taxes and Penalties"). Merchant will be given access to the computation of gross receipts for verification of all such Sales Tax collections.  Agent shall add Sales Tax to the sales price of all Additional Agent Merchandise sold and Agent shall collect Sales Taxes attributable to the sales of Additional Agent Merchandise and deposit such amounts into existing accounts, trust accounts, or other accounts designated by Agent, for remittance by Merchant, on behalf of Agent, to the appropriate taxing authority. If Agent fails to perform its responsibilities in accordance with this Section 8.3, and provided Merchant complies with its obligations in accordance with this Section 8.3, Agent shall indemnify and hold harmless Merchant and its officers, directors, employees, agents and independent contractors (collectively, "Merchant Indemnified Parties") from and against any and all costs, including, but not limited to, reasonable attorneys' fees, assessments, fines, or penalties (including but not limited to all Additional Taxes and Penalties) that Merchant sustains or incurs as a result or consequence of the failure by Agent to collect Sales Taxes and remit them to Merchant and/or, to the extent Agent is required hereunder to prepare reports and other documents, the failure by Agent to promptly deliver any and all reports and other documents required to enable Merchant to file any requisite returns with such taxing authorities. Provided that Agent performs its responsibilities in accordance with this Section 8.3, Agent shall have no further obligation to the Merchant, the Lender, any taxing authority, or any other party, and Merchant (or if Merchant shall be unable to or otherwise for any reason fails to, and Lender has received such payment, the Lender) shall indemnify and hold harmless Agent and its officers, directors, employees, agents and Supervisors (collectively, "Agent Indemnified Parties") from and against all claims, demands, assessments, penalties, losses, liability or damage, including, without limitation, reasonable attorneys' fees and expenses, directly or indirectly asserted against, resulting from or related to the failure by Merchant to promptly pay

*Approved by Judge Donald H. Steckroth February  27, 2014*

such taxes to the proper taxing authorities and/or the failure by Merchant to promptly file with such taxing authorities all reports and other documents required by applicable law to be filed with or delivered to such taxing authorities.

(b)     Without limiting the generality of Section 8.3(a) hereof, the Parties agree that because Agent will conduct the Sale solely as agent for Merchant, the various payments that this Agreement contemplates (including the payment by Agent of the Guaranteed Amount) do not represent the sale of tangible personal property and, accordingly, are not subject to Sales Taxes.

8.4     <u>Supplies</u>.   Agent shall have the right to use all existing supplies necessary to conduct the Sale (<u>e.g.</u>, boxes, bags, and twine, but not gift certificates, rain checks, merchandise credits, or the like) located at the Closing Stores at no charge to Agent.   In the event that additional supplies are required in any of the Closing Stores during the Sale Term, the acquisition of such additional supplies shall be the responsibility of Agent as an Expense; <u>provided</u>, <u>however</u>, that if reasonably requested by Agent, Merchant shall assist Agent in obtaining supplies, at Agent's expense, from Merchant's vendors at Merchant's usual and customary costs for such supplies.   Merchant does not warrant that Merchant's existing supplies as of the Sale Commencement Date are adequate for purposes of the Sale.

8.5     <u>Returns of Merchandise</u>.   During the first ten (10) days of the Sale, Agent shall accept returns of Merchandise sold by Merchant prior to the Sale Commencement Date in accordance with Merchant's return policies in effect at the time of purchase (to the extent presented in accordance with the foregoing terms, each such item being defined herein as "<u>Returned Merchandise</u>"). Agent shall maintain and deliver to Merchant a detailed Returned Merchandise log, including copies of all relevant merchandise receipts and credits, and shall mark the Returned Merchandise in such a fashion so as to render such merchandise readily identifiable by Merchant and Agent.   Merchant shall reimburse Agent in cash or credit against the following week's payment for the amount of any store credit or refund given to any customer in respect of Returned Merchandise. To the extent Returned Merchandise is salable as first quality merchandise, it shall be included in Merchandise and for purposes of the calculation of the Guaranteed Amount and shall be valued at the Retail Price applicable to such item, multiplied by the inverse of the then prevailing Sale discount on the date of the return.   Subject to Merchant's reimbursement to Agent of the amount of any store credit or refund granted for any such Returned Merchandise, the aggregate Retail Price of the Merchandise shall be increased by the Retail Price of any Returned Merchandise, and the Guaranteed Amount shall be adjusted accordingly. If the Returned Merchandise is not first quality goods, Merchant and Agent shall negotiate in good faith to determine an appropriate Retail Price applicable to such merchandise for purposes of determining the Retail Price attributable thereto; <u>provided</u> that in the event Merchant and Agent cannot agree on the Retail Price to be attributed to any particular item(s) of Returned Merchandise, than such item(s) shall be segregated form Merchandise and excluded from the Sale and treated as Excluded Defective Merchandise for all purposes hereunder. Any reimbursements due to Agent as a result of Returned Merchandise shall be accounted for and paid by Merchant immediately following the weekly Sale reconciliation pursuant to Section 8.7(a) hereof.   Any increases in payment on account of the Guaranteed Amount as a result of Returned Merchandise shall be paid by Agent as part of the final Sale reconciliation provided for

*Approved by Judge Donald H. Steckroth February  27, 2014*

under Section 8.7(b) hereof.

8.6.    <u>Gift Cards; Merchandise Credits; Membership Program</u>.

(a)  During the first fourteen (14) days of the Sale (such date being defined as the "<u>Gift Card Cutoff Date</u>"), Agent shall accept Merchant's gift cards, gift certificates, merchandise credits and other similar Merchant-issued credits, if any.  Merchant shall reimburse Agent in cash for gift card, gift certificate, and merchandise credit amounts redeemed through and including the Gift Card Cutoff Date as part of the weekly sale reconciliation provided for in Section 8.7(a). Merchant represents and warrants to Agent that the aggregate dollar amount of all gift cards, gift certificates, merchandise credits and other similar Merchant-issued credits outstanding as of close of business on the day immediately preceding the Sale Commencement Date does not exceed $1,200,000 in the aggregate (the "<u>Gift Card Ceiling</u>"). Merchant and Agent further agree that in the event Agent elects to honor gift cards, gift certificates, merchandise credits and other similar Merchant-issued credits, if any, after the Gift Card Cutoff Date, Merchant shall be obligated to reimburse Agent only for the amount, if any, by which the aggregate amount of redeemed gift cards, gift certificates, merchandise credits and other similar Merchant-issued credits, if any, redeemed (x) prior to the Gift Card Cutoff Date plus (y) after the Gift Card Cutoff Date exceeds the Gift Card Ceiling.

(b)    To the extent Merchant maintains any customer membership or customer loyalty discount programs, and solely to the extent customers paid for the right to join such program, during the Sale Term said customers may take advantage of discounts afforded customers in connection with Merchant's membership and/or loyalty program benefits ("<u>Membership Program Discounts</u>") in addition to the then-prevailing Sale discounts being offered by Agent (for example, a "take an additional 10% off" Membership Program Discount" may be combined with Agent's 30% prevailing sale discount, such that the affected customer would receive an effective  discount of 33%); provided that if Merchant maintains any customer membership or customer loyalty discount programs that customers did not pay for the right to join such program, Agent shall not honor such program during the Sale Term; <u>provided</u> <u>further</u> <u>that</u>, Merchant shall reimburse Agent for the incremental increased discount received as a consequence of the recognition of such Membership Program Discounts (on a weekly basis as part of each weekly reconciliation).

8.7.    <u>Sale Reconciliation</u>.

(a)    <u>Weekly Reconciliation</u>.    On each Wednesday during the Sale Term, commencing on the second Wednesday after the Sale Commencement Date, Agent and Merchant (in consultation with Lender) shall cooperate to reconcile Expenses, Gross Rings, and such other Sale-related items as either party shall reasonably request, in each case for the prior week or partial week (<u>i.e.</u>, Sunday through Saturday), pursuant to procedures agreed upon by Merchant (in consultation with Lender) and Agent.  On a weekly basis, Agent shall also provide Merchant (and a copy to Lender) with a report (in electronic format acceptable to Merchant) of all sales of Additional Agent Merchandise, which report shall detail by Closing Store, at a minimum, gross and net sales and type of items sold. To ensure accurate sales audit functions, as well as accurate calculations of the Sharing Amount and Additional Agent Merchandise Fee,

*Approved by Judge Donald H. Steckroth February  27, 2014*

Agent shall use Merchant's existing point-of-sale system for recording all sales (including any sales of Additional Agent Merchandise) in the Closing Stores.

