# <u>EXHIBIT A</u>
## STALKING HORSE AGREEMENT

## LEASE PURCHASE AGREEMENT

THIS LEASE PURCHASE AGREEMENT (the "Agreement"), is entered into as of March 7, 2014 by and between Dots, LLC, Debtor-in-Possession ("Assignor"), and Rainbow Southeast Leasing, Inc., or its designee ("Assignee" and together with Assignor, the "Parties").

### RECITALS:

A.    The landlords listed on Exhibit 1 hereto (the "Landlords") and Assignor, as lessee or sublessee, as applicable, are parties to certain lease agreements described in Exhibit 1 (the "Leases") relating to the premises described therein (the "Demised Premises").

B.    Assignor desires to assign all of its right, title, interest and obligation in, to, and under the Leases to Assignee, and Assignee desires to assume, observe and perform all of the Assignor's right, title, interest and obligations in, to, and under the Leases, from and after the Delivery Date (as defined below), in accordance with the terms, covenants, and conditions described in this Agreement.

C.    Assigner desires to sell to Assignee all of its owned furniture, fixtures, floor fixtures, racks, shelving, cash wrap desks, cabinets, feature walls, leasehold improvements and equipment (excluding any service agreements, contracts and point-of-sale registers, terminals, or other data processing equipment) at the Demised Premises (the "Owned FF&E") on the date such premises and possession thereof is turned over to Assignee (the "Delivery Date", defined in Paragraph 11).

D.    Assignor (the "Debtor") is currently a debtor in a case (the "Chapter 11 Case") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") currently pending before the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"), styled and numbered *In re Dots, LLC, et al.*, Case No. 14-11016 (DHS).   The Chapter 11 Case was filed by the Debtor on January 20, 2014 (the "Petition Date").

E.    Subject to the satisfaction of the "Conditions" (defined in Paragraph 10), effective as of the Delivery Date, Assignor desires to assign all of its right, title, interest and obligation in to, and under the Leases to Assignee, and Assignee desires to assume, observe, and perform all of the Assignor's right, title, interest, and obligations in, to, and under the Leases from and after the Delivery Date, in accordance with the terms, covenants, and conditions described below.

NOW, THEREFORE, in consideration of the mutual covenants of the Parties herein set forth, Assignee's agreement to pay the Consideration (defined in Paragraph 8) and Cure Costs (defined in Paragraph 13), and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.    <u>Incorporation of Recitals</u>.  The Recitals set forth above are hereby incorporated by reference as if fully set forth herein.

2.    <u>Leases</u>.  True full, complete and correct copies of the Leases, as they may have been amended and as contained in the data room, have been provided by Assignor to Assignee.

3.    <u>Assignment</u>.  Subject to the satisfaction of the Conditions, effective as of the Delivery Date, (a) Assignor hereby assigns to Assignee all of Assignor's right, title, and interest in the Leases, (b) Assignee hereby accepts such assignment, and (c) Assignor shall deliver possession of the Demised Premises to Assignee in accordance with the terms of Paragraph 11.  Any rent and other charges (including, without limitation, annual or base rent, additional rent, Assignor's proportionate share of ad valorem real estate taxes and assessments, utility charges, and Assignor's proportionate share of the costs of maintaining the common areas, in each case which accrue under the Leases for the period from February 1, 2014 to the Delivery Date (the "<u>Proration Period</u>"), shall be prorated between Assignor and Assignee as of the Delivery Date (with all such rent and charges attributable to the Proration Period being payable by Assignor), and Assignor's payment of such rent and other charges under the Lease for the month in which the Delivery Date occurs shall be adjusted accordingly.  If actual amounts of any variable or additional rent or charges are not determinable as of the Delivery Date, then the Parties shall prorate such charges based on the most recent prior charges available.  Assignor shall be responsible for payment to Landlord of all Lease obligations relating to the Proration Period, which Assignor shall pay to Landlord within five business days of entry of an order approving this Agreement. Notwithstanding anything to the contrary in this Agreement, Assignee shall be responsible for all year-end reconciliations of any charges that may be payable to the Landlords, whether such reconciliations apply to periods before, on, or after the Delivery Date.

4.    <u>Assumption</u>.  Subject to the satisfaction of the Conditions, effective as of the Delivery Date, Assignee hereby assumes all of the terms, covenants, and conditions of the Leases to be satisfied or performed by the Assignor under the Leases until the expiration or earlier termination of the Leases, in each case that first arise or accrue and first become due and payable under the Leases from and after the Delivery Date, all with full force and effect as if the Assignee had signed the Leases originally as the tenant or subtenant (as applicable) named therein and as a party thereto.  Assignee covenants and agrees that it will recognize Landlords as the lessors or sublessors (as applicable) under the Leases in the same manner and to the same extent as if Assignee were the original tenant or subtenant (as applicable) thereunder.  Assignee will use its best efforts to  provide adequate assurance of future performance of the Leases as required by Section 365(b)(1)(C) of the Bankruptcy Code.