(b)  Final Reconciliation.

(i)  Within thirty (30) days after the Sale Termination Date applicable to the last Closing Store in which the Sale is concluded, Agent and Merchant (in consultation with the Lender) shall jointly prepare a final reconciliation of the Sale including, without limitation, a summary of Proceeds, Sales Taxes, Expenses, and any other accountings required hereunder (the "Final Reconciliation"). Within five (5) days after completion of the Final Reconciliation, any undisputed and unpaid Expenses shall be paid by Agent (the "Final Reconciliation Settlement Date"). In the absence of an order of the Bankruptcy Court to the contrary, no disputed amounts owing hereunder shall be paid until the dispute has been resolved by agreement of the parties or as determined in the manner prescribed in Section 8.7(b)(ii) hereof. During the Sale Term, and until all of Agent's obligations under this Agreement have been satisfied, Merchant (in consultation with the Lender) and Agent shall have reasonable access to Merchant's and Agent's records with respect to Proceeds, Sales Taxes, Expenses, and other Sale-related items to review and audit such records.

(ii)  In the event that there is any dispute with respect to either (x) the determination of the aggregate Retail Price of the Merchandise as reflected in the Final Inventory Report and/or (y) the Final Reconciliation, such dispute shall be promptly (and in no event later than the fifth (5th) business day following a request by either Merchant or Agent) submitted to the Bankruptcy Court for resolution. In the event of a dispute as to (x) or (y) above, Agent shall extend the Letter of Credit in accordance with the provisions of Section 3.4 hereof. If Agent has for any reason not so extended the expiration date of the Letter of Credit by the date that is ten (10) business days prior to the applicable expiration date (as may have been extended previously), Merchant and/or Lender shall have the right to make a drawing under the Letter of Credit in an amount or amounts equal to the amounts Merchant asserts are then owing to Merchant.

(iii)  Contemporaneously with the completion of the Final Reconciliation and Agent's receipt of all funds due to Agent from Merchant (or from Lender), if any, pursuant to Section 3.3(e), Agent shall have no further rights or claims against Merchant or Lender under Section 3.3(e) (and Agent shall, upon the reasonable request of Merchant or Lender hereunder, acknowledge the same in writing) and Merchant and Lender shall be fully discharged of any such further obligations pursuant to such Section 3.3(e).

8.8  Force Majeure. If any casualty, act of war or terrorism, or act of God prevents the conduct of business in the ordinary course at any Closing Store and/or the Distribution Center for a period in excess of ten (10) consecutive days (a "Force Majeure Event"), such Closing Store and/or Distribution Center and the Merchandise located at such Closing Store and/or Distribution Center shall be eliminated from the Sale and considered to be deleted from this Agreement as of the last date of such event, and Agent and Merchant shall have no further rights or obligations hereunder with respect thereto; provided, however, that (i) the proceeds of any insurance attributable to such Merchandise shall constitute Proceeds hereunder, and (ii) the Guaranteed

29

Amount shall be reduced to account for any Merchandise eliminated from the Sale that is not the subject of insurance proceeds or consolidated by Agent into another Closing Store(s) and/or Distribution Center  (s) and, to the extent Agent has paid the Guaranteed Amount,  Merchant, to the extent such insurance proceeds are actually received, shall reimburse Agent for the amount by which the Guaranteed Amount is so reduced prior to the end of the Sale Term.  If a Closing Store is eliminated from the Sale due to a Force Majeure Event, Agent will use its commercially reasonable efforts to transfer therefrom all Merchandise that is not the subject of insurance proceeds and include such Merchandise in the Sale at other Closing Stores and/or Distribution Center.

8.9     Additional Agent Merchandise

(a)     Agent may include in the Sale (i) certain Additional Agent Merchandise that was previously ordered by Merchant from its vendors but for which the orders have not yet been filled as the Sale Commencement Date, as such open orders are identified at Merchant's invoiced cost on Exhibit 8.9 and (ii) certain additional merchandise that is of like kind and quality as the Merchandise (collectively, the "Additional Agent Merchandise"). Agent shall have the sole right to designate which of the open order merchandise that it wishes to include in the Sale, but agrees that the aggregate amount of Additional Agent Merchandise included in the Sale shall not be less than $7,500,000 (the "Additional Agent Merchandise Threshold"); provided that, solely for determining Agent's compliance with the Additional Agent Merchandise Threshold, (A) any goods constituting Additional Agent Merchandise under clause (i) above that are included in the Sale shall be valued at the higher of (x) Merchant's original invoiced cost (as same appears on Exhibit 8.9) or (y) Agent's actual acquisition cost for such goods, and (B) any goods constituting Additional Agent Merchandise under clause (ii) above that are included in the Sale shall be valued at Agent's actual acquisition cost for such goods. In addition to the payment of the Guaranteed Amount, Sharing Amount, if any, and Expenses, Agent guarantees that it shall pay Merchant an additional fee in respect of the proceeds realized upon the sale of Additional Agent Merchandise of $25,000 (the "Additional Agent Merchandise Fee"). The Additional Agent Merchandise Fee shall be paid by Agent to Merchant, or its designee, on the Final Reconciliation Settlement Date.

(b)     The Additional Agent Merchandise shall be at all times subject to the control of Agent. If requested by Agent, Merchant shall, at Agent's expense as an Expense, insure the Additional Agent Merchandise and, if required, promptly file any proofs of loss with regard to same with Merchant's insurers.

(c)     Any transactions relating to the Additional Agent Merchandise are, and shall be construed as, a true consignment from Agent to Merchant. Merchant acknowledges, and the Approval Order shall provide, that the Additional Agent Merchandise shall be consigned to Merchant as a true consignment under Article 9 of the Uniform Commercial Code in effect in the State of New Jersey (the "UCC"). Agent is hereby granted a first priority security interest in (i) the Additional Agent Merchandise and (ii) the Additional Agent Merchandise proceeds, which security interest shall be deemed perfected pursuant to the Approval Order without the requirement of filing UCC financing statements or providing notifications to any prior secured parties (provided that Agent is hereby authorized to deliver any notices and file any financing

30

statements and amendments thereof under the applicable UCC identifying Agent's interest in the Additional Agent Merchandise (and any proceeds from the sale thereof) as consigned goods thereunder and the Merchant as the consignee therefor, and Agent's security interest in such Additional Agent Merchandise and Additional Agent Merchandise proceeds).

(d)     In order to distinguish the Additional Agent Merchandise (solely with respect to Additional Agent Merchandise under Section 8.9(a)(ii) above) from the Merchandise located in the Closing Stores, Agent shall affix distinctive tags and/or other identifying markings on all items of Additional Agent Merchandise, which shall enable Merchant and Agent to distinguish sales of the Additional Agent Merchandise from sales of the Merchandise. Additionally, Agent shall provide signage in the Closing Stores notifying customers that the Additional Agent Merchandise has been included in the Sale.  Agent shall pay for all costs and expenses related to, or incurred in connection with, the marketing and sale of the Additional Agent Merchandise as an Expense of the Sale.

8.10   E-Commerce Platform. In addition to, and without limiting, any other provision of this Agreement, Merchant hereby grants Agent a royalty-free license (exclusive during the Sale Term) to use Merchant's e-commerce site and related platform, to the extent available, to fulfill customer orders for purchases/sales of Merchandise (in Agent's capacity as Agent hereunder). All proceeds of such sales shall constitute Proceeds under this Agreement. Merchant shall provide Agent with reasonable assistance with respect to the functionality of the site and the fulfillment of Merchandise sales; provided, however, that Agent shall pay Merchant (as an Expense, which shall be in addition to all other Expenses contemplated by this Agreement) for the expenses incurred and funded by Merchant after the Sale Commencement Date that are directly attributed to and allocable to the continued operation and maintenance of the e-commerce site and related platform (but only to the extent such post-Sale Commencement Date expenses are not otherwise included as an Expense of the Sale under Section 4.1 hereof) in the event Agent elects to avail itself of such license rights.