5.    <u>Assignee's Option to Designate Leases</u>.  Assignee may remove Leases from <u>Exhibit 1</u> as set forth herein, <u>provided</u> that there shall be no reduction in the Consideration

-2-

as a result of any such deletion, and provided further that under no circumstances will Assignee reduce the number of Leases on Exhibit 1 to fewer than one hundred Leases. Assignee shall, no later than 9:00 a.m. (Eastern) on March 24, 2014, deliver to Assignor a schedule (the "First Assumption Schedule") reflecting the Leases from Exhibit 1 that Assignee intends to assume and for which Assignor has designated a Delivery Date of April 1, 2014  Any such Lease that is not listed on the First Assumption Schedule, shall be deemed removed from Exhibit 1. Thereafter, until April 15, 2014, Assignee shall retain the option to assume the Leases that remain on Exhibit 1 that have not been set forth on the First Assumption Schedule.  On or before April 15, 2014, Assignee shall deliver to Assignor a schedule reflecting the Leases that remain on Exhibit 1 that Assignee has decided to assume (the "Final Assumption Schedule").  The Parties shall cause the First Assumption Schedule and the Final Assumption Schedule to be served on the affected Landlords and filed with the Bankruptcy Court. The Leases purchased under this Agreement shall consist of those Leases set forth on either the First Assumption Schedule or the Final Assumption Schedule.  In the event Assignor is unable to obtain Bankruptcy Court approval for the assignment of at least eighty of the Leases identified on the First Assumption Schedule and the Final Assumption Schedule (the "Assumption Threshold"), Assignee shall receive a purchase price credit of (a) twelve thousand five hundred dollars and no cents ($12,500.00) multiplied by (b) the difference between the Assumption Threshold and the number of Leases that Assignor obtains Bankruptcy Court approval to assign.  Assignee shall not be entitled to a purchase price credit, however, if Bankruptcy Court approval is withheld due to Assignee's failure to provide adequate assurance of future performance under the Leases as required by Section 365(b)(1)(C) of the Bankruptcy Code.

6.  Assignor Released and Transfer Taxes.  Notwithstanding anything contained in the Leases or any other agreement to the contrary, pursuant to Section 365 of the Bankruptcy Code, including without limitation subsection (k) thereof, except as otherwise provided for herein, this Agreement shall operate to release Assignor as of the Delivery Date from any and all obligations arising under or in connection with the Leases, with respect to the period from and after the Delivery Date.  The Assignee shall be solely responsible for payment of any and all sales, transfer, and recording taxes, stamp taxes, or other taxes relating to the assignment of the Leases.

7.  Transfer of Owned FF&E.  Assignor shall transfer the Owned FF&E at the Demised Premises to Assignee on the Delivery Date free and clear of any and all liens, claims, security interests, encumbrances, and other interests, all of which shall attach to the Consideration to the extent and in the same priority then existing. To the extent that any Demised Premises does not contain FF&E, Assignee shall receive a purchase price credit of $750.00 per store location.

8.  Consideration.  In addition to the obligations assumed under this Agreement, Assignee shall pay the sum of two million one hundred thousand dollars and no cents ($2,100,000.00) in cash to Assignor as consideration for the transfer of the

Leases and the Owned FF&E (the "Consideration"). The Consideration shall be paid by the Assignee in escrow to the Assignee's attorney upon Bankruptcy Court approval of this Agreement and transferred by the escrow agent to Assignor in accordance with the terms of an Escrow Agreement to be agreed to by the Parties.

9.    Bid Procedures/Expense Reimbursement.  This Agreement is subject to approval by the Bankruptcy Court on notice to creditors and parties-in-interest.  The Parties understand and agree that the Debtor shall solicit higher and better offers for the Leases and the Owned FF&E as a package and on the same terms and conditions hereunder.  This Agreement shall serve as a "stalking horse bid" for the Leases and the Owned F&E. As more fully set forth in the "Bid Procedures Order" attached hereto as Exhibit 2, the Debtor shall seek approval by the Bankruptcy Court of Assignee's fees and expenses in an amount not to exceed $100,000.00 which shall be payable by the Debtor to Assignee upon the closing of an alternative transaction, to the extent Assignee is not the highest and best bidder for the Leases and the Owned FF&E.

10.    Conditions.  This Agreement is conditioned upon, and shall only take effect upon, the satisfaction of the following conditions precedent (each a "Condition" and, collectively, the "Conditions"):

(a)    Payment by Assignee of the Consideration and Assignee Cure Costs (defined in paragraph 13  below) to the Assignor;

(b)    Full execution of this Agreement by Assignor and Assignee;

(c)    Entry of an Order of the Bankruptcy Court, in a form reasonably acceptable to the Parties, authorizing the Debtor to assume and assign the Leases to the Assignee and approving this Agreement (the "Approval Order") on or before March 31, 2014;

(d)    Entry by the Bankruptcy Court of the Bid Procedures Order on or before March 14, 2014;

(e)    Executed Assumption and Assignment Agreements for each Lease in a form reasonably acceptable to the Parties and possession and delivery of the Demised Premises; and

(f)    Bill of Sale for the FF&E.