Section 9.     Employee Matters.

9.1   Merchant's Employees.   Subject to the applicable provisions of the Approval Order and any other provisions in this Agreement relating to employees, Agent may use Merchant's employees in the conduct of the Sale to the extent Agent deems expedient, and Agent may select and, with Merchant, schedule the number and type of Merchant's employees required for the Sale.  Agent shall identify any such employees to be used in connection with the Sale (each such employee, a "Retained Employee") prior to the Sale Commencement Date.  Retained Employees shall at all times remain employees of Merchant, and shall not be considered or deemed to be employees of Agent.  Merchant and Agent agree that except to the extent that wages, payroll taxes, benefits, and other costs relating to the employment of Retained Employees constitute Expenses hereunder and except as otherwise expressly provided in this Agreement, nothing contained in this Agreement and none of Agent's actions taken in respect of the Sale shall be deemed to constitute an assumption by Agent of any of Merchant's obligations relating to any of Merchant's employees including, without limitation, Excluded Benefits, Worker Adjustment Retraining Notification Act ("WARN Act") claims, and other termination-type claims and obligations, or any other amounts required to be paid by statute or law (except to the

31

extent such items are amounts for which Merchant is entitled to indemnification pursuant hereto), nor shall Agent become liable under any collective bargaining or employment agreement or be deemed a joint or successor employer with respect to such employees.  Merchant shall not, without Agent's prior written consent, raise the salary or wages or increase the benefits for, or pay any bonuses or make any other extraordinary payments to, any of the Retained Employees, except as otherwise provided in this Agreement.

9.2    Termination of Employees by Merchant.  Agent may in its discretion stop using any Retained Employee at any time during the Sale.   In the event Agent determines to discontinue its use of any Retained Employee in connection with the conduct of the Sale, Agent will provide written notice to Merchant at least seven (7) days prior thereto, except for termination "for cause" (such as dishonesty, fraud, or breach of employee duties), in which case the seven (7) day notice period shall not apply; provided, however, that Agent shall immediately notify Merchant of the basis for such "cause".  During the Sale Term, Merchant shall not transfer or dismiss employees of the Closing Stores except "for cause" without Agent's prior consent (which consent shall not be unreasonably withheld). Notwithstanding any other provision hereof, Agent will indemnify Merchant with respect to any claims by Retained Employees arising from Agent's treatment of such Retained Employees.

9.3    Payroll Matters.  Subject to Section 4.1 hereof, during the Sale Term Merchant shall process the payroll for all Retained Employees and any former employees and temporary labor engaged for the Sale.  Each Wednesday (or such other date as may be reasonably requested by Merchant to permit the funding of the payroll accounts before such payroll is due and payable) during the Sale Term, Agent shall transfer to Merchant's payroll accounts an amount equal to the base payroll for Retained Employees plus related payroll taxes, workers' compensation and benefits for such week, in the amount up to the Benefits Cap.

9.4    Employee Retention Bonuses.   Agent shall pay, as an Expense hereunder, retention bonuses ("Retention Bonuses") (which bonuses shall be inclusive of payroll taxes but as to which no benefits shall be payable) up to a maximum of approximately ten percent (10%) of base payroll, to certain Retained Employees who do not voluntarily leave employment and are not terminated "for cause", as Agent shall determine in its sole discretion.  The amount of such Retention Bonuses, which will be payable within thirty (30) days after the Sale Termination Date, shall be in an amount to be determined by Agent, in its discretion, and shall be processed through Merchant's payroll system. Agent shall provide Merchant with a copy of Agent's Retention Bonus plan within two (2) business days after the Sale Commencement Date.  Agent shall not utilize the Retention Bonus as a mechanism to encourage Retained Employees to act contrary to Merchant's best interests.

Section 10.    Conditions Precedent.

10.1    The willingness of Agent to enter into the transactions contemplated under this Agreement is directly conditioned upon the satisfaction of the following conditions at the time or during the time periods indicated, unless specifically waived in writing by Agent:

(a)    All representations and warranties of Merchant hereunder shall be true and

*Approved by Judge Donald H. Steckroth February  27, 2014*

correct in all material respects and no Event of Default shall have occurred at and as of the date hereof and as of the Sale Commencement Date;

(b)     On or before February 21, 2014, the Bankruptcy Court shall have entered an order, inter alia, approving the Bid Protections (a "Bidding Procedures Order"), which Bidding Procedures Order shall be in form and substance reasonably satisfactory to the Agent;

(c)     The Bankruptcy Court shall have entered the Approval Order, in substantially the form annexed hereto as Exhibit 10.1(c), on or before February 28, 2014;

(d)     The Agent shall have received evidence satisfactory to Agent, in its discretion, of Merchant's ability to perform its obligations under this Agreement during the Sale Term;

(e)     The Lender shall have executed this Agreement in the space provided therefor; and

(f)     Merchant shall have obtained from the Bankruptcy Court an order, pursuant to Section 365(d)(4) of the Bankruptcy Code, inter alia, extending the Merchant's time to assume or reject the leases for the Closing Stores to a date not sooner that the applicable Sale Termination Date.

10.2    The willingness of Merchant to enter into the transactions contemplated under this Agreement is directly conditioned upon the satisfaction of the following conditions at the time or during the time periods indicated, unless specifically waived in writing by Merchant:

(a)     All representations and warranties of Agent hereunder shall be true and correct in all material respects and no Event of Default shall have occurred at and as of the date hereof and as of the Sale Commencement Date.

(b)     Notwithstanding anything in this Agreement or any Agency Document to the contrary, the enforceability of this Agreement is subject in all respects to Merchant's express written approval and acceptance of any Exhibit or Agency Document not fully executed by the parties and attached hereto.

(e)     The Bankruptcy Court shall have entered the Approval Order.

Section 11.    Representations, Warranties and Covenants.

11.1    Merchant's Representations, Warranties, and Covenants.    Merchant hereby represents, warrants, and covenants in favor of Agent as follows:

(a)     Merchant (i) is a limited liability company duly organized, validly existing, and in good standing under the laws of the State of Delaware; (ii) has all requisite power and authority to own, lease, and operate its assets and properties and to carry on its business as presently conducted; and (iii) is, and during the Sale Term will continue to be, duly

33

authorized and qualified to do business and in good standing in each jurisdiction where the nature of its business or properties requires such qualification, including all jurisdictions in which the Distribution Center and each Closing Store is/are located, except, in each case, to the extent that the failure to be in good standing or so qualified could not reasonably be expected to have a material adverse effect on the ability of Merchant to execute and deliver this Agreement and perform fully its obligations hereunder.

(b)     Subject to the entry of the Approval Order, Merchant has the right, power, and authority to execute and deliver this Agreement and each other document and agreement contemplated hereby (collectively, together with this Agreement, the "Agency Documents") and to perform fully its obligations hereunder.  Subject to the entry of the Approval Order, Merchant has taken all necessary actions required to authorize the execution, delivery, and performance of the Agency Documents, and no further consent or approval on the part of Merchant is required for Merchant to enter into and deliver the Agency Documents, to perform its obligations thereunder, and to consummate the Sale.  Subject to the issuance and entry of the Approval Order, each of the Agency Documents has been duly executed and delivered by Merchant and constitutes the legal, valid, and binding obligation of Merchant, enforceable in accordance with its terms.  Subject to the entry of the Approval Order, no court order or decree of any federal, state, local, or provincial governmental authority or regulatory body is in effect that would prevent or materially impair, or is required for Merchant's consummation of, the transactions contemplated by this Agreement, and no consent of any third party that has not been obtained is required therefor, other than as shall be obtained prior to the Sale Commencement Date, except for any such consent the failure of which to be obtained could not reasonably be expected to have a material adverse effect on the ability of Merchant to execute and deliver this Agreement and perform fully its obligations hereunder.  Other than for any consent as shall be obtained prior to the Sale Commencement Date, and any contracts or agreements identified by Merchant to Agent on or prior to the Sale Commencement Date, no contract or other agreement to which Merchant is a party or by which Merchant is otherwise bound will prevent or materially impair the consummation of the Sale and the other transactions contemplated by this Agreement.