11.    Possession; Delivery Date.  Subject to the satisfaction of the Conditions, Assignor shall deliver possession of the Demised Premises in broom clean condition, free of "GOB" signage,  (together with original lease files, utility and bank information, all master keys, safe keys and lock combinations, firm alarm codes, security and security alarm codes, all permits, licenses, warranties, guarantees that have not yet expired, plans and specifications, all to the extent in Tenant's possession), to

Assignee on the Delivery Date on an "as is, where is" basis and without any representation or warranty from Assignor whatsoever, except that, as of the date hereof, (a) the Leases are in full force and effect and all option and notice periods have been duly completed by Assignor in a timely manner, (b) all base rent due under the Leases through and including December 31, 2013 has been paid, and (c) Assignor has instructed Gordon Brothers Retail Partners LLC, Assignor's liquidation agent, not to dispose of the Owned FF&E in any of the Demised Premises without further notice from Assignor.  With respect to any Demised Premises, the phrase "<u>Delivery Date</u>" means the seventh calendar day immediately following the date on which Assignor provides Assignee with written notice of its intent to deliver the Demised Premises to Assignee.  Such notice (the "<u>Delivery Date Notice</u>") shall identify the applicable Demised Premises and Leases and the Delivery Date thereof.  Because it is contemplated that certain of the Demised Premises will be delivered on April 1, 2014, the Parties agree that the Demised Premises subject to the April 1, 2014 Delivery Date (the "<u>April 1 Stores</u>") (i) will be identified by Assignor as soon as possible but in no event later than March 14, 2014 and (ii) will not exceed forty (40) in number.  If the Assignor delivers more than forty (40) April 1 Stores, Assignor shall pay fifty percent (50%) of the average monthly rent for the April 1 Stores multiplied by the number of April 1 Stores in excess of forty (40).  Any Owned FF&E remaining in any Demised Premises upon the applicable Delivery Date shall be transferred to Assignee.  To the extent that any Demised Premises is not delivered in broom clean condition, Assignee shall receive a purchase price credit equal to the greater of the reasonable, documented cleaning costs or $500.00 per store location.

12.   <u>Condemnation and Casualty</u>.

   (a)   <u>Condemnation</u>.  If after the full execution and delivery of this Agreement and prior to the Delivery Date, any entity having the power of condemnation initiates proceedings to acquire by eminent domain or condemnation any material portion of or interest in the Demised Premises (a "<u>Taking</u>"), Assignor shall promptly notify Assignee and Assignee shall have the right to terminate this Agreement by notice to Assignor given prior to the earlier of (a) twenty (20) days from the date Assignee receives the foregoing notice from Assignor and (b) the Delivery Date.  If Assignee does not elect to so terminate this Agreement, then this Agreement shall not terminate, and provided that the Delivery Date occurs, Assignee shall be entitled to receive any award payable to Tenant as the result of the Taking, subject to the terms of the Leases.

   (b)   <u>Casualty</u>.  If after the full execution and delivery of this Agreement and prior to the Delivery Date, all or a material portion of the Demised Premises is materially damaged or destroyed by any cause ("<u>Casualty</u>"), Assignor shall promptly notify Assignee and Assignee shall have the right to terminate this Agreement by notice to Assignor given prior to the earlier of (a) twenty (20) days from the date Assignee receives the foregoing

notice from Assignor and (b) the Delivery Date.  If Assignee does not elect to terminate this Agreement, then this Agreement shall not terminate, and provided that the Delivery Date occurs, Assignor shall pay to Assignee all insurance proceeds payable to Assignor with respect to the Casualty, subject to the terms of the Leases.

13.  <u>Cure Costs</u>.  In addition to performing its obligations under this Agreement, Assignee shall pay at closing to the Assignor the pre-petition monetary defaults up to and limited to the amounts set forth for each Lease on <u>Exhibit 1</u> to the extent that they are required to be cured and not otherwise waived or compromised by a Landlord (the "<u>Assignee Cure Costs</u>") pursuant to section 365(b)(1) of the Bankruptcy Code in connection with the assumption of the Leases.  The Assignee Cure Costs do not include the costs that relate to the Proration Period, which shall be paid by Assignor.

14.  <u>Notices</u>.  All notices, requests, demands, and other communications hereunder shall be in writing and shall be given by (a) established express delivery service, such as Federal Express, which maintains delivery records, or (b) certified mail with signed return receipt, or (c) hand delivery to the Parties at the following addresses, or to such other or additional persons or at such other address as the Parties may designate by notice in the above manner:

To Assignor                    Dots, LLC
                               Lowenstein Sandler LLP
                               65 Livingston Avenue
                               Roseland, NJ  07068
                               Attn: Kenneth A. Rosen, Esq.
                               krosen@lowenstein.com


To Assignee:                   Rainbow Southeast Leasing, Inc.
                               1000 Pennsylvania Avenue
                               Brooklyn, NY 11207
                               Attn: Joseph Chehebar
                               jchehebar@rainbow-mail.com

                               Platzer, Swergold, et al.
                               1065 Avenue of the Americas
                               Suite 1800
                               New York, NY 10018
                               Attn: Sherri D. Lydell, Esq.
                                   Cliff A. Katz, Esq.
                               slydell@platzerlaw.com
                               ckatz@platzerlaw.com

15.  <u>Brokers</u>.  Each of the Parties represents and warrants that, except for A&G Realty Partners (whose fee or commission shall be paid by Assignor pursuant to separate

agreement), it dealt with no broker or brokers in connection with the negotiation, execution, and delivery of this Agreement. Each of the Parties shall, and does hereby, indemnify, defend, and save the other Parties harmless from and against any losses, damages, penalties, claims, or demands of whatsoever nature arising from a breach of its foregoing representation including, without limitation, reasonable attorneys' fees and expenses. The foregoing indemnity shall survive the Agreement and the Delivery Date.