(c)     Since February 1, 2014, Merchant has replenished Merchandise and supplies in and to the Closing Stores in the ordinary course of business and consistent with historical practices.

(d)     Merchant (i) except as set forth on Exhibit 11.1(d), owns and will own at all times during the Sale Term, good and marketable title to all of the Merchandise free and clear of all liens, claims, and encumbrances of any nature and (ii) Merchant shall not create, incur, assume, or suffer to exist any security interest, lien, or other charge or encumbrance upon or with respect to any of the Merchandise or the Proceeds, in each case, except for such pre-existing liens and security interests as shall have been disclosed by Merchant to Agent and identified in Exhibit 11.1(d) hereof, which liens and security interests shall, pursuant to the Approval Order, attach only to the Guaranteed Amount, the Sharing Amount, the Additional Agent Merchandise Fee, Expenses, and any other amounts payable to Merchant hereunder.

(e)     Merchant has maintained its pricing files at all Closing Stores in the ordinary course of business, and prices charged to the public for goods (whether in-store, by

*Approved by Judge Donald H. Steckroth February  27, 2014*

advertisement, or otherwise) are the same in all material respects as set forth in such pricing files for the periods indicated therein (without consideration of any point of sale markdowns, advertised sales, and other customary in-store promotional or clearance activities).  All pricing files and records relative to the Merchandise have been made available to Agent.

(f)     Merchant shall ticket or mark all items of inventory received at the Closing Stores prior to the Sale Commencement Date in a manner consistent with similar Merchandise located at the Closing Stores and in accordance with Merchant's past practices and policies relative to pricing and marking inventory.

(g)     To the best of Merchant's knowledge, all Merchandise is in material compliance with all applicable federal, state, and local product safety laws, rules, and standards. Merchant shall provide Agent with its historic policies and practices, if any, regarding product recalls prior to the Sale Commencement Date.

(h)     Subject to the provisions of the Approval Order, Agent shall have the right during the Sale Term to the unencumbered use and occupancy of, and peaceful and quiet possession of, the Stores and the Distribution Center, the assets currently located at the Closing Stores and Distribution Center, and the utilities and other services provided at the Closing Stores and Distribution Center. Merchant shall, throughout the Sale Term, maintain in good working order, condition and repair all cash registers, heating systems, air conditioning systems, elevators, escalators and all other mechanical devices necessary or appropriate for the conduct of the Sale at the Closing Stores.  Except as otherwise restricted by the Bankruptcy Code or as provided herein and absent a bona fide dispute, throughout the Sale Term Merchant shall remain current on all expenses and payables necessary for the conduct of the Sale.

(i)     Subject to the Approval Order, Merchant has paid and shall continue to pay throughout the Sale Term, all self-insured or Merchant-funded employee benefit programs for Closing Stores' employees, including health and medical benefits and insurance and all proper claims made or to be made in accordance with such programs.

(j)     Supplies have not been, since February 1, 2014, and shall not be, prior to the Sale Commencement Date, transferred by Merchant to or from the Closing Stores so as to alter the mix or quantity of supplies at the Closing Stores from that existing on such date, other than in the ordinary course of business.

(k)     Since February 1, 2014, Merchant (i) has not (and shall not, up to the Sale Commencement Date) marked up or raised the price of any items of Merchandise, (ii) has not reduced has the price of any items of Merchandise, (iii) has sold inventory during such period at customary prices consistent with the ordinary course of business, and has not promoted or advertised any sales or in-store promotions (including POS promotions) to the public other than as described on Exhibit 11.1(k) (in all cases whether or not consistent with Merchant's ordinary course of business consistent with historic periods), and (iv) has not removed or altered any tickets or any indicia of clearance merchandise or POS promotion, except in the ordinary course of business.

*Approved by Judge Donald H. Steckroth February  27, 2014*

(l)      Except for (i) the Bankruptcy Case and (ii) the matters set forth on <u>Exhibit 11.1(l)</u>, no action, arbitration, suit, notice, or legal, administrative, or other proceeding before any court or governmental body has been instituted by or against Merchant, or has been settled or resolved, or to Merchant's knowledge, is threatened against or affects Merchant, relative to Merchant's business or properties, or which questions the validity of this Agreement, or that if adversely determined, would adversely affect the conduct of the Sale.

(m)     Merchant is not a party to any collective bargaining agreements with its employees. No labor unions represent Merchant's employees at the Distribution Center or at any Closing Store. There are currently no strikes, work stoppages, or other labor disturbances affecting the Distribution Center or any Closing Store, or Merchant's central office facilities.

(n)      Since January 1, 2014, Merchant has not taken, and shall not throughout the Sale Term take, any actions with the intent of increasing the Expenses of the Sale, including without limitation increasing salaries or other amounts payable to employees; except to the extent an employee was due an annual raise in the ordinary course.

(o)      Since February 1, 2014, Merchant has operated, and, except as otherwise restricted by the Bankruptcy Code or as provided herein, through the Sale Commencement Date Merchant covenants to continue to operate, the Closing Stores in all material respects in the ordinary course of business including without limitation by: (i) selling inventory during such period at customary prices consistent with the ordinary course of business and not promoting or advertising any sales or in-store promotions (including POS promotions) to the public other than as described on <u>Exhibit 11.1(o)</u> (in all cases whether or not consistent with Merchant's ordinary course of business consistent with historic periods); (ii) not returning inventory to vendors and not transferring inventory or supplies out of or to the Stores; and (iii) except as may occur in the ordinary course of business, not making any management personnel moves or changes at the Stores.

(p)      To Merchant's knowledge, formed after reasonable inquiry, all documents, information and supplements provided by Merchant to Agent in connection with Agent's due diligence and the negotiation of this Agreement were true and accurate in all material respects at the time provided.

(q)      No Closing Store lease or similar occupancy agreement has expired, nor shall expire at any time until the conclusion of the Sale Term in such Closing Store (by its terms or otherwise).

(r)      As of the date of this Agreement, the open merchandise orders with Merchant's vendors as reflected in <u>Exhibit 5.2(b)(2)</u> are open, valid and not have not been cancelled (by either Merchant or the relevant vendor.

11.2   <u>Agent's Representations, Warranties and Covenants</u>.   Agent hereby represents, warrants, and covenants in favor of Merchant as follows:

(a)      Agent (i) is a limited liability company duly and validly existing and in good standing under the laws of the State of Delaware; (ii) has all requisite power and authority

*Approved by Judge Donald H. Steckroth February 27, 2014*

to carry on its business as presently conducted and to consummate the transactions contemplated hereby; and (iii) is and during the Sale Term will continue to be duly authorized and qualified as a foreign company to do business and in good standing in each jurisdiction where the nature of its business or properties requires such qualification.

(b)      Agent has the right, power, and authority to execute and deliver each of the Agency Documents to which it is a party and to perform fully its obligations thereunder. Agent has taken all necessary actions required to authorize the execution, delivery, and performance of the Agency Documents, and no further consent or approval is required on the part of Agent for Agent to enter into and deliver the Agency Documents, to perform its obligations thereunder, and to consummate the Sale.  Each of the Agency Documents has been duly executed and delivered by Agent and constitutes the legal, valid, and binding obligation of Agent enforceable in accordance with its terms. No court order or decree of any federal, provincial, state, or local governmental authority or regulatory body is in effect that would prevent or impair or is required for Agent's consummation of the transactions contemplated by this Agreement, and no consent of any third party which has not been obtained is required therefor other than as provided herein.  No contract or other agreement to which Agent is a party or by which Agent is otherwise bound will prevent or impair the consummation of the transactions contemplated by this Agreement.

(c)      No action, arbitration, suit, notice, or legal, administrative, or other proceeding before any court or governmental body has been instituted by or against Agent, or has been settled or resolved, or to Agent's knowledge, has been threatened against or affects Agent, which questions the validity of this Agreement or any action taken or to be taken by Agent in connection with this Agreement, or which if adversely determined, would have a material adverse effect upon Agent's ability to perform its obligations under this Agreement.

Section 12.    Insurance.