16.   <u>Authority</u>.  Each of the Parties represents and warrants to the other the following: (a) it has the authority to enter into this Agreement and (b) the person(s) executing this Agreement on its behalf are duly authorized to do so and this Agreement is a legally binding obligation.

17.   <u>Entire Understanding</u>.  Except as set forth in the Order of the Bankruptcy Court authorizing the Debtors to enter into this Agreement, this Agreement sets forth the entire understanding of the Parties in connection with the subject matter hereof. None of the Parties has made any statement, representation, or warranty in connection herewith which has been relied upon by any other party hereto or which has been an inducement for any party to enter into this Agreement, except as expressly set forth herein.  It is expressly understood and agreed that this Agreement may not be altered, amended, modified, or otherwise changed in any respect whatsoever except by writing duly executed by authorized representatives of the Parties.  The Parties agree that all agreements are merged into this Agreement which alone sets forth the understanding of the Parties, and that they will make no claim at any time that this Agreement has been altered or modified or otherwise changed by oral communication of any kind or character.  The Parties agreed that this Agreement shall be construed as jointly drafted by the Parties.

18.   <u>Cooperation</u>.   Upon request by Assignee, Assignor shall use commercially reasonable efforts to (a) provide Assignee with information in Assignor's possession relevant to year-end reconciliations of charges due under the Leases, (b) cooperate with Assignee in the resolution of disputed cure amounts with respect to the Leases, and (c) to the extent not prohibited by applicable law, provide Assignee with payroll data and contact information for Assignor's former employees at the Demised Premises.  Assignor hereby waives the non-solicitation provision of that certain Confidentiality Agreement by and between the Parties, dated as of February 4, 2014, solely to the extent such waiver does not interfere with the conduct of store-closing liquidation sales at the Demised Premises.

19.   <u>Binding Effect</u>.  The terms and conditions of this Agreement shall be binding upon and shall inure to the benefit of the Parties, and their respective heirs, successors, and assigns.

20.   <u>Headings</u>.  This section and paragraph heading contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

-7-

21.  Counterparts.  This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original but all of which shall together constitute one and the same instrument.  The Parties shall be bound by their signatures transmitted by facsimile or electronic mail (in .pdf format) as if such signatures were original "ink" signatures.  They further agree to forward original "ink" signatures promptly following the transmission of facsimile or electronic signatures.  This Agreement shall be enforceable with facsimile or electronic signatures if one or more Parties do not deliver an original signature.

22.  Governing Law.  This Agreement shall be governed and construed in accordance with the laws of the State of New York without regard to conflicts of law principles thereof, except where governed by the Bankruptcy Code.

23.  Consent to Jurisdiction.   Each of the Parties irrevocably and unconditionally submits, for itself and its properties, to the exclusive jurisdiction of the Bankruptcy Court, in any action or proceeding arising out of or relating to this Agreement.

24.  WAIVER OF JURY TRIAL.  EACH PARTY HERETO HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT SUCH PARTY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT. EACH PARTY HERETO ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT, BY, AMONG OTHER THINGS, THE MUTUAL WAIVER AND CERTIFICATIONS IN THIS PARAGRAPH.

[ *signature page follows* ]

IN WITNESS WHEREOF, the Parties have caused this Agreement to be made this as of the date first written above.

**ASSIGNOR:**

DOTS, LLC

By: _____

Its: _____

**ASSIGNEE:**

RAINBOW SOUTHEAST LEASING, INC.

By: _____

Its: ___Vice President___ Joseph Chehebar

[ *signature page to lease purchase agreement* ]

IN WITNESS WHEREOF, the Parties have caused this Agreement to be made this as of the date first written above.

**ASSIGNOR:**                                          **ASSIGNEE:**

DOTS, LLC                                              RAINBOW SOUTHEAST LEASING, INC.