12.1    Merchant's Liability Insurance.  Merchant shall continue until the Sale Termination Date, in such amounts as it currently has in effect, all of its liability insurance policies including, but not limited to, products liability, comprehensive public liability, auto liability, and umbrella liability insurance, covering injuries to persons and property in, or in connection with Merchant's operation of the Closing Stores, and shall use best efforts to cause Agent to be named an additional named insured with respect to all such policies.  Prior to the Sale Commencement Date, Merchant shall deliver to Agent certificates evidencing such insurance setting forth the duration thereof and naming Agent as an additional named insured, in form reasonably satisfactory to Agent.  All such policies shall require at least thirty (30) days prior notice to Agent of cancellation, non-renewal, or material change.  In the event of a claim under any such policies, (a) Merchant shall be responsible for the payment of all deductibles, retentions, or self-insured amounts to the extent such claim arises from or relates to the alleged acts or omissions of Merchant or its employees (other than Retained Employees), agents (other than Agent's employees), or independent contractors (other than Agent and Supervisors hired by Agent in conjunction with the Sale) and (b) Agent shall be responsible for the payment of all deductibles, retentions, or self-insured amounts (which amounts shall constitute Expenses) to the

37

extent such claim arises from or relates to the alleged acts or omissions of Agent or its employees, agents, or independent contractors, including Retained Employees.

12.2    Merchant's Casualty Insurance. Merchant shall continue until the Sale Termination Date, in such amounts as it currently has in effect, fire, flood, theft, and extended coverage casualty insurance covering the Merchandise in a total amount equal to no less than the Retail Price thereof, which coverage shall be reduced from time to time to take into account the sale of Merchandise. In the event of a loss to the Merchandise on or after the date of this Agreement, the proceeds of such insurance attributable to the Merchandise and/or Additional Agent Merchandise (net of any deductible) shall constitute Proceeds. Prior to the Sale Commencement Date, Merchant shall deliver to Agent certificates evidencing such insurance setting forth the duration thereof, in form and substance reasonably satisfactory to Agent.  All such policies shall require at least thirty (30) days prior notice to Agent of cancellation, non-renewal, or material change. Merchant shall not make any change in the amount of any deductibles or self-insurance amounts prior to the Sale Termination Date (as may be extended from time to time as set forth herein) without Agent's prior written consent.

12.3    Worker's Compensation Insurance.  Merchant shall continue until the Sale Termination Date, in such amounts as it currently has in effect, worker's compensation insurance (including employer liability insurance) covering all Retained Employees in compliance with all statutory requirements.  Prior to the Sale Commencement Date, Merchant shall deliver to Agent a certificate of its insurance broker or carrier evidencing such insurance.

12.4    Agent's Insurance.  Agent shall maintain at Agent's cost and expense throughout the Sale Term, in such amounts as it currently has in effect, comprehensive public liability and automobile liability insurance policies covering injuries to persons and property in or in connection with Agent's agency at the Closing Stores, and shall cause Merchant to be named an additional insured with respect to such policies. Prior to the Sale Commencement Date, Agent shall deliver to Merchant certificates evidencing such insurance policies, setting forth the duration thereof and naming Merchant as an additional insured, in form and substance reasonably satisfactory to Merchant.  In the event of a claim under such policies, Agent shall be responsible for the payment of all deductibles, retentions, or self-insured amounts thereunder, to the extent such claim arises from or relates to the alleged acts or omissions of Agent or Agent's employees, agents or Supervisors.

12.5    Risk of Loss.  Without limiting any other provision of this Agreement, Merchant acknowledges that Agent is conducting the Sale on behalf of Merchant solely in the capacity of an agent, and that in such capacity (i) Agent shall not be deemed to be in possession or control of the Closing Stores or the assets located therein or associated therewith, or of Merchant's employees located at the Closing Stores, and (ii) except as expressly provided in this Agreement, Agent does not assume any of Merchant's obligations or liabilities with respect to any of the foregoing.  Agent shall not be deemed to be a successor employer.  Merchant and Agent agree that, subject to the terms of this Agreement, Agent shall bear all responsibility for liability claims of customers, employees, and other persons arising from events occurring at the Closing Stores during and after the Sale Term (an "Agent Claim").  In the event of any liability claim other than an Agent Claim, Merchant shall administer such claim and shall present such claim to

38

Merchant's liability insurance carrier in accordance with Merchant's policies and procedures existing immediately prior to the Sale Commencement Date, and shall provide a copy of the initial documentation relating to such claim to Agent at the address listed in this Agreement.  To the extent that Merchant and Agent agree that a claim constitutes an Agent Claim, Agent shall administer such claim and shall present such claim to its liability insurance carrier, and shall provide copies of the initial documentation relating to such claim to Merchant.  In the event that Merchant and Agent cannot agree whether a claim constitutes an Agent Claim, each party shall present the claim to its own liability insurance carrier, and a copy of the initial claim documentation shall be delivered to the other party to the address designated for delivery of notices hereunder.

Section 13.    Indemnification.

13.1    Merchant Indemnification.  Merchant shall indemnify and hold Agent and each Agent Indemnified Party harmless from and against all claims, demands, penalties, losses, liability, or damage, including, without limitation, reasonable attorneys' fees and expenses, asserted directly or indirectly against Agent resulting from or related to:

(a)    Merchant's material breach of or failure to comply with any of its agreements, covenants, representations or warranties contained in any Agency Document;

(b)    any failure of Merchant to pay to its employees any wages, salaries, or benefits due to such employees during the Sale Term or other claims asserted against Agent by Merchant's employees resulting from Merchant's (and not Agent's) treatment of its employees;

(c)    subject to Agent's compliance with its obligations under Section 8.3 hereof, any failure by Merchant to pay any Sales Taxes to the proper taxing authorities or to properly file with any taxing authorities any reports or documents required by applicable law to be filed in respect thereof;

(d)    any consumer warranty or products liability claims relating to Merchandise;

(e)    any liability or other claims asserted by customers, any of Merchant's employees, or any other person against any Agent Indemnified Party (including, without limitation, claims by employees arising under collective bargaining agreements, worker's compensation or under the WARN Act);

(f)    any harassment or any other unlawful, tortious, or otherwise actionable treatment of any customers, employees or agents of Agent by Merchant or any of its representatives; and

(g)    the gross negligence or willful misconduct of Merchant or any of its officers, directors, employees, agents (other than Agent), or representatives.

39

The indemnification obligations set forth in this Section 13.1 shall be in addition to (and shall not limit) any other indemnification obligations of Merchant set forth in this Agreement, including without limitation those set forth in Section 8.3(a).

      13.2   <u>Agent Indemnification</u>.  Agent shall jointly and severally indemnify and hold harmless Merchant and the Merchant Indemnified Parties from and against all claims, demands, penalties, losses, liability, or damage, including, without limitation, reasonable attorneys' fees and expenses, asserted directly or indirectly against Merchant resulting from or related to (including acts or omissions of persons or entities affiliated with or acting on behalf of Agent):

      (a)   Agent's material breach of or failure to comply with any Safety Laws (as defined in the Approval Order) or any of its agreements, covenants, representations, or warranties contained in any Agency Document;

      (b)   any harassment, discrimination, or violation of any laws or regulations or any other unlawful, tortious, or otherwise actionable treatment of any employees or agents of Merchant by Agent or any of its employees, agents, independent contractors, Supervisors, or other officers, directors, or representatives of Agent;

      (c)   any claims by any party engaged by Agent as an employee or independent contractor arising out of such engagement;

      (d)   any Agent Claims;

      (e)   any Additional Taxes and Penalties arising out of Agent's failure to collect and/or remit to Merchant correct amounts of Sales Taxes (including any such failure resulting from Agent's use of any system other than Merchant's point of sale system to compute Sales Taxes relating to the Sale);

      (h)   the gross negligence, willful misconduct, or fraud of Agent or any of its officers, directors, employees, agents, or representatives; and

      (i)   any consumer warranty or products liability claims arising out of or related to the sale of Additional Agent Merchandise.

The indemnification obligations set forth in this Section 13.2 shall be in addition to (and shall not limit) any other indemnification obligations of Agent set forth in this Agreement, including without limitation those set forth in Section 8.3(a).