By: _____                         By: _____

Its: ___Co-President___                               Its: _____

*[ signature page to lease purchase agreement]*

## **EXHIBIT 1**
**LEASES**

**Exhibit 1**

Leases

| Store # | Landlord | Shopping Center | State |
|---|---|---|---|
| 372 | 11010 Seventh Avenue | #1 Market S/C | FL |
| 568 | 3500 Main Street Station, Inc. | University Plaza | NY |
| 607 | 3901 N. Richards Street | Riverworks Commons | WI |
| 788 | 49Th & Kedzie, LLC | Steeple Center | IL |
| 453 | Aaim Howard And Western, LLC | Howard & Western | IL |
| 262 | Acadia Merrillville Realty | Merrillville Plaza | IN |
| 616 | Amcap Copaco LLC | Copaco S/C | CT |
| 440 | Amcb Perring, LLC | Parkway Crossing | MD |
| 673 | Bacm 2006-5 Ritchie Highway, | Center @ Glenn Burnie | MD |
| 634 | Bc Wood Investment Fund I, | Dixie Manor | KY |
| 313 | Belmont Shopping Center | Belmont S/C | MI |
| 515 | Bloomfield Franklin, LLC | Franklin Square | NJ |
| 578 | Bradenton Associates | Cortez Plaza | FL |
| 287 | Bre Non-Core 2 Owner B | Terrace S/C | MN |
| 437 | Bre Retail Residual Owner 1, | Western Hills Plaza | OH |
| 580 | Bre Retail Residual Owner 6, | Sun Ray | MN |
| 213 | Bricktown Square LLC | Bricktown Sq. | IL |
| 663 | Bright-Meyers Bush River | Bush River | SC |
| 668 | Bright-Meyers Kennesaw | Town Center Market | GA |
| 212 | Brixmor Ga Roundtree Place, | Ypsilanti (Roundtree) | MI |
| 592 | Brixmor Holdings 11 Spe, LLC | Rockland Plaza | NY |
| 108 | Brixmor Miracle Mile, LLC | Miracle Mile | OH |
| 260 | Brixmor Spe 1, LLC | Hub S/C | MN |
| 500 | Brixmor Spe 5, LLC | Speedway Supercenter | IN |
| 691 | Brixmor Wolfcreek IV LLC | Market at Wolfcreek | TN |
| 445 | Bt Lantana, LLC | Lantana S/C (040202) | FL |
| 530 | Buckner Shopping Center, L.P. | Buckner Commons | TX |
| 275 | Bustleton Partners | Cottman-Bustleton | PA |
| 594 | Capital Real Estate | Pinnacle Park | TX |
| 700 | Capref Smyrna LLC | Colonial TownPark Symrna | TN |
| 306 | Cedar-Carmans, LLC | Carmans Plaza | NY |
| 543 | Cedar-South PhiladeLPhia I, | South Philly | PA |
| 631 | Central Islip Holdings LLC | Central Islip Town Center | NY |
| 733 | Centre West Shops, LLC | Centre West Shopps | IN |
| 172 | Centro Bradley Spe 3 LLC | Redford | MI |
| 290 | Centro Ga Waterbury LLC | Waterbury Plaza | CT |
| 495 | Centro Np Holdings 12 Spe, LLC | Northtown Plaza | TX |
| 371 | Centro Np Miami Gardens, LLC | Miami Gardens | FL |
| 510 | Century Development Company | College Park Plaza | IN |
| 285 | Century Shopping Center LLC | Century Center | MA |
| 626 | Charlotte (Archdale) Uy, LLC | Archdale Marketplace | NC |
| 690 | CHR II, LLC | Shops @ Park Village | DC |
| 267 | Clark Wolcott Properties LLC | Fairway Plaza | IL |
| 644 | Clearview Weslaco, L.P. | Weslaco | TX |
| 738 | Cocca Properties 13, LLC | Cocca Properties | TN |
| 782 | Cole Mt Chicago II, LLC | Metro Commons | IL |
| 509 | Colliers International | Southgate Square | VA |
| 703 | Colliers International | Ellenwoof Town Center | GA |
| 281 | Convery Associates | Convery Plaza | NJ |
| 293 | Country Club Plaza Associates, | Country Club Plaza | MA |
| 529 | Covington Dellview, LLC | Dellview Marketplace | TX |
| 468 | Cranston Bvt Associates | Brewery Shopping Park | RI |
| 411 | Cross County Assoc. Ltd. | Cross County | FL |