<u>Section 14</u>.   <u>Defaults</u>.

      The following shall constitute "<u>Events of Default</u>" hereunder:

      (a)   Merchant's or Agent's failure to perform any of their respective material obligations hereunder, which failure shall continue uncured seven (7) days after receipt of written notice thereof to the defaulting party; or

*Approved by Judge Donald H. Steckroth February  27, 2014*

(b)    Any representation or warranty made by Merchant or Agent proves untrue in any material respect as of the date made or at any time and throughout the Sale Term; or

(c)    Subject to Section 8.8 hereof, the Sale is terminated or materially interrupted or impaired at any Closing Store for any reason other than (i) an Event of Default by Agent or (ii) any other material breach or action by Agent not authorized hereunder.

In the event of an Event of Default, the non-defaulting party (in the case of (a) or (b) above, or the Agent in the case of (c) above) may, in its discretion, elect to terminate this Agreement upon seven (7) business days' written notice to the other party and pursue any and all rights and remedies and damages resulting from such default hereunder in the event such cure is not effected by the defaulting party.

Section 15.    Fixtures.

(a)    With respect to any furniture, fixtures and equipment (including, but not limited to, machinery, rolling stock, office equipment and personal property, and conveyor systems and racking owned by Merchant and located at the Closing Stores, Distribution Center and Merchant's corporate offices (collectively, the "Owned FF&E"), Agent shall, at Merchant's election (the "FF&E Sale Option"), either (i) sell the Owned FF&E strictly on a commission basis (the "FF&E Commission Option"), or (ii) sell the Owned FF&E on a guaranteed fee basis (the "FF&E Guaranty Option"). Merchant shall exercise the aforementioned FF&E Sale Option by written notice to Agent by the date that is not later than ten (10) calendar days after the Sale Commencement Date (such date being defined as the "FF&E Sale Election Deadline"). In the event Merchant elects the FF&E Commission Option, Agent shall be entitled to receive a commission equal to twenty percent (20%) of the [gross] proceeds from the sale of such Owned FF&E ("Agent's FF&E Commission"); provided, however, in such case Merchant shall be responsible for payment of expenses incurred in connection with the disposition of the Owned FF&E ("FF&E Disposition Expenses") in accordance with a budget to be mutually agreed upon between Merchant and Agent, in consultation with Lender ("FF&E Disposition Budget"), and all proceeds realized from the disposition of the Owned FF&E, after deduction of applicable sales taxes, Agent's FF&E Commission, and the FF&E Disposition Expenses (collectively, the "Net FF&E Proceeds"), shall be paid to Lender, as Merchant's designee. In the event Merchant elects the FF&E Guaranty Option, Agent shall pay Merchant a lump sum payment in an amount to be agreed upon between Agent and Merchant, in consultation with Lender (hereinafter, the "FF&E Guaranty Amount"), in which case all costs and expenses associated with the disposition of Owned FF&E shall be borne by Agent, and all proceeds realized from the sale or other disposition of the Owned FF&E (after payment of the applicable FF&E Guaranty Amount and net of any applicable sales taxes) shall be retained by Agent for its sole account. In the event that Merchant elects to have someone other than the Agent dispose of the Owned FF&E at one or more of the Distribution Center, corporate offices, and Closing Stores, it is understood that such third party's efforts shall not interfere in any way with Agent's conduct of the Sale.

(b)    Anything in this Agreement to the contrary notwithstanding, Agent shall be authorized to abandon any and all unsold Owned FF&E (and all other furniture, fixtures, and

*Approved by Judge Donald H. Steckroth February  27, 2014*

equipment at the Closing Stores, Distribution Center and corporate headquarters) in place without any cost or liability to Agent. Agent shall have no responsibility whatsoever with respect to furniture, fixtures, and equipment located at the Closing Stores, Distribution Center and/or corporate offices which are not owned by Merchant.

(c)    Merchant hereby represents to Agent that: (i) subject to the Approval Order, all Owned FF&E may be sold by Agent on Merchant's behalf, free and clear of all claims, liens and encumbrances of any kind; and (ii) all such Owned FF&E is devoid of Hazardous Materials.

(d)    Anything in this Agreement to the contrary notwithstanding, Agent will not have any obligation whatsoever to purchase, sell, make, store, handle, treat, dispose, generate, transport or remove any Hazardous Materials that may be located at the Closing Stores, Distribution Center and/or Merchant's corporate offices or otherwise. Agent shall have no liability to any party for any environmental action brought: (i) that is related to the storage, handling, treatment, disposition, generation, or transportation of Hazardous Materials, or (ii) in connection with any remedial actions associated therewith or the Closing Stores, Distribution Center and/or Merchant's corporate offices. Merchant (and not Agent) shall be solely responsible to remove from the Closing Stores, Distribution Center and Merchant's corporate offices all Hazardous Materials. For purposes of this Agreement, the term "Hazardous Materials" means, collectively, any chemical, solid, liquid, gas, or other substance having the characteristics identified in, listed under, or designated pursuant  to (i) the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C.A. 9601(14), as a "hazardous substance", (ii) the Resource Conservation and Recovery Act, 42 U.S.C.A. 6903(5) and 6921, as a "hazardous waste", or (iii) any other laws, statutes or regulations of a government or political subdivision or agency thereof, as presenting an imminent and substantial danger to the public  health  or welfare  or  to the environment or as otherwise requiring special handling, collection,  storage, treatment, disposal, or transportation.

Section 16.    Miscellaneous.

16.1    Notices.    All notices and communications provided for pursuant to this Agreement shall be in writing, and sent by hand, by e-mail, and/or a recognized overnight delivery service, as follows:

    If to Agent:

    Gordon Brothers Retail Partners, LLC
    Prudential Tower
    800 Boylston Street
    Boston, MA 02119
    Attn:   Michael Chartock
    Tel:    617.210.7116
    Email: mchartock@gordonbrothers.com

*Approved by Judge Donald H. Steckroth February  27, 2014*

With a copy to (which shall not constitute notice):

Reimer & Braunstein LLP
Times Square Tower
Seven Times Square, Suite 2506
New York, NY 10036
Attn:   Steven E. Fox, Esq.
Tel:     212.789.3150
Email:  sfox@riemerlaw.com

If to Merchant:

Dots, LLC
30300 Emerald Valley Parkway
Glenwillow, OH
Attn :  Elaine Kapusta, CFO
Tel:     877.266.9322
Email: ekapusta@dots.com

With a copy to (which shall not constitute notice):

Lowenstein Sandler LLP
65 Livingston Avenue
Roseland, New Jersey 07068
Attn:   Kenneth A. Rosen
Tel:     973.597.2548
Email: krosen@lowenstein.com

If to Lender:

Salus Capital Partners, LLC
197 First Avenue, suite 250
Needham Heights, MA 02494
Attn:   Kyle C. Shonak
Tel:     617.420.2663
Email:  kshonak@saluscapital.com

With a copy to (which shall not constitute notice):

Morgan, Lewis & Bockius LLP
225 Franklin Street
Boston, MA 02110
Attn:   Sandra Vrejan and Wendy Walker
Tel:     617.341.7750
Email: svrejan@morganlewis.com and wwalker@morganlewis.com

43

*Approved by Judge Donald H. Steckroth February  27, 2014*

16.2    Governing Law; Consent to Jurisdiction.  This Agreement shall be governed and construed in accordance with the laws of the State of New Jersey, without regard to conflicts of laws principles thereof.  The parties hereto agree that the Bankruptcy Court (and the District Court and Circuit Court of Appeal with appellate jurisdiction over the Bankruptcy Court) shall retain exclusive jurisdiction to hear and finally determine any disputes arising from or under this Agreement, and by execution of this Agreement each party hereby irrevocably accepts and submits to the jurisdiction of such court with respect to any such action or proceeding and to service of process by certified mail, return receipt requested to the address listed above for each party.

16.3    Entire Agreement.   This Agreement, the Exhibits hereto, and the Agency Documents (subject, in each instance, to the Approval Order) contain the entire agreement between the Parties with respect to the transactions contemplated hereby and supersede and cancel all prior agreements, including but not limited to all proposals, letters of intent, or representations, written or oral, with respect thereto.