**Exhibit 1**

Leases

| Store # | Landlord | Shopping Center | State |
|---|---|---|---|
| 462 | Crossings Shopping Center L.P. | The Crossings | MO |
| 609 | Culver Center Partners Georgia | Old National Town Center | GA |
| 570 | Dcr Management, LLC | Englewood Plaza | IL |
| 308 | Ddr Culver Ridge LLC | Culver Ridge | NY |
| 635 | Ddr Db 151 Ventures LP | Westover Marketplace | TX |
| 798 | Ddr Warner Robbins LLC | Warner Robins | GA |
| 590 | Ddrm Largo Town Center LLC | Largo Towne Center | MD |
| 747 | Dgpom Master Tenant, LLC | Shoppes at Detroit's Gateway Park | MI |
| 538 | Duluth (Gwinnett) Ssr, LLC | Gwinnett Marketfair | GA |
| 619 | East Forest Plaza I, LLC | East Forest Plaza | SC |
| 163 | Eastgate Shopping Center | Eastgate | MI |
| 710 | Equity One (Florida | Town and Country | FL |
| 760 | Fairlane Allen Park Mi, | Fairlane Green | MI |
| 772 | Fall River Shopping Center | Fall River s/c | MA |
| 546 | Fr Florida, Inc. | Tri-county Plaza | FL |
| 438 | Funb 2000-C2 Torrence Retail, | Landings S/C | IL |
| 252 | Fusco Properties, L.P. | College Square | DE |
| 654 | Gaitway Plaza, LLC | Gaitway Shopping | FL |
| 658 | Gemini Rio Norte S, LP | Rio Norte S/C | TX |
| 338 | Girard Square A Ny LP-Chestnut | Chestnut | PA |
| 429 | Glenville Towne Center, Ltd. | Glenville Town Center | OH |
| 527 | Glenwood Morrow Company, | Southlake Festival | GA |
| 574 | Gre Vista Ridge, LP | Vista Ridge | TX |
| 588 | Hamden Plaza Associates, LLC | Hamden Plaza | CT |
| 576 | Hat #1, LLC | Toledo Commons | OH |
| 662 | Hawthorne Works Center, Ltd. | Hawthorne Works SC | IL |
| 736 | Hebco Development, Inc | McCreless Market | TX |
| 579 | Highway 6 Plaza, L.P. | Pavilion Plaza | TX |
| 610 | Hvca, LLC | Hempstead Village | NY |
| 629 | Inland American Retail | New Forest | TX |
| 685 | Inland American Retail | Woodlake Crossing | TX |
| 298 | Inland Commercial Property | Aurora Commons | IL |
| 793 | Inland Diversified Real Estate | Bayonne Crossing | NJ |
| 536 | Inland Western San Antonio Military Drive LP | Alison's Corner | TX |
| 582 | Irondequoit Plaza Associates, | Irondequoit Plaza | NY |
| 640 | J.L. Urrutia Investments, LLC | Trenton North SC | TX |
| 160 | Jameson Properties, L.L.C. | Euclid | OH |
| 330 | Janoff & Olshan, Inc. | Montauk | NY |
| 289 | Jbe Management, LLC | Michigan & Schaefer | MI |
| 622 | Jhj Lawrenceville, LLC | Lawrenceville commons | GA |
| 312 | John M. Agnello Receiver | Lackawanna Station | NJ |
| 606 | Kimco Augusta 635, Inc. | Augusta Square | GA |
| 497 | Kimco Company Of Indiana | Linwood Square | IN |
| 511 | Kimco Maplewood 673, Inc. | Maplewood | FL |
| 505 | Kimco Realty Corporation | Gravois Plaza | MO |
| 561 | Kimco Realty Corporation | Babies 'R Us -Lauderhill | FL |
| 650 | Kimco Realty Corporation | Cherrydale Point | SC |
| 456 | Kop Kline Plaza LLC | Kline Plaza | PA |
| 615 | Kp Parkside, LLC | Shops @ Park Place | FL |
| 573 | Lake Air Holdings, LLC | Lake Air Court | TX |
| 545 | Lakewood Retail, LLC | Lakewood S/C- Margate | FL |
| 642 | Landmark Hhh, L.L.C. | Landmark HH | VA |
| 467 | Lg Edgebrook, LLC | Edgebrook S/C | TX |

**Exhibit 1**

Leases

| Store # | Landlord | Shopping Center | State |
|---|---|---|---|
| 744 | Lightman South Lake Co., LLC | South Lake Center | MS |
| 645 | Linder Ventures Iv, LLC | The Shopps at Pyramids Plaza | NC |
| 769 | Macdade Mall Associates, L.P. | MacDade Mall | PA |
| 707 | Mansfield KDC III L.P. | Mainsfield Towne Center | TX |
| 745 | Marketplace West Memphis LLC | The Market at West Memphis | AR |
| 350 | Marlow Heights Shopping Center | Marlow Heights | MD |
| 219 | Marplaz, LLC | Buffalo (Freddy's Plaza) | NY |
| 625 | Mb San Antonio Brooks LP | Brooks Corners | TX |
| 632 | Mept Penn Mar LLC | Penn Mar | MD |
| 415 | Merrimac Income Partners, LP | Metheun, MA | MA |
| 796 | Michael A. Lightman | Centennial Commons | TN |
| 755 | Mondawmin | Mondawmin  Mall | MD |
| 648 | Nemp Holdings, L.P. | Northeast Market Place | TX |
| 232 | Norridge Plaza, LLC | Gap S/C | IL |
| 430 | North And Cicero Development, | Washington Square (032901) | IL |
| 410 | Northland Plaza Shopping | Northland Place | OH |
| 569 | Northside Centre, LLC | Northside Market Place | FL |
| 789 | Oakland Point Partners, LLC | Oakland Point East | MI |
| 460 | Onxy Equities, LLC As Receiver | Independence Plaza | NJ |
| 359 | Overland Plaza, LLC | Overland | MO |
| 384 | Palm Springs Mile Associates, | Palm springs Mile | FL |
| 470 | Patchogue Realty Associates, | Gateway Center | NY |
| 717 | Plantation Point Development, | Plantation Point | NC |
| 687 | Portfolio Addison Town Center | Addison Town Center | TX |
| 754 | Primestor 119, LLC | Marshfield Plaza | IL |
| 552 | Property Management: | Market @ Southside | FL |
| 333 | Prospect Plaza Improvements, | Prospect Plaza | CT |
| 595 | Raceway Land Development LLC | Raceway Park | IL |
| 159 | Ramco Hoover Eleven LLC | Warren | MI |
| 443 | Ramco-Gerhension Properties Trust | West Broward | FL |
| 238 | Ramco-Gershenson Properties Trust | West Allis | WI |
| 612 | Rancho Northwest Crossings,LLC | Northwest Crossing | TX |
| 803 | Rb Lowell Meadow Brook LLC | RB Lowell LLC | MA |
| 535 | Rc Inland Reit LP | Great southwest Crossing | TX |
| 508 | Rd Elmwood Associates, L.P. | Elmwood Park | NJ |
| 657 | Redus Illinois, LLC | Sherman Plaza | IL |
| 488 | Regency Centers, L.P. | Delk Spectrum | GA |
| 498 | Regency Centers, L.P. | Regency Square | FL |
| 525 | Regency Centers, L.P. | Briarcliff Village | GA |
| 254 | Rein-Midway Limited Partner- | Midway S/C | MN |
| 651 | Rgc Starr Retail, Ltd. | Starr Plaza S/C | TX |
| 759 | Roslindale Cummings Highway | Rosindale Stop & Shop | MA |
| 656 | Rpai Southwest Management | Lake Worth, TX | TX |
| 434 | RPAI US Management LLC | Ashland/Roosevelt (032102) | IL |
| 675 | Rpai Us Management LLC | Dorman Center | SC |
| 702 | RPAI US Management LLC | Village Shops @ Gainesville | GA |
| 407 | Salem Consumer Square Oh LLC | Salem Consumer | OH |
| 696 | Sam University Pointe, LLC | Tkc Universiity Center LLC | NC |
| 660 | Sansone Plaza On The | Plaza on the Boulevard | MO |
| 240 | Sg2, LLC | Northridge Plaza | WI |
| 223 | Shaker Mzl LLC | Shakertowne | OH |
| 641 | Shary Retail, Ltd., | Sharyland Town Crossing | TX |
| 611 | Shilldev (U.S.), Inc. | Promenade Shops | FL |