16.4    Amendments.  This Agreement, the Exhibits hereto, and the Agency Documents may not be modified except in a written instrument executed by each of the parties hereto.

16.5    No Waiver.  No party's consent to or waiver of any breach or default by the other in the performance of its obligations hereunder shall be deemed or construed to be a consent or waiver to or of any other breach or default in the performance by such other party of the same or any other obligation of such party.  Failure on the part of any party to complain of any act or failure to act by the other party or to declare the other party in default, irrespective of how long such failure continues, shall not constitute a waiver by such party of its rights hereunder.

16.6    Successors and Assigns.  This Agreement shall inure to the benefit of and be binding upon the successors and assigns of Agent and Merchant, including but not limited to any chapter 11 or chapter 7 trustee.  Agent shall not be permitted to assign its obligations under this Agreement.

16.7    Execution in Counterparts.  This Agreement may be executed in two (2) or more counterparts, each of which shall be deemed an original and all of which together shall constitute but one agreement.  This Agreement may be executed by facsimile, and such facsimile signature shall be treated as an original signature hereunder.

16.8    Section Headings.  The headings of sections of this Agreement are inserted for convenience only and shall not be considered for the purpose of determining the meaning or legal effect of any provisions hereof.

16.9    Survival.  All representations, warranties, covenants and agreements made herein shall be continuing, shall be considered to have been relied upon by the Parties and shall survive the execution, delivery, and performance of this Agreement.

*Approved by Judge Donald H. Steckroth February  27, 2014*

16.10.  Termination.  This Agreement shall remain in full force and effect until the first to occur of (i) receipt by Merchant of written notice from Agent that any of the conditions specified in Section 10 hereof have not been satisfied, or (ii) the acceptance and consummation by Merchant of a transaction constituting a Competing Bid, or (iii) the expiration of the Sale Term and completion and certification by Merchant and Agent of the Final Reconciliation pursuant to Section 8.7(b) above. Notwithstanding the foregoing, (a) the representations, warranties, and indemnities of Merchant and Agent contained herein and the provisions of Section 11 above, and (b) any claim arising from a breach of this Agreement prior to its termination, shall survive the termination of this Agreement pursuant to this Section 16.10.

16.11  Agent's Security Interest.

(a)    In consideration of and effective upon payment by Agent of the Initial Guaranty Payment on the Payment Date and delivery of the Letter of Credit to the Lender, as Merchant's designee, Merchant hereby grants to Agent first priority, senior security interests in and liens (subject to the subordination provisions set forth herein below) upon: (i) the Merchandise; (ii) the Additional Agent Merchandise; (iii) all Proceeds (including, without limitation, credit card Proceeds); (iv) the Agent's commission regarding the sale or other disposition of Merchant Consignment Goods under Section 5.4 hereof; (v) in the event Merchant elects the FF&E Guaranty Option, the proceeds realized from the sale or other disposition of Owned FF&E after payment of the FF&E Guaranty Amount; or alternatively, the FF&E Commission; (vi) Agent's percentage share of such Sharing Amount, and (vii) all "proceeds" (within the meaning of Section 9-102(a)(64) of the UCC) of each of the foregoing (all of which are collectively referred to herein as the "Agent Collateral"), to secure the full payment and performance of all obligations of Merchant to Agent hereunder.  Upon entry of the Approval Order, payment of the Initial Guaranty Payment and the Additional Agent Merchandise Fee on the Payment Date, and delivery of the Letter of Credit to the Lender, the security interest granted to the Agent hereunder shall be deemed properly perfected without the necessity of filing UCC-1 financing statements or any other documentation.

(b)    Without any further act by or on behalf of the Agent or any other party (including (without limitation) the Lender and Merchant), the Agent's security interests and liens in the Agent Collateral created hereunder are (i) validly created, (ii) effective upon entry of the Approval Order, perfected, and (iii) senior to all other liens and security interests, provided, however, that (x) until the Merchant receives payment in full of the Guaranteed Amount, the Additional Agent Merchandise Fee, the Sharing Amount, Expenses, the proceeds realized upon a sale of Owned FF&E (less the Agent FF&E Commission) or the FF&E Guaranty Amount, as applicable, and such other amounts due to Merchant hereunder, the security interest granted to Agent hereunder shall be junior and subordinate in all respects to the security interests of Lender in the Agent Collateral but solely to the extent and amount of the unpaid portion of the Guaranteed Amount, the Additional Agent Merchandise Fee, the Sharing Amount (if any), Expenses, the proceeds realized upon a sale of Owned FF&E (less the Agent FF&E Commission) or the FF&E Guaranty Amount, as applicable, and such other amounts due to Merchant hereunder, and (y) upon payment in full of the Guaranteed Amount, the Additional Agent Merchandise Fee, the Sharing Amount (if any), Expenses, the proceeds realized upon a sale of Owned FF&E (less the Agent FF&E Commission) or the FF&E Guaranty Amount, as

*Approved by Judge Donald H. Steckroth February  27, 2014*

applicable, and such other amounts due to Merchant hereunder, any security interest or lien of the Lender in the Agent Collateral shall be junior and subordinate in all respects to the security interest and liens of Agent in the Agent Collateral. Merchant shall cooperate with Agent with respect to all filings (including, without limitation, UCC-1 financing statements) and other actions to the extent reasonably requested by Agent in connection with the security interests and liens granted under this Agreement.

(c)    Merchant will not sell, grant, assign or transfer any security interest in, or permit to exist any encumbrance on, any of the Agent Collateral other than in favor of the Agent and Lender.

(d)    In the event of a Default by the Merchant hereunder, in any jurisdiction where the enforcement of its rights hereunder is sought, the Agent shall have, in addition to all other rights and remedies, the rights and remedies of a secured party under the UCC.

16.12    Break-Up Fee; Expense Reimbursement.

(a)    This Agreement is subject to the approval by the Bankruptcy Court and the consideration by the Merchant of competing bids that the Merchant, in its sole discretion, deems to be higher or better than the transactions contemplated by this Agreement (each, a "Competing Bid"). At any time prior to the entry of the Approval Order, the Merchant may, and the Merchant may cause their respective advisors, representatives and affiliates to, (a) initiate contact with, solicit or encourage submission of any inquiries, proposals, offers or bids by, and negotiate or have discussions with, any person or entity (in addition to the Agent and its affiliates and representatives) in connection with any sale, lease or other disposition of all or any portion of the Merchandise and Owned FF&E; (b) respond to any request for information or due diligence inquiry, or make management available for such purposes, to any such person or entity; and (c) furnish any information with respect to, or assist or participate in, or facilitate in any other manner, any effort or attempt by any person or entity to do or seek to do any of the foregoing. Merchant agrees that upon the execution of this Agreement, Merchant shall provide Agent with the exclusive right to contact and negotiate with Merchant's vendors with respect to In-Transit Merchandise and other Merchant on-order goods. Merchant and Agent further agree that in order for a competing bid to constitute a "Competing Bid", such bid must (i) be in an amount greater than the sum of: (x) the Guaranteed Amount and the Bid Protections, plus (y) an additional overbid amount equal to not less than 0.50% of the aggregate Retail Price of the Merchandise, and (ii) agree to assume any and all commitments made by Agent in respect of In-Transit Merchandise, any other Merchant on-order goods, and any Additional Agent Merchandise.