-3-

**Exhibit 1**

Leases

| Store # | Landlord | Shopping Center | State |
|---------|----------|-----------------|-------|
| 583 | Shop City Pw/Lb Associates, | Shop City | NY |
| 779 | Silas Creek Crossing | Silas Creek Crossing | NC |
| 220 | Simon Property Group | Matteson | IL |
| 721 | Simon Property Group | Simon Prop Group | IL |
| 516 | SI Southport LLC And | Southport S/C | NY |
| 426 | South Dade Shopping, LLC C/O | South Dade | FL |
| 171 | South Plaza Associates | South Plaza | OH |
| 564 | South Towne Center LLC | South Towne Centre | WI |
| 586 | Southland Terrace Shopping | Southland Terrace | KY |
| 659 | Southside Retail, LLC | Regency Commons | FL |
| 682 | Square V Group, LLC | Times Square | WI |
| 598 | Starlite Minnesota Limited | Starlite Center | MN |
| 771 | Stone Mountain Improvements, LLC. | Stone Mountain Imp | GA |
| 548 | Sun Life Assurance Company Of | Market East Town Center | TX |
| 618 | Suso 2 Independence LP | Independence Square | NC |
| 749 | Taubman Centers | Fairlane Medows | MI |
| 412 | Tcci Broad Street, LLC | Town & Country | OH |
| 697 | The Eastway Square Limited | Eastway Square | NC |
| 639 | The Kroenke Group | Southeast Market | TX |
| 608 | Tic Properties Management, LLC | Stonybrook South | KY |
| 633 | Tobina LLC | Farington Centre | GA |
| 503 | Treeco/Manor Limited | Manor S/C | PA |
| 379 | Ub Ironbound L.P. | Ferry Plaza | NJ |
| 506 | University Plaza Joint Venture | University Plaza | FL |
| 537 | Viking Partners Indian Creek, | Indian Creek Commons | IN |
| 517 | Vornado Lodi Delaware, LLC | Lodi S/C | NJ |
| 794 | Waukegan Plaza - Lewis Avenue | Waukegan Plaza | IL |
| 563 | Weingarten Nostat, Inc. | Colonial Plaza | FL |
| 522 | Weingarten Realty Investors | Valley view | TX |
| 613 | Weingarten Realty Investors | Westhill Village | TX |
| 646 | Weingarten Realty Investors | Festival @ Jefferson Court | KY |
| 678 | Wesgold, LLC | Park West Town Center | PA |
| 655 | West Road Investors, LP | West Road Plaza | TX |
| 521 | West Town Corners, LLC | West Town Corners | FL |
| 620 | Wilkinson Crossing, LLC - 6610 | Wilkinson Crossing | NC |
| 681 | Wla Garner Shop Ii, LLC | Shoppes @ Garner | NC |
| 288 | Wlb Of New Jersey, L.L.C. | Paddock Plaza | NJ |
| 118 | W-M Development Company | Cherry Tree | IN |
| 701 | Wri Jt Pembroke Commons, LP | Pembroke Pines | FL |
| 670 | Wri Mueller, LLC | Mueller Airport Development | TX |
| 665 | Wrs Centers I, LLC | Hudson Bridge | GA |
| 686 | Yale Lexington, LLC | North Park Market Place | KY |

**<u>EXHIBIT 2</u>**
**FORM OF BID PROCEDURES ORDER**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in compliance with D.N.J. LBR 9004-2(c)**

**LOWENSTEIN SANDLER LLP**
Kenneth A. Rosen, Esq.
John K. Sherwood, Esq.
Andrew Behlmann, Esq.
65 Livingston Avenue
Roseland, New Jersey 07068
Tel: (973) 597-2500
Fax: (973) 597-2400

*Counsel to the Debtors and
Debtors-in-Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| Dots, LLC, *et al.*, [1] | Case No. 14-11016 (DHS) |
| Debtors. | Jointly Administered |

## ORDER APPROVING LEASE SALE PROCEDURES

The relief set forth on the following pages, numbered two (2) through and including five

(5), is hereby ORDERED.