(b)    In consideration for Agent having expended considerable time and expense in connection with this Agreement and the negotiation thereof and the identification and quantification of the assets of Merchant and to compensate Agent as a stalking-horse bidder, in the event that this Agreement is terminated under either Section 16.10(i) or (ii) hereof, Merchant shall pay and Agent shall receive, (i) a breakup fee equal to $600,000 (the "Break-Up Fee"); plus (ii) the fees and expenses of legal, accounting and financial advisors incurred by Agent in connection with the negotiation, documentation and implementation of this Agreement and the transactions contemplated hereby in an amount not to exceed $150,000 in the aggregate (the

*Approved by Judge Donald H. Steckroth February 27, 2014*

"Expense Reimbursement"); *plus* (iii) an amount equal to the reasonable and documented third party costs, fees, and expenses incurred by Agent in acquiring signage and other advertising and promotional material in connection with the Sale (excluding any cost of capital incurred in connection therewith) in an amount not to exceed $450,000 (the "Signage Costs", and together with the Break-Up Fee and Expense Reimbursement, the "Bid Protections"); provided that upon Merchant's reimbursement to Agent for any Signage Costs, Agent shall thereupon be obligated to make any such signage and other promotional materials available to any successful competing bidder; provided further that the costs of shipping and/or delivery associated with the aforementioned signage shall be borne by the successful competing bidder). Subject to approval of the Bankruptcy Court, the Bid Protections shall have superpriority administrative expense claim status in the Bankruptcy Case pursuant to Section 507 of the Bankruptcy Code, senior to all other administrative expense priority claims, and shall be paid in cash within five (5) business days after the termination hereof.  Agent shall have no right to, nor shall Merchant have any liability with respect to, the Bid Protections for any other reason. Merchant and Agent also agree that Agent shall not be entitled to credit bid the amount of the Bid Protections as part of any competitive bid auction that may be conducted by Merchant.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

*Approved by Judge Donald H. Steckroth February  27, 2014*

IN WITNESS WHEREOF, Agent and Merchant hereby execute this Agency Agreement as of the day and year first written above.

**AGENT:**

**GORDON BROTHERS RETAIL PARTNERS, LLC**

By: _____

　　　Name:_____

　　　Title: _____

**MERCHANT:**

**DOTS, LLC**

By: _____

　　　Name: _____

　　　Title: _____

**THE PROVISIONS OF THIS AGREEMENT**
**ARE HEREBY CONSENTED AND AGREED TO,**
**INCLUDING SECTIONS 3.3(c)(iii)-(iv), 3.3(d), 3.3(e),**
**3.4, 8.9, 10.1(d), 16.11 and 16.12:**

**SALUS CAPITAL PARTNERS, LLC**,
As Lender

By: _____

　　　Name: Kyle Shonak

　　　Title:   Executive Vice President-Special Opportunities

1661712.3

48

*Approved by Judge Donald H. Steckroth February  27, 2014*

# **Exhibit B**
## **Sale Guidelines**

**EXHIBIT 8.1**

**SALE GUIDELINES**

1.      The Sale shall be conducted so that the Closing Stores in which sales are to occur will remain open no longer than during the normal hours of operation provided for in the respective leases for the Closing Stores.

2.      The Sale shall be conducted in accordance with applicable state and local "Blue Laws", where applicable, so that no Sale shall be conducted on Sunday unless the Merchant had been operating such Store on a Sunday.

3.      On "shopping center" property, the Agent shall not distribute handbills, leaflets or other written materials to customers outside of any Closing Store's premises, unless permitted by the lease or, if distribution is customary in the "shopping center" in which such Closing Store is located; provided that Agent may solicit customers in the Closing Stores themselves. On "shopping center" property, the Agent shall not use any flashing lights or amplified sound to advertise the Sale or solicit customers, except as permitted under the applicable lease or agreed to by the landlord.

4.    At the conclusion of the Sale, the Agent shall vacate the Closing Stores and the Distribution Center in broom clean condition, and shall leave the locations in the same condition as on Sale Commencement Date, ordinary wear and tear excepted, in accordance with Section 6 of the Agency Agreement, provided, however, the Merchant and the Agent hereby do not undertake any greater obligation than as set forth in an applicable lease with respect to a Closing Store or the Distribution Center.

5.      Agent shall be permitted to utilize display, hanging signs, and interior banners in connection with the Sale; provided, however, that such display, hanging signs, and interior banners shall be professionally produced and hung in a professional manner. The Merchant and the Agent may advertise the Sale as a "going out of business", "store closing", "sale on everything", or similar themed sale. The Merchant and the Agent shall not use neon or day-glo on its display, hanging signs, or interior banners. Furthermore, with respect to enclosed mall locations, no exterior signs or signs in common areas of a mall shall be used unless otherwise expressly permitted in these Sale Guidelines. Nothing contained herein shall be construed to create or impose upon the Agent any additional restrictions not contained in the applicable lease agreement. In addition, the Merchant and the Agent shall be permitted to utilize exterior banners at (i) non-enclosed mall Closing Stores and (ii) enclosed mall Closing Stores to the extent the entrance to the applicable Store does not require entry into the enclosed mall common area; provided, however, that such banners shall be located or hung so as to make clear that the Sale is being conducted only at the affected Closing Store, shall not be wider than the storefront of the Closing Store, and shall not be larger than 4 feet x 30 feet. In addition, the

Merchant and the Agent shall be permitted to utilize sign walkers in a safe and professional manner and in accordance with the terms of the Approval Order.

6.      Conspicuous signs shall be posted in the cash register areas of each of the affected Closing Stores to effect that "all sales are final."

7.      Except with respect to the hanging of exterior banners, the Agent shall not make any alterations to the storefront or exterior walls of any Closing Stores.

8.      The Agent shall not make any alterations to interior or exterior Store lighting. No property of the landlord of a Closing Store shall be removed or sold during the Sale. The hanging of exterior banners or in-store signage and banners shall not constitute an alteration to a Closing Store.

9.      The Agent shall keep Closing Stores' premises and surrounding areas clear and orderly consistent with present practices.

10.     Subject to the provisions of the Agency Agreement and the Approval Order, the Agent shall have the right to sell certain furniture, fixtures, and equipment located at the Closing Stores and Distribution Center (the "Merchant FF&E"). The Agent may advertise the sale of the Merchant FF&E in a manner consistent with these Sale Guidelines. The purchasers of any Merchant FF&E sold during the Sale shall be permitted to remove the Merchant FF&E either through the back shipping areas at any time, or through other areas after store business hours. For the avoidance of doubt, as of the Sale Termination Date the Agent may abandon, in place and without further responsibility or obligation, any unsold Merchant FF&E located at a Closing Store, the Distribution Center and/or corporate offices. Any abandoned Merchant FF&E left in a Closing Store, the Distribution Center and/or the corporate offices after the underlying lease is rejected shall be deemed abandoned to the landlord, with the landlord having a right to dispose of the same as the landlord chooses without any liability whatsoever on the part of the landlord to any party and without waiver of any damage claims against the Merchant.

11.     The Agent shall be entitled to include Additional Agent Merchandise in the Sale in accordance with the terms of the Approval Order and the Agency Agreement.

12.     At the conclusion of the Sale at each Closing Store, pending assumption or rejection of applicable leases, the landlords of the Closing Stores shall have reasonable access to the Closing Stores' premises as set forth in the applicable leases. The Merchant, the Agent and their agents and representatives shall continue to have exclusive and unfettered access to the Closing Stores.

13.     Post-petition rents shall be paid by the Merchant as required by the Bankruptcy Code until the rejection or assumption and assignment of each lease. Agent shall have no responsibility therefor.

3

*Approved by Judge Donald H. Steckroth February  27, 2014*

14.     The rights of landlords against Merchant for any damages to a Closing Store or the Distribution Center shall be reserved in accordance with the provisions of the applicable lease.

15.     If and to the extent that the landlord of any Closing Store affected hereby contends that the Agent or Merchant is in breach of or default under these Sale Guidelines, such landlord shall email or deliver written notice by overnight delivery on the Merchant's counsel and the Agent's counsel as follows:

If to the Merchant:

> Lowenstein Sandler LLP
> 65 Livingston Avenue
> Roseland, New Jersey 07068
> Attn:   Kenneth A. Rosen
>             John K. Sherwood
>             Andrew Behlmann
> Tel:     973.597.2548
> Email:  krosen@lowenstein.com
>             jsherwood@lowenstein.com
>             abehlmann@lowenstein.com

If to the Agent:

> Riemer & Braunstein LLP
> Times Square Tower
> Seven Times Square, Suite 2506
> New York, NY 10036
> Attn:   Steven E. Fox, Esq.
> Tel:     212.789.3150
> Email:  sfox@riemerlaw.com

16.     To the extent there are any inconsistencies between this Exhibit and the Agency Agreement, the terms of the Agency Agreement shall control. To the extent there are any inconsistencies between this Exhibit and the Approval Order, the terms of the Approval Order shall control.

1660883.1

4

*Approved by Judge Donald H. Steckroth February  27, 2014*