---

[1] The Debtors in these chapter 11 cases are Dots, LLC (3957), IPC/Dots LLC (8282), and Dots Gift LLC. The last four digits of Dots, LLC's and IPC/Dots LLC's tax identification numbers are (3957) and (8282), respectively

Upon consideration of the motion (the "<u>Motion</u>")[2] of the above-captioned debtors and debtors-in-possession (collectively, the "<u>Debtors</u>") for entry of orders approving procedures for the assumption, assignment, and sale of Leases, approving the assumption, assignment, and sales of Leases, and granting related relief; and the Court finding that (a) it has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, (b) this matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2), and (c) venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Motion being sufficient under the circumstances; and it appearing that no other or further notice is required; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtors and their estates and creditors; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY FOUND AND DETERMINED THAT:**[3]

A.      The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      Under the exigent circumstances, due, proper, and sufficient notice of the Motion and a reasonable opportunity to object was given, and no other or further notice need be provided, except as set forth herein with respect to the Sale Hearing.

C.      The Sale Procedures are fair, reasonable, and appropriate, reflect a sound exercise of the Debtors' business judgment and fiduciary duties, and are designed to maximize the value realized by the Debtors' estates for the Leases.

D.      The Debtors' service of the Motion is appropriate and reasonably calculated to

---

[2] Capitalized terms used but not defined herein have the meanings ascribed thereto in the Motion.

[3] Pursuant to Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact, as appropriate.

provide all interested parties with adequate, timely, and proper notice of the Sale Procedures, the Auctions, and the Approval Hearings, and no further notice thereof is required.

E.      The entry of this Order is in the best interests of the Debtors, their estates and creditors, and all other parties-in-interest in these Chapter 11 Cases.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is **GRANTED** as set forth herein.

2.      The Sale Procedures set forth in paragraphs 10-18 of the Motion are **APPROVED** and are incorporated herein by reference.

3.      Upon entry hereof, the Debtors shall serve a copy of this Order, together with the Auction Notice, via first-class mail upon (a) the Office of the United States Trustee for the District of New Jersey, (b) counsel for the Committee, (c) counsel to the Lenders, (d) all other entities known to have asserted any liens, claims, or encumbrances in or upon the Debtors' assets, (e) all parties known by the Debtors to have expressed a bona fide interest in acquiring the Leases, (f) counsel for the Stalking Horse Bidder, (g) all non-Debtor counterparties to the Leases, and (h) all parties that have previously filed notices of appearance in the Chapter 11 Cases (collectively, the "Order Notice Parties").   Such service shall constitute proper and sufficient notice of the entry of this Order.

4.      The Expense Reimbursement is fair, reasonable, and appropriate, and is an actual and necessary cost and expense of preserving the Debtors' estates.  The Debtors are authorized, if the Stalking Horse Bidder is not deemed a Winning Bidder at the Lot 1 Auction, to pay the Expense Reimbursement to the Stalking Horse Bidder in an amount not to exceed $100,000.

5.      The Debtors have filed a separate motion seeking entry of an order fixing prepetition cure costs applicable to the Leases (the "Cure Motion").  Nothing in this Order shall

be deemed to (a) fix the prepetition or postpetition cure amounts applicable to any Lease or (b) alter the rights of the non-Debtor counterparty to any Lease to object to the relief sought in the Cure Motion.  The rights of all non-Debtor counterparties to Leases to object to the assumption and assignment of such Leases on any basis, including but not limited to the provision of adequate assurance of future performance and resolution of cure amounts, are preserved for the Approval Hearings.

6.      Objections, if any, to the assumption, assignment, and sale of the Leases must be made in writing, filed with the Court, and served upon the Office of the United States Trustee for the District of New Jersey, counsel for the Debtors, counsel for the Lenders, counsel for the Committee, counsel for the Stalking Horse Bidder, and all parties who have filed notices of appearance in these Chapter 11 Cases so as to be actually received no later than **4:00 p.m. (Eastern) on March 24, 2014** (with respect to the Lot 1 Leases and the Lot 2 Leases) and no later than **4:00 p.m. (Eastern) on April 21, 2014** (with respect to the Lot 3 Leases).  Any party that does not timely object to the assumption, assignment, and sale of any Lease shall be forever barred and estopped from asserting, and deemed to have waived, any and all objections to the assumption, assignment, and sale of such Lease.

7.      This Order shall be binding upon and inure to the benefit of the winning bidders and backup bidders at the Auctions and their respective affiliates, successors, and assigns, and the Debtors, including any trustee or other fiduciary appointed for their estates, whether in these Chapter 11 Cases or any subsequent bankruptcy case or upon dismissal of these Chapter 11 Cases.

8.      The fourteen-day stay of effectiveness of this Order under Bankruptcy Rules 6004(h) and 6006(d) is hereby waived.  This Order shall be effective and enforceable

| Page: | 5 |
|---|---|
| Debtor: | Dots, LLC, *et al.* |
| Case No.: | 14-11016 (DHS) |
| Caption: | Order Approving Lease Sale Procedures |

immediately upon its entry on the docket in the Chapter 11 Cases.

9.      This Court shall retain jurisdiction over any matters related to or arising from the implementation or interpretation of this Order